# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOHN H. BENGE, JR.,     )
     *PETITIONER*     )
     )
     )

    *v.*     )    NO. _____, 2005
     )
     )

RICK KEARNEY, WARDEN     )
SUSSEX CORRECTIONAL     )
INSTITUTION,     )
     *RESPONDENT*     )
     )

0 5 - - 5 5 0

---

## ON PETITION FOR A WRIT OF *HABEAS CORPUS*

---

## APPENDIX TO
## PETITIONER'S BRIEF IN SUPPORT OF A PETITION
## FOR A WRIT OF *HABEAS CORPUS*

---

July 10, 2005

                JOHN H. BENGE, JR.
                SUSSEX CORRECTIONAL
                      INSTITUTION
                P.O.  BOX 500
                GEORGETOWN, DE 19947

## *Appendix Table Of Contents*

Superior Court Docket Entries
     Sussex County----------------------------------------------------- A1
     New Castle County------------------------------------------------ A17

Superceding Indictment-------------------------------------------------- A18

Pretrial Ruling On "Prior Bad Acts" Evidence---------------------------- A23

Excerpts Of Trial Testimony Transcript---------------------------------- A32

Jury Instructions-------------------------------------------------------- A96

Sentencing Proceeding Transcript-------------------------------------- A127

Sentence Order-------------------------------------------------------- A160

Truth In Sentencing SENTAC Guidelines-------------------------------- A168
(Excerpts From TIS Benchbook)

Brief On Direct Appeal------------------------------------------------- A188

Supplemental Memorandum On Direct Appeal-------------------------- A214

Delaware Session Laws------------------------------------------------- A222

```
                  SUPERIOR COURT CRIMINAL DOCKET              Page     1
                     ( as of  01/15/2004 )

  State of Delaware v.  JOHN H BENGE                         DOB: 10/22/1948
  State's Atty: MELANIE C WITHERS , Esq.      AKA: JOHN BENGE
  Defense Atty: JOSEPH A HURLEY , Esq.             JOHN BENGE


Assigned Judge:

Charges: "
Count       DUC#          Crim.Action#     Description        Dispo.    Dispo. Date
----------------------------------------------------------------------------------
 001      0210012355A    IS02100923        PFDCF              TNG       08/27/2003
 002      0210012355A    IS02100924        PFDCF              TNG       08/27/2003
 003      0210012355A    S02100925         ASSAULT 1ST        NPL       08/27/2003
 004      0210012355A    S02100926         ASSAULT W/ SPRA    NPL       08/27/2003
 005      0210012355A    IS02100927        OFF TOUCHING       TGLI      08/27/2003
 006      0210012355A    IS02100928        CRIM TRES 1ST      TGLI      08/27/2003
 007      0210012355A    IS02100929        PFBPP              SEV       07/09/2003
 009      0210012355A    S02100930         OFF TOUCHING       NPL       08/27/2003
 010      0210012355A    IS03010361        ASSAULT 2ND <6     TGLI      08/27/2003
 011      0210012355A    IS03010362        ATT. KIDNAP 1ST    DISM      07/09/2003
 012      0210012355A    IS03010363        ATT. KIDNAP 1ST    DISM      07/09/2003
 013      0210012355A    IS03010364        PFDCF              DISM      07/09/2003
 014      0210012355A    IS03010365        PFDCF              DISM      07/09/2003
 015      0210012355A    IS03041012        CRIM CNTMPT DVP    SEV       07/09/2003
 017      0210012355A    IS02110168        CR CON PRO ORD     SEV       07/09/2003

      Event
No.   Date            Event                       Judge
----------------------------------------------------------------------------------
1     10/31/2002
      CASE ACCEPTED IN SUPERIOR COURT.
      ARREST DATE: 10/20/2002
      PRELIMINARY HEARING DATE:
      BAIL:  CASH BAIL                   100,500.00
      A NOTE FROM THE COURT OF COMMON PLEAS STATES THAT BOND MAY BE REDUCED
      TO $80,500.00 & DEFENDANT MAY BE PLACED ON LEVEL IV HOME CONFINEMENT
      ELECTRONIC MONITORING.
2     11/15/2002
      MOTION TO AMEND CONDITIONS OF RELEASE FILED BY JOSEPH HURLEY TO BE
      HEARD 11/22/02 AT 11:00/ FILE AND MOTION SENT TO CHAMBERS
3     11/21/2002
      RE-NOTICE OF MOTION TO AMEND CONDITIONS OF RELEASE FILED BY JOSEPH
      HURLEY.  SCHEDULED TO BE HEARD ON 12/6/02 AT 11:00.
4     12/06/2002                           GRAVES T. HENLEY
      MOTION TO AMEND CONDITIONS OF RELEASE DENIED.
7     01/07/2003
      DEFENDANT'S LETTER FILED.
      TO COURT RE:  BAIL CONDITIONS
```

A-1

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    2
                       ( as of  01/15/2004 )

 :ate of Delaware v.  JOHN H BENGE                          DOB: 10/22/1948
 State's Atty: MELANIE C WITHERS , Esq.      AKA: JOHN BENGE
 Defense Atty: JOSEPH A HURLEY , Esq.             JOHN BENGE

      Event
 No.  Date          Event                          Judge
--------------------------------------------------------------------------
 8    01/10/2003                              BRADLEY E. SCOTT
      LETTER FROM JUDGE BRADLEY TO DEFENDANT RE:  ADVISING DEFENDANT AS HE
      IS REPRESENTED BY COUNSEL, HIS LETTER DATED 1/5/03, HAS BEEN FORWARDED
      TO HIS ATTORNEY, MR. HURLEY, FOR ANY ACTION DEEMED APPROPRIATE BY HIM.
 5    01/13/2003
      INDICTMENT, TRUE BILL FILED.
 6    01/13/2003
      RULE 9 SUMMONS ISSUED. DEF. TO APPEAR FOR ARRAIGNMENT ON 2/6/03
 9    01/15/2003
      LETTER FROM JOSEPH HURLEY TO THE PROTHONOTARY.
      RE:  REQUESTING BAIL INFORMATION
      SENT BY MAIL ON 1/28/03
 10   02/06/2003                              HOWARD ALICIA B.
      ARRAIGNMENT CALENDAR:  RULE 9 SUMMONS RETURNED IN SUPERIOR COURT.
      CASH BAIL                          100,000.00 100%
      SECURED BAIL-HELD                   30,000.00 100%
      DEFENDANT ARRAIGNED, PLED NOT GUILTY, WAIVED READING OF INDICTMENT,
      REQUESTED TRIAL BY JURY.
      CASE REVIEW DATE: 3-3-03 AT 9 AM.
 -1   02/19/2003
      MOTION TO SUPPRESS EVIDENCE FILED BY JOSEPH A. HURLEY, ESQ.
 12   02/19/2003
      LETTER FROM JOSEPH HURLEY, ESQ. TO PROTHONOTARY
      RE: COPY OF INDICTMENT AND A COPY OF THE AFFIDAVIT OF PROBABLE CAUSE.
 15   02/20/2003
      SUMMONS SENT BY SHERIFF RETURNED.
 13   02/21/2003
      MEMORANDUM FILED BY JUDGE STOKES.  MOTION TO SUPPRESS HAS BEEN
      REVIEWED BY THE COURT AND APPROVED.  HEARING DATE TO BE SCHEDULED BY
      CASE SCHEDULING.
 14   03/03/2003                              GRAVES T. HENLEY
      CASE REVIEW CALENDAR:  SET FOR FINAL CASE REVIEW.
      2ND CASE REVIEW: 4/11/03 AND SUPPRESSION HEARING.
      FCR: 5/7/03
      TRIAL:  5/12/03
 16   03/14/2003
      SUBPOENA(3) ISSUED.
 17   03/14/2003
      SUBPOENA(3) ISSUED.
 18   03/24/2003
      CONTINUANCE REQUEST FILED BY THE STATE FOR CONTINUANCE OF 5/12/03 JT.
 19   04/07/2003
```

A.2

```
                    SUPERIOR COURT CRIMINAL DOCKET          Page    3
                        ( as of  01/15/2004 )

 .ate of Delaware v.  JOHN H BENGE                    DOB: 10/22/1948
 State's Atty: MELANIE C WITHERS , Esq.      AKA: JOHN BENGE
 Defense Atty: JOSEPH A HURLEY , Esq.             JOHN BENGE

       Event
 No.   Date          Event                          Judge
 --------------------------------------------------------------------------
       LETTER FROM JOE HURLEY, ESQ. TO THE HONORABLE RICHARD F. STOKES
       RE: MOTION FOR CONTINUANCE OF SUPPRESSION HEARING
 20    04/07/2003
       MOTION FOR A CONTINUANCE OF SUPPRESSION HEARING FILED BY JOSEPH HURLEY
 21    04/07/2003
       CONTINUANCE REQUEST FILED BY THE STATE FOR CONTINUANCE OF 6/9/03 JT.
 22    04/11/2003                             BRADLEY E. SCOTT
       SUPPRESSION HEARING:  RESERVED DECISION.
 23    04/16/2003
       LETTER FROM JOE HURLEY, ESQ TO JUDGE BRADLEY RE: REQUEST FOR
       EXTENSION OF TIME FOR FILING OPENING BRIEF UNTIL 5-5-03 / COPY OF THIS
       LETTER WAS FAXED INTO CHAMBERS ON 4/15/03 AN WAS APPROVED BY JUDGE
       BRADLEY ON 4/15/03.
 28    04/17/2003                             BRADLEY E. SCOTT
       COPY OF LETTER FROM JOSEPH HURLEY TO MELANIE WITHERS.
       RE:  WITH ATTACHED STIPULATION OF FACT.
 24    04/24/2003
       TRANSCRIPT OF PROCEEDINGS HELD IN SUPERIOR COURT ON 4/11/03 HEARD BY
       JUDGE BRADLEY FILED BY CHRISTINE QUINN
 ذ    04/24/2003
       LETTER FROM MELANIE WITHERS TO JUDGE BRADLEY
       RE: REQUESTING COURT TO PERMIT STATE, PRIOR TO TRIAL, TO SUBSTITUTE
       PIECES OF EVIDENCE WITH XEROX COPIES
 31    04/25/2003
       MOTION TO INCORPORATE BY REFERENCE THE AFFIDAVIT OF PROBABLE CAUSE IN
       SUPPORT OF THE WARRANTS OF ARREST, FILED BY JOSEPH A. HURLEY. MOTION
       TO BE HEARD ON FRIDAY, MAY 2, 2003 AT 11:00A.M.
 25    04/28/2003
       INDICTMENT, TRUE BILL FILED.
 27    04/29/2003                             BRADLEY E. SCOTT
       ORDER: IT IS HEREBY ORDERED THAT THE EVIDENCE SHALL BE RETURNED TO
       THE STATE.  JUDGE BRADLEY.
 29    04/30/2003
       CASE CONSOLIDATED WITH:__0210012376 (02-11-0168) DUE TO SUPERSEDING
       INDICTMENT FILED BY DAG ON 4/28/03.  LETTER SENT TO ATTYS AND CASE
       SCHEDULING NOTIFYING OF CONSOLIDATION.  ORIGINAL PAPERWORK FROM ID#
       0210012376 IS NOW A PART OF THIS FILE UNDER DOCKET ENTRY #29.
 30    04/30/2003
       RULE 9 SUMMONS ISSUED FOR APPEARANCE ON THURSDAY, MAY 22, 2003 AT
       9:00AM.
 33    05/01/2003
       STATE'S RECIPROCAL DISCOVERY REQUEST FILED BY MELANIE WITHERS.
```

A.3

```
                    SUPERIOR COURT CRIMINAL DOCKET          Page    4
                         ( as of  01/15/2004 )

  tate of Delaware v.  JOHN H BENGE                   DOB: 10/22/1948
  state's Atty: MELANIE C WITHERS , Esq.    AKA: JOHN BENGE
  Defense Atty: JOSEPH A HURLEY , Esq.           JOHN BENGE

       Event
 No.   Date            Event                        Judge
 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
 32   05/02/2003                               BRADLEY E. SCOTT
       MOTION TO INCORPORATE BY REFERENCE THE AFFIDAVIT OF PROBABLE CAUSE IN
       SUPPORT OF THE WARRANTS OF A ARREST GRANTED.
 45   05/14/2003
       SUMMONS SERVED BY SHERIFF.
 34   05/15/2003
       MOTION FOR RELIEF FROM PREJUDICAL JOINDER FILED BY JOE HURLEY.
 35   05/15/2003
       MOTION IN LIMINE FILED BY JOE HURLEY.
 36   05/15/2003
       LETTER FROM JOE HURLEY TO JUDGE BRADLEY  RE:  ENCLOSING A MOTION IN
       LIMINE AND A MOTION FOR RELIEF FROM PREJUDICIAL JOINDER.
 37   05/19/2003                               BRADLEY E. SCOTT
       LETTER FROM COURT TO MELANIE WITHER AND JOSEPH HURLEY, ESQ. RE:
       CONFIRMATION THAT AN OFFICE CONFERENCE HAS BEEN SCHEDULED FOR FRIDAY,
       MAY 23, 2003 AT 11:30A.M.
 38   05/19/2003
       LETTER(ORIGINAL) FROM JOSEPH HURLEY, ESQ. TO COURT RE: REQUESTING MORE
       TIME TO FILE OPENING BRIEF.
       APPROVED BY JUDGE BRADLEY ON MAY 16, 2003(FAXED IN DATE)
 39   05/21/2003                               HOWARD ALICIA B.
       ARRAIGNMENT CALENDAR:  RULE 9 SUMMONS RETURNED IN SUPERIOR COURT.
       CASH BAIL                         100,000.00 100%
       SECURED BAIL-HELD                  35,000.00
       DEFENDANT ARRAIGNED, PLED NOT GUILTY, WAIVED READING OF INDICTMENT,
       REQUESTED TRIAL BY JURY.
       CASE REVIEW DATE: 7-9-03 AT 9 A.M.
       TRIAL DATE: 7-14-03 AT 9 A.M.
 40   05/21/2003
       LETTER FROM JOSEPH HURLEY TO JUDGE BRADLEY
       RE: ENCLOSING DEF'S OPENING MEMORANDUM OF LAW IN SUPPORT OF HIS
       MOTION TO SUPPRESS EVIDENCE
 41   05/21/2003
       DEFENDANT'S OPENING MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS FILED
       BY JOSEPH HURLEY
 42   05/23/2003
       RUL 12.2 NOTICE OF INTENTION TO INTRODUCE EXPERT EVIDENCE OF
       DEFENDANT'S MENTAL CONDITION FILED BY JOSEPH HURLEY.
 43   05/23/2003
       LETTER FROM JOSEPH HURLEY TO JUDGE BRADLEY RE:  ADVISING THERE ARE TWO
       MOTION PENDING FOR DISCUSSION.  HE HAS LOCATED A CASE WHICH SEEMS TO
       BE THE "DEAL-BREAKER" WITH REGARD TO THE MOTION REGARDING EXTREME
```

A.4

SUPERIOR COURT CRIMINAL DOCKET                    Page    5
( as of  01/15/2004 )

State of Delaware v.  JOHN H BENGE                          DOB: 10/22/1948
State's Atty: MELANIE C WITHERS , Esq.       AKA: JOHN BENGE
Defense Atty: JOSEPH A HURLEY , Esq.              JOHN BENGE

|      | Event |       |       |
| No.  | Date  | Event | Judge |
| ---- | ----- | ----- | ----- |

EMOTIONAL DISTRELL.  HE WOULD LIKE MS. WITHERS TO REVIEW THE CASE WITH
THE HOPE THAT SHE IS IN AGREEMENT THAT EXTREME EMOTIONAL DISTRESS IS
IS A PROPER DEFENSE, ASSUMING A FOUNDATION CAN BE MADE FROM A
PSYCHIATRIC EXPERT, IN AN ATTEMPTED MURDER CASE.

44   05/23/2003                              BRADLEY E. SCOTT
OFFICE CONFERENCE PROCEEDING HELD.
RESPONSE FROM STATE DUE 6/6/03.  HURLEY'S RESPONSE TO STATE'S IS DUE
JUNE 9, 2003.  THE DEFENSE OF EXTREME EMOTIONAL DISTRESS IS APPLICABLE
DEPENDING UPON FACTUAL BASIS BEING ESTABLISHED BY HURLEY.  AS TO THE
MOTION TO SUPPRESS - DECISION RESERVED.  AS TO MOTION TO SEVER -
DECISION RESERVED.
CR-QUINN.  CC-MONTAGUE.

46   06/04/2003                              BRADLEY E. SCOTT
LETTER FROM MELANIE WITHERS, DAG TO JUDGE BRADLEY
RE: STATE'S ANSWERING LETTER MEMORANDUM REGARDING THE DEFENDANT'S
MOTION TO SUPPRESS.

47   06/10/2003
DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS
FILED BY JOSEPH HURLEY, ESQ.

3   06/11/2003
SUBPOENA (4) NEW CASTLE

49   06/11/2003
SUBPOENA (2) SUSSEX COUNTY

50   06/11/2003
SUBPOENA (12) SUSSEX COUNTY

51   06/11/2003
LETTER FROM MELANIE WITHERS TO JOE HURLEY RE:  LIST OF POTENTIAL 404B
EVIDENCE WHICH MIGHT ARISE DURING TRIAL.

52   06/12/2003
LETTER FROM JOSEPH HURLEY TO JUDGE BRADLEY
RE: REQUESTING MS. WITHERS RETRIEVE THE FINAL PAGE OF HER SUBMISSION
OUTLINING PURPORTED BAD ACTS AND REDACT THAT PAGE

53   06/12/2003
LETTER FROM JOSEPH HURLEY TO JUDGE BRADLEY
RE: RESPONSE TO STATE'S RESPONSE TO HIS MOTION TO SEVER COUNTS OF THE
INDICTMENT

55   06/26/2003                              BRADLEY E. SCOTT
MEMORANDUM OPINION:  IN SUMMARY, BENGE'S MOTION TO SUPPRESS THE
CONTENTS OF THE BAG IS GRANTED BECAUSE THE SEARCH EXCEEDED THE PROPER
BOUNDS FOR A WARRANTLESS SEARCH AND THE MOTION TO SUPPRESS THE
DOCUMENTS DISCOVERED IN THE HOUSE IS DENIED BECAUSE THE EVIDENCE WAS
GATHERED BY A PRIVATE, NON-GOVERNMENTAL PARTY.

A.5

SUPERIOR COURT CRIMINAL DOCKET                    Page    6
( as of  01/15/2004 )

:ate of Delaware v.  JOHN H BENGE                        DOB: 10/22/1948
 state's Atty: MELANIE C WITHERS , Esq.      AKA: JOHN BENGE
Defense Atty: JOSEPH A HURLEY , Esq.             JOHN BENGE

        Event
No.  Date            Event                        Judge
-------------------------------------------------------------------------
54   06/27/2003                          BRADLEY E. SCOTT
     LETTER FROM JOSEPH HURLEY, ESQ. TO JUDGE BRADLEY
     RE: TO REQUEST A TELEPHONE CONFERENCE WITH THE COURT.
56   07/02/2003
     MOTION IN LIMINE TO EXCLUDE EVIDENCE, FILED BY JOSEPH HURLEY, ESQ. TO
     BE PRESENTED AT TRIAL.
57   07/08/2003                          BRADLEY E. SCOTT
     LETTER FROM JOSEPH HURLEY, ESQUIRE TO JUDGE BRADLEY
     RE:  JOHN BRADY WILL STAND IN TO NOTIFY COURT THAT THE PLEA OFFER WILL
     BE REJECTED.
58   07/08/2003                          BRADLEY E. SCOTT
     LETTER FROM JOSEPH HURLEY TO JUDGE BRADLEY.
     RE:_  SUBSTANCE OF CASE
114  07/08/2003
     LESSER INCLUDED OFFENSE CASES FROM JOSEPH HURLEY
59   07/09/2003                          BRADLEY E. SCOTT
     HEARING HELD IN OPEN COURT ON VARIOUS MOTIONS: CR-QUINN. CC-MONTAGUE
     JUDGE DENIES MOTION FOR RECUSAL.  JUDGE GRANTS MOTION TO DIMISS COUNTS
     7 THRU 10 (S03-01-0362 - 0365).  STATE TO FILE AMENDED INDICTMENT
     OMITTING S03-01-0362 - 0365.  JUDGE GRANTS MOTION TO EXCLUDE LETTER
     FROM BEING ADMITTED AS EVIDENCE.  JUDGE GRANTS MOTION TO SEVER COUNTS
     6 (02-10-0929), 11 (S02-11-0168) AND 12 (03-04-1012).  MOTION TO
     EXCLUDE EXPERT TESTIMONY REGARDING HOW MANY SHOTS FIRED IS GRANTED.
     STATE MOTION TO QUASH SUBPOENA (DR. SMITH RECORDS) IS DENIED.  JUDGE
     BRADLEY ORDERS THE STATE TO PRODUCE A COPY OF THE RECORDS FROM DR.
     SMITH TO MR. HURLEY.  STATE ASKS FOR ITEMS REQUESTED FROM SUPPRESSION
     HEARING LISTED IN DOCKET ENTRY # 26.  JUDGE HAD PREVIOUSLY GRANTED
     THAT REQUEST ON 4/29/03.  CLERK TO SUBSTITUTE PHOTOCOPIES OF THOSE
     ITEMS AND GIVE STATE THE ORIGINALS.  ARGUMENTS ON 404B /GETZ MATTERS
     ARGUED.  STATE TO PUT IN WRITING TO MR. HURLEY BY NOON ON FRIDAY.
     THOSE MATTERS WILL BE DISCUSSED PRIOR TO TRIAL.  MR. HURLEY REQUESTS
     THAT THE VOIR DIRE BE TYPED AND PASSED OUT TO THE JURY SO THAT THEY
     WILL HAVE IT WHILE THE VOIR DIRE IS BEING READ TO THEM.  THE JUDGE
     GRANTS AND MR. HURLEY WILL PROVIDE THE COPIES FOR THE JURY.
60   07/09/2003                          BRADLEY E. SCOTT
     FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL
     CR-QUINN.
61   07/09/2003
     MEMORANDUM FILED.
     SENT TO COURT, CSO, AND ATTORNEYS RE:  SEVERANCE OF CHARGES.
     BOND IS NOW AS FOLLOWS: AS TO S0210012355A-BOND IS $100,000.00 CASH
     PLUS $23,000.00 SECURED.  AS TO S0210012355B-BOND IS $12,000.00

A 6

```
                    SUPERIOR COURT CRIMINAL DOCKET                    Page    7
                         ( as of  01/15/2004 )
```

:ate of Delaware v.   JOHN H BENGE                           DOB: 10/22/1943
.tate's Atty: MELANIE C WITHERS , Esq.        AKA: JOHN BENGE
Defense Atty: JOSEPH A HURLEY , Esq.                JOHN BENGE

```
         Event
No.   Date            Event                              Judge
--------------------------------------------------------------------------
```

|       |            |                                                                |     |
|-------|------------|----------------------------------------------------------------|-----|
|       | | SECURED. | |
| 62 | 07/09/2003 | LETTER FROM JOE HURLEY, ESQ TO JUDGE BRADLEY RE: "CHRISTMAS WISH LIST" OF THINGS HE WISHES TO HAVE DISCUSSED ON MONDAY. ALSO ATTACHED IS VOIRDIRE QUESTIONS. | |
| 63 | 07/09/2003 | MOTION TO DISMISS FILED BY JOE HURLEY, ESQ. | |
| 64 | 07/09/2003 | MOTION TO EXCLUDE PROFFERED EXPERT TESTIMONEY FILED BY JOE HURLEY, ESQ | |
| 71 | 07/10/2003 | LETTER FROM MELANIE WITHERS TO JUDGE BRADLEY RE:  STATE'S MOTION ASKING THE COURT TO RECONSIDER ITS RULING AND TO PERHAPS SUPPLEMENT THE RECORD AS TO THE REASONS FOR THE RULING REGARDING THE DEFENDANT'S MOTION TO EXCLUDE CERTAIN TESTIMONY. | |
| 65 | 07/11/2003 | LETTER FROM JOSEPH HURLEY TO MELANIE WITHERS, DAG RE: COPY OF THE LETTER IN REFERENCE TO THE VOIR DIRE QUESTIONS | |
| 66 | 07/11/2003 | OFFICE CONFERENCE PROCEEDING HELD. JOSEPH HURLEY, ESQ. (VIA TELEPHONE), MELANIE WITHERS, ESQ. CC-WILLIAMS CR-WASHINGTON DEFENSE REFERS TO TWO LETTERS AND THE DEFENDANT REVIEWING EVIDENCE STATE REFERS TO SEARCH WARRANT AND TAPES JUDGE ORDERS COUNSEL TO GET TOGETHER TO REVIEW OR EXCHANGE TAPES TO BE REVIEWED PRIOR TO TRIAL. | BRADLEY E. SCOTT |
| 72 | 07/11/2003 | LETTER FROM MELANIE C. WITHERS TO JUDGE BRADLEY AND JOSEPH A. HURLEY RE:  SUMMARY OF POTENTIAL 404(B) INFORMATION WHICH SHE HOPES WILL BE ADDRESSED FURTHER DURING THE ANTICIPATED HEARING ON MONDAY. | |
| 73 | 07/11/2003 | LETTER FROM MELANIE WITHERS TO JUDGE BRADLEY RE:  PHONE CONFERENCE | |
| 67 | 07/14/2003 | DEFENDANT'S RESPONSE TO LETTER/MOTION OFFERED BY THE STATE, FILED BY JOSEPH HURLEY.  ALSO MOTION FOR CRIMINAL HISTORY. | |
| 68 | 07/14/2003 | MOTION FOR CRIMINAL HISTORY IS DENIED BY JUDGE BRADLEY IN OPEN COURT. | BRADLEY E. SCOTT |
| 69 | 07/14/2003 | TRIAL CALENDAR-JURY TRIAL-CONTINUED COURT'S REQUEST-LACK OF JURORS. JURY PANEL ISSUES RAISED BY DEFENSE COUNSEL, JOE HURLEY, IN CHAMBERS. CR-PURNELL. | BRADLEY E. SCOTT |
| 70 | 07/14/2003 | | |

A-7

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    8
                       ( as of  01/15/2004 )

 tate of Delaware v.  JOHN H BENGE                          DOB: 10/22/1948
 State's Atty: MELANIE C WITHERS , Esq.      AKA: JOHN BENGE
 Defense Atty: JOSEPH A HURLEY , Esq.             JOHN BENGE

        Event
 No.    Date           Event                           Judge
 ------------------------------------------------------------------------
        MOTION TO REQUIRE PRODUCTION OF CRIMINAL HISTORIES OF PROSPECTIVE
        JURORS TO BE HEARD ON MONDAY, JULY 14, 2003, AT 9:00 A.M._/ MOTION WAS
        RULED ON IN OPEN COURT ON MONDAY.
 74     07/14/2003
        LETTER FROM JOSEPH HURLEY, ESQ. TO COURT RE: RECENT LETTER FILED TO BE
        PLACED UNDER SEAL.
 75     07/14/2003
        LETTER FROM JOSEPH HURLEY, ESQ. TO COURT RE: EVIDENCE.
 76     07/14/2003
        LETTER FROM JOSEPH HURLEY, ESQ. TO COURT RE: EVIDENCE.
 77     07/15/2003
        DOCUMENTS FILED, SEALED BY ORDER OF JUDGE
        CONTAINS DEFENDANT'S LETTER TO WIFE REGARDING DIVORCE STIPULATIONS
        DATED :  JANUARY (UNSURE OF DATE)
        TO BE OPENED BY A SUPERIOR JUDGE ONLY.
 78     07/22/2003
        MOTION FOR REVIEW OF BOND FILED BY MELANIE WITHERS, DAG. MOTIONED FOR
        FRIDAY, JULY 25, 2003 AT 11:00A.M.
 9      07/22/2003
        LETTER FROM MELANIE WITHERS TO COURT RE: ADVISING THE STATE HAS FILED
        A MOTION TO REVIEW BOND AND REQUESTING THE BOND BE REVOKED UNTIL THE
        DAY OF THE MOTION.
 80     07/22/2003                            BRADLEY E. SCOTT
        LETTER FROM COURT TO MELANIE WITHERS, DAG AND JOSEPH HURLEY, ESQ. RE:
        ADVISING THE BAIL HAS BEEN REVOKED AND THE MOTION IS SCHEDULED FOR
        FRIDAY, JULY 25, 2003 AT 11:00A.M.
 81     07/23/2003                            BRADLEY E. SCOTT
        LETTER FROM JOSEPH HURLEY TO JOYCE COLLINS.
        RE:  INQUIRIES AS TO BAIL
 82     07/23/2003                            BRADLEY E. SCOTT
        LETTER FROM JOSEPH HURLEY TO JUDGE BRADLEY.
        RE:  RESPONSE TO STATE'S REQUEST TO REVOKE BAIL UNTIL MOTION IS HEARD.
 83     07/23/2003
        DEFENDANT'S RESPONSE TO STATE'S MOTION SEEKING TO REVIEW BOND FILED BY
        JOSEPH HURLEY.
 85     07/23/2003
        LETTER FROM JOSEPH HURLEY, ESQ. TO COURT RE: RESCHEDULING.
 84     07/25/2003                            BRADLEY E. SCOTT
        OFFICE CONFERENCE/TELECONFERENCE PRCEEDINGS HELD.
        DEF. ATTY. JOSEPH HURLEY, ESQ./DAG MELANIE WITHERS/CC WILLIAMS
        CR WASHINGTON/ CASE SCHEDULING TAMMY KEARNEY
        RE: POSSIBLE SCHEDULING DATES:
```

A.8

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    9
                          ( as of  01/15/2004 )

 tate of Delaware v.  JOHN H BENGE                     DOB: 10/22/1948
 State's Atty: MELANIE C WITHERS , Esq.     AKA: JOHN BENGE
 Defense Atty: JOSEPH A HURLEY , Esq.            JOHN BENGE


       Event
 No.   Date            Event                         Judge
--------------------------------------------------------------------------
       7/28
       8/4
       8/18
       10/06
       10/13
       STATE IS TO CONTACT WITNESSES TO SEE IF SOONER DATES ARE AVAILABLE.
 86    07/25/2003
       LETTER FROM MELANIE WITHERS TO COURT RE: ATTEMPT TO CONTACT WITNESSES.
 87    07/25/2003                              BRADLEY E. SCOTT
       ORDER OF BOND
 88    07/25/2003
       LETTER FROM MELANIE WITHERS TO JUDGE BRADLEY RE:   TRIAL DATE
 96    07/31/2003
       SUBPOENA(S) ISSUED.
 97    07/31/2003
       SUBPOENA(S) ISSUED.
 89    08/01/2003
       LETTER FROM JOSEPH A. HURLEY TO HON. E. SCOTT BRADLEY
       RE: CONFIRMING THAT THE TRIAL WILL COMMENCE ON MONDAY AUGUST 18 AND
       ADDRESSES PREVIOUS ISSUES THAT AROSED DURING THE PREVIOUS JURY
       SELECTION.
 92    08/01/2003
       LETTER FROM JOE HURLEY TO JUDGE BRADLEY RE:  ADVISING HE HAS A TRIAL
       SCHEDULED IN NEW CASTLE SUPERIOR COURT AT THE SAME TIME AS THE BENGE
       TRIAL WAS RESCHEDULED.  HE ASKS THAT THE JUDGE COMMUNICATE WITH JUDGE
       HERLIHY SO THAT HE WILL UNDERSTAND THE PRIORITIZATINO OF THE BENGE
       MATTER.   TRIAL SCHEDULED IN NEW CASTLE IS STATE VS. NANCI JONES.
       MR. HURLEY HAS REQUESTED A CONTINUANCE IN THAT CASE.
 93    08/01/2003
       LETTER FROM JOE HURLEY TO JUDGE BRADLEY RE:  ADVISING HE HAS A TRIAL
       SCHEDULED IN NEW CASTLE SUPERIOR COURT AT THE SAME TIME AS THE BENGE
       CASE HAS BEEN RESCHEDULED.  HE HAS ASKED FOR A CONTINUANCE , BUT HE
       ASKS THE JUDGE COMMUNICATE WITH JUDGE HERLIHY SO HE WILL UNDER THE
       PRIORITIZATION OF THE BENGE MATTER.   THE TRIAL IN NEW CASTLE IS THE
       STATE OF DEL. VS. DANIELLE C. DAVIS.
 90    08/05/2003
       LETTER FROM MELANIE WITHERS, DAG TO THE HON. E. SCOTT BRADLEY
       RE: ADVISING THE COURT OF THE CONCERNS THAT KEITH BANKS, THE CHIEF OF
       POLICE HAS WITH THE TRIAL DATE.
 91    08/05/2003
       LETTER FROM MELANIE WITHERS, DAG TO THE HON. E. SCOTT BRADLEY
       RE: THE STATE'S CONCERNS WITH PARAGRAPH #1 OF MR. HURLEY'S JULY 30
```

A.9

```
                     SUPERIOR COURT CRIMINAL DOCKET              Page    10
                          ( as of  01/15/2004 )
```

State of Delaware v.  JOHN H BENGE                          DOB: 10/22/1948
State's Atty: MELANIE C WITHERS , Esq.      AKA: JOHN BENGE
Defense Atty: JOSEPH A HURLEY , Esq.             JOHN BENGE

```
      Event
No.   Date            Event                          Judge
-------------------------------------------------------------------------
      LETTER TO THE COURT
94    08/07/2003                               BRADLEY E. SCOTT
      LETTER FROM JUDGE BRADLEY TO MELANIE C. WITHERS AND JOSEPH A. HURLEY
      RE:  IN RESPONSE TO THEIR MOST RECENT LETTERS.  THE JUDGE WILL
      CONSIDER THE STATE'S MOTION TO RECONSIDER HIS DECISION REGARDING
      OFFICER PARSONS' PROPOSED EXPERT TESTIMONY ON THE DAY OF TRIAL.  HE
      DOES NOT EXPECT THE OVER REPRESENTATION OF TEACHERS ON THE JURY PANEL
      TO BE A PROBLEM THIS TIME.  HE IS GOING TO FOLLOW THE TRIAL SCHEDULE
      THAT WS IN EFFECT FOR THE LAST TRIAL AND WILL TRY TO ADJUST THE TRIAL
      SCHEDULE SO THAT OFFICER PARSONS CAN TAKE HIS PROMOTIONAL TESTS.  HE
      HAS ALSO CONTACTED JUDGES HERILHY AND GEBELEIN AGOUT MR. HURLEY'S
      CONFLICTING TRIAL OBLIGATIONS.
95    08/11/2003
      LETTER FROM JOSEPH HURLEY, ESQ. TO JUDGE BRADLEY
      RE: THE RULING CONTINUES IN EFFECT
98    08/18/2003                               BRADLEY E. SCOTT
      OFFICE CONFERENCE PROCEEDING HELD.
      DEF. ATTY./HURLEY DAG/ WITHERS CR/ PURNELL CC/WILLIAMS
      RE: JUDGE ADDRESSES ATTORNEYS AS TO ANYTHING NEW TO BE DISCUSSED PRIOR
      TO THE BEGINNING OF THE TRIAL.
99    08/18/2003                               BRADLEY E. SCOTT
      JURY SELECTED.
100   08/18/2003                               BRADLEY E. SCOTT
      TRIAL CALENDAR- WENT TO TRIAL JURY
      CR/PURNELL          CC/WILLIAMS
      COURT BEGAN: 1:24PM
      STATE ADDRESSES THEIR MOTION FOR RECONSIDERATION.
      DEFENSE ARGUES RESPONSE
      JUDGE BRADLEY STICKS WITH ORIGINAL RULING.
      COURT IN RECESS: 2:35PM
101   08/19/2003                               BRADLEY E. SCOTT
      OFFICE CONFERENCE PROCEEDING HELD.
      DEF ATTY/ HURLEY DAG/ WITHERS CR/ KIMMEL CC/ WILLIAMS
      RE: JURY INSTRUCTIONS/WITNESS TESTIMONY.
      DEFENSE REQUEST SEQUESTRATION ORDER ON COURT SPECTATORS.
      STATE HAS NO OBJECTION.
102   08/19/2003                               BRADLEY E. SCOTT
      TRIAL CALENDAR- WENT TO TRIAL JURY
      9:37AM COURT BEGAN
      CC/WILLIAMS CR/KIMMEL
      4:35PM COURT IN RECESS
103   08/20/2003                               BRADLEY E. SCOTT
```

A. 10

SUPERIOR COURT CRIMINAL DOCKET                    Page    11
( as of   01/15/2004 )

:ate of Delaware v.  JOHN H BENGE                              DOB: 10/22/1948
State's Atty: MELANIE C WITHERS , Esq.        AKA: JOHN BENGE
Defense Atty: JOSEPH A HURLEY , Esq.               JOHN BENGE

```
       Event
No.    Date           Event                          Judge
------------------------------------------------------------------------------
       OFFICE CONFERENCE PROCEEDING HELD.
       DEF. ATTY./ HURLEY DAG/ WITHERS CC/ WILLIAMS CR/WASHINGTON
       RE: VOIR DIRE EACH JUROR AS TO SEEING THE WITNESS LEAVING THE COURT-
       ROOM.
       JUDGE BRADLEY WILL PURSUE IT.
104  08/20/2003                              BRADLEY E. SCOTT
       TRIAL CALENDAR- WENT TO TRIAL JURY
       CR/WASHINGTON CC/WILLIAMS
       1:26PM COURT BEGAN
       JURORS VOIR DIRED INDIVIDUALLY IN CHAMBERS.
       5:12PM COURT IN RECESS
105  08/21/2003                              BRADLEY E. SCOTT
       OFFICE CONFERENCE PROCEEDING HELD.
       DEF ATTY./ HURLEY DAG/ WITHERS CR/ PURNELL CC/ WILLIAMS
       RE: FOUNDATION FOR OFFICER'S TESTIMONY AT THE SCENE.
106  08/21/2003                              BRADLEY E. SCOTT
       TRIAL CALENDAR- WENT TO TRIAL JURY
       9:39AM COURT BEGAN
       5:00PM COURT IN RECESS
 J7  08/25/2003
       TRANSCRIPT OF EXCERPT OF PROCEEDINGS ON TUESDAY, AUGUST 19, 2003,
       FILED BY EILEEN G. KIMMEL.
108  08/25/2003                              BRADLEY E. SCOTT
       OFFICE CONFERENCE PROCEEDING HELD.
       CR-QUINN.  CC-MONTAGUE.
       RE:  CASSETTE TAPES, READING PORTION OF TRANSCRIPT AND POSSIBLY VOIR
       DIRING A JUROR.
109  08/25/2003                              BRADLEY E. SCOTT
       TRIAL CALENDAR- WENT TO TRIAL JURY
       CR-QUINN.  CC-MONTAGUE.  MR. HURLEY MAKES AN APPLICATION TO DISMISS
       ALL COUNTS DUE TO THE STATE FAILING TO PROVIDE A PRIMA FACIA CASE.
       APPLICATION IS DENIED.
110  08/26/2003                              BRADLEY E. SCOTT
       OFFICE CONFERENCE PROCEEDING HELD.
       CR-WASHINGTON.  CC-MONTAGUE
       DISCUSSED PACKET (REGARDING DONNA BENGE SEPARATION AGREEMENT) THAT THE
       STATE INTENDS TO INTRODUCE AS EVIDENCE; DISCUSSED STIPULATION MR.
       HURLEY PLANSS TO INTRODUCE;  MARKED THREE COURT EXHIBITS.
111  08/26/2003                              BRADLEY E. SCOTT
       OFFICE CONFERENCE PROCEEDING HELD.
       CR-WASHINGTON.  CC- MONTAGUE
       DISCUSSED PROSECUTERS STATING THEIR OPINIONS TO THE JURY AND THE DEF.
```

A·11

```
               SUPERIOR COURT CRIMINAL DOCKET              Page    12
                    ( as of  01/15/2004 )

 tate of Delaware v.   JOHN H BENGE                  DOB: 10/22/1948
 tate's Atty: MELANIE C WITHERS , Esq.      AKA: JOHN BENGE
 Defense Atty: JOSEPH A HURLEY , Esq.            JOHN BENGE

          Event
 No.    Date            Event                        Judge
 -------------------------------------------------------------------------
        WAIVING HIS 5TH AMENDMENT RIGHTS REGARDING PENDING NEW CASTLE COUNTY
        CHARGES.
 112  08/26/2003                             BRADLEY E. SCOTT
        OFFICE CONFERENCE PROCEEDING HELD.
        CR-WASHINGTON.  CC-MONTAGUE.
        RE:  TESTIMONY AND LIO'S
 113  08/26/2003                             BRADLEY E. SCOTT
        TRIAL CALENDAR- WENT TO TRIAL JURY
        CR-WASHINGTON.  CC-MONTAGUE.
        JUDGE BRADLEY PUTS ON THE RECORD THAT THE DEFENDANT WAIVED HIS 5TH
        AMENDMENT RIGHT REGARDING PENDING NEW CASTLE COUNTY CHARGES.
 115  08/27/2003
        LETTER FROM JOSEPH A. HURLEY TO JUDGE BRADLEY RE:  ADVISING OF THE
        LESSER INCLUDED OFFENSES HE IS SEEKING.
 116  08/27/2003                             BRADLEY E. SCOTT
        JURY TRIAL - DEFENDANT FOUND GUILTY/PSI ORDERED.  SENTENCING SET FOR
        OCTOBER 10, 2003, AT 11:00 A.M.  CR-KIMMEL.  CC-MONTAGUE.
 117  08/27/2003
        CHARGE TO THE JURY
  18  08/27/2003
        COMMITMENT TO DEPARTMENT OF CORRECTION.
 120  09/12/2003                             GRAVES T. HENLEY
        LETTER FROM JUDGE GRAVES TO EILEEN KIMMEL.
        RE:  ASKING THAT EXPEDITED REQUEST BE CONSIDERED.
 119  09/15/2003
        TRANSCRIPT OF PROCEEDING (VOLUME E) ON MONDAY, AUGUST 25, 2003, FILED
        BY CHRISTINE L. QUINN.
 121  10/08/2003                             BRADLEY E. SCOTT
        LETTER FROM MELANIE WITHERS TO JUDGE BRADLEY.
        RE:  VICTIMS WISH TO SPEAK AT SENTENCING.
 123  10/09/2003
        LETTER FROM JOSEPH HURLEY, ESQ. TO COURT RE: REQUESTING THAT HIS
        SENTENCING BE FIRST ON THE CALENDAR.
 122  10/10/2003                             BRADLEY E. SCOTT
        SENTENCING CALENDAR: DEFENDANT SENTENCED.
        CR-KIMMEL
 124  11/13/2003
        LETTER FROM SUPREME COURT TO JOSEPH HURLEY, ESQ RE: COURT REQUEST
        A WRITTEN STATEMENT ON OR BEFORE 11-20-03.
 125  11/13/2003
        NOTICE OF APPEAL FILED BY DEFENDANT.
        SUPREME COURT # 544,2003
```

A-12

```
                    SUPERIOR COURT CRIMINAL DOCKET          Page    13
                      ( as of  01/15/2004 )

 :tate of Delaware v.  JOHN H BENGE                         DOB: 10/22/1948
 State's Atty: MELANIE C WITHERS , Esq.     AKA: JOHN BENGE
 Defense Atty: JOSEPH A HURLEY , Esq.            JOHN BENGE

        Event
 No.    Date           Event                           Judge
 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
 126  11/26/2003
        LETTER FROM DEBORAH L. WEBB TO EILEEN KIMMEL, COURT REPORTER
        RE: AVISING THE COURT REPORTER THAT THE FINAL TRANSCRIPT MUST BE
        FILED WITH THE PROTHONOTARY'S OFFICE NO LATER THAN 12/30/03.
 127  12/30/2003
        LETTER FROM LISA SEMANS(SUPREME COURT) TO COURT RE: ADVISING THE
        REQUEST FOR AN EXTENSION OF TIME TO FILE THE TRANSCRIPT IS GRANTED.

              *** END OF DOCKET LISTING AS OF  01/15/2004 ***
                  PRINTED BY: JDEF&JO
```

A. 13

```
                    SUPERIOR COURT CRIMINAL DOCKET           Page    1
                       ( as of  01/15/2004 )
```

:ate of Delaware v.  JOHN H BENGE                           DOB: 10/22/1948
.tate's Atty: MELANIE C WITHERS , Esq.      AKA: JOHN BENGE
Defense Atty: JOSEPH A HURLEY , Esq.             JOHN BENGE


Assigned Judge:

Charges:.

| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0210012355B | IS02100929 | PFBPP | | |
| 002 | 0210012355B | IS03041012 | CRIM CNTMPT DVP | | |
| 003 | 0210012355B | IS02110168 | CR CON PRO ORD | | |

| No. | Event Date | Event | Judge |
|-----|------------|-------|-------|
| 1 | 10/31/2002 | CASE ACCEPTED IN SUPERIOR COURT. | |
| | | ARREST DATE: 10/20/2002 | |
| | | PRELIMINARY HEARING DATE: | |
| | | BAIL:  SECURED BAIL-HELD            12,000.00 | |
| 2 | 01/13/2003 | INDICTMENT, TRUE BILL FILED. | |
| | 04/28/2003 | SUPERCEDING INDICTMENT FILED | |
| 4 | 04/30/2003 | RULE 9 SUMMONS ISSUED ON 03-04-1012 | |
| 5 | 05/21/2003 | | HOWARD ALICIA B. |
| | | ARRAIGNMENT CALENDAR:  RULE 9 SUMMONS RETURNED. | |
| | | CASH BAIL                  11,000.00 | |
| | | SECURED BAIL-HELD            1,000.00 | |
| | | DEFENDANT ARRAIGNED, PLED NOT GUILTY, WAIVED READING OF INDICTMENT, | |
| | | REQUESTED TRIAL BY JURY. | |
| | | CASE REVIEW DATE:   7/9/03. | |
| 6 | 07/09/2003 | | BRADLEY E. SCOTT |
| | | HEARING ON VARIOUS MOTIONS HEARD.  DURING THE HEARING A MOTION TO | |
| | | SEVER CHARGES WAS GRANTED.  S02-10-0929, S02-11-0168 AND S03-04-1012 | |
| | | ARE NOW SEVERED FROM THE MAIN FILE.  S02-10-0929, S02-11-0168 AND | |
| | | S03-04-1012 ARE NOW UNDER ID # 0210012355B.  MEMO SENT TO ATTORNEYS | |
| | | AND CASE SCHEDULING NOTIFYING THEM OF THE SEVERANCE. | |
| 7 | 07/09/2003 | MEMORANDUM FILED. | |
| | | TO COURT, ATTORNEYS AND CSO RE:  NOTIFYING THEM OF THE SEVERANCE. | |
| | | DUE TO SEVERANCE, BOND IS AS FOLLOWS:  AS TO 0210012355A - | |
| | | $100,000.00 CASH PLUS $23,000.00 SECURED.  AS TO S0210012355B - | |
| | | $12,000.00 CASH. | |
| 8 | 07/22/2003 | | |

A.14

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    2
                       ( as of  01/15/2004 )

 :ate of Delaware v.  JOHN H BENGE                       DOB: 10/22/1948
 state's Atty: MELANIE C WITHERS , Esq.      AKA: JOHN BENGE
 Defense Atty: JOSEPH A HURLEY , Esq.             JOHN BENGE

       Event
No.    Date           Event                            Judge
--------------------------------------------------------------------------
       MOTION FOR REVIEW OF BOND FILED BY MELANIE WITHERS, DAG. MOTION TO BE
       HEARD ON FRIDAY, JULY 25, 2003 AT 11:00A.M.
9    07/22/2003
       LETTER FROM MELANIE WITHERS TO COURT RE: ADVISING THE STATE HAS FILED
       A MOTION TO REVIEW BOND, REQUESTING BOND BE REVOKED UNTIL THE DAY OF
       THE MOTION.
10   07/22/2003                            BRADLEY E. SCOTT
       LETTER FROM COURT TO MELANIE WITHERS AND JOSEPH HURLEY, ESQ. RE:
       ADVISING THE BOND HAS BEEN REVOKED, AND THE MOTION IS SCHEDULED FOR
       FRIDAY, JULY 25, 2003 AT 11:00A.M.
12   07/22/2003
       DEFENDANT'S RESPONSE TO THE STATE'S MOTION SEEKING TO REVIEW BOND.
13   07/22/2003
       LETTER FROM JOSEPH HURLEY TO COURT RE: OPPOSING THE REQUEST THAT THE
       DEFENDANT BE HELD W/O BAIL.
14   07/23/2003
       LETTER FROM JOSEPH HURLEY, ESQ. TO COURT RE: ADVISING HE WILL NOT BE
       PRESENT ON FRIDAY, JULY 25, 2003.
 5   07/23/2003
       LETTER FROM JOSEPH HURLEY, ESQ. TO COURT RE: RESCHEDULING.
11   07/25/2003                            BRADLEY E. SCOTT
       OFFICE CONFERENCE/TELECONFERENCE PROCEEDINGS HELD.
       DEF.ATTY. JOSEPH HURLEY, ESQ./DAG. MELANIE WITHERS/CC WILLIAMS
       CR WASHINGTON/ CASE SCHEDULING TAMMY KEARNEY
       RE: POSSIBLE SCHEDULING DATES:
       7/28
       8/4
       8/18
       10/6
       10/13
       STATE IS TO CONTACT WITNESSES TO SEE IF SOONER DATES ARE AVAILABLE.
16   07/25/2003
       LETTER FROM MELANIE WITHERS TO COURT RE: ATTEMPT TO CONTACT WITNESSES.
17   07/25/2003                            BRADLEY E. SCOTT
       ORDER OF BOND
18   09/12/2003                            GRAVES T. HENLEY
       LETTER FROM JUDGE GRAVES TO EILEEN KIMMEL.
       RE:  ASKING THAT EXPEDITED REQUEST FOR TRANSCRIPT BE CONSIDERED.
19   10/07/2003
       LETTER FROM JOE HURLEY, ESQ TO JUDGE BRADLEY RE: OPPOSITION TO THE
       REQUEST OF THE AG'S OFFICE FOR A CONTINUANCE OF THE TRIAL.
20   10/07/2003                            BRADLEY E. SCOTT
```

A. 15

```
              SUPERIOR COURT CRIMINAL DOCKET          Page    3
                    ( as of  01/15/2004 )

 tate of Delaware v.  JOHN H BENGE                    DOB: 10/22/1948
 tate's Atty: MELANIE C WITHERS , Esq.    AKA: JOHN BENGE
 Defense Atty: JOSEPH A HURLEY , Esq.          JOHN BENGE

       Event
 No.  Date            Event                        Judge
----------------------------------------------------------------------
      LETTER FROM COURT TO MELANIE C. WITHERS AND JOSEPH A. HURLEY RE:
      CONFIRMING THAT AN OFFICE CONFERENCE HAS BEEN SCHEDULED WITH JUDGE
      BRADLEY ON FRIDAY, OCTOBER 10, 2003, IMMEDIATELY FOLLOWING THE 11:00
      AM SENTENCING TO DISCUSS THE REQUEST FOR CONTINUANCE OF THE TRIAL
      SCHEDULED TO BEGIN ON NOVEMBER 10, 2003.
 21   10/10/2003                              BRADLEY E. SCOTT
      MOTION FOR CONTINUANCE GRANTED.
      STATES REQUESTS CONTINUANCE DUE TO OFFICER UNAVAILABILITY.
      F.C.R. - 1/7/04.   TRIAL - 1/20/04.
      CR-KIMMEL.
 22   01/06/2004
      SUBPOENA(4) ISSUED.
 23   01/06/2004
      SUBPOENA(1) ISSUED.
 24   01/06/2004
      SUBPOENA(2) ISSUED.
 25   01/07/2004                              BRADLEY E. SCOTT
      FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL
      MR. BRADY APPEARED ON BEHALF ON MR. HURLEY.
      TRIAL SCHEDULED FOR 1/20/04 AT 9:00A.M.
      CR-KIMMEL

              *** END OF DOCKET LISTING AS OF  01/15/2004 ***
                  PRINTED BY: JDEFBJO
```

A-16

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    3
                      ( as of  08/12/2004 )
```

```
.ate of Delaware v.  JOHN H BENGE                      DOB: 10/22/1948
State's Atty: DONALD R ROBERTS , Esq.      AKA: JOHN BENGE
Defense Atty: ROBERT M GOFF , Esq.              JOHN BENGE
```

```
       Event
No.    Date            Event                          Judge
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
12    09/03/2003
        SUBPOENA(S) MAILED.
13    09/03/2003
        CONTINUANCE REQUEST FILED BY D ROBERTS - REF TO JOH - DENIED 09/10/03
14    09/09/2003
        STATE'S WITNESS SUBPOENA ISSUED.
        DONNA BENGE    GEORGE LOVETT    EDWARD S. SMITH
        JOHN BENGE    DET. LEE, NCCPD    PTLM. CRESPO, NCCPD
        OFFICER DONAHUE, NCCPD
16    09/16/2003
        DEFENDANT'S LETTER FILED.
        RE: DEFT IS REQUESTING THAT PROTHO FORWARD THIS LETTER TO THE TRIAL
        JUDGE
17    09/16/2003
        LETTER FROM JUDGE GRAVES TO EILEEN KIMMEL
        AS YOU ARE AWARE, MR.BENGE'S TRIAL HERE IN SUSSEX COUNTY CONSUMED
        SEVERAL WEEKS OF OUR TRIAL CALENDAR. I HAVE BEEN CONTACTED BY
        NCC JUDGES CONCERNING A STATE'S CASE WHICH IS WELL BEYOND THE SPEEDY
        TRIAL GUIDELINES AND IS ON THE TRIAL CALENDAR FOR THE 3RD TIME FOR
        9/18/03. THE STATE HAS REQUESTED A CONTINUANCE OF THAT TRIAL BECAUSE
        THEY CANNOT OBTAIN A TRANSCRIPT OF MR. BENGE'S SUSSEX COUNTY TESTIMONY
        THE STATE BELIEVES THAT THERE IS SOMETHING RELEVANT IN HIS SUSSEX
        COUNTY TESTIMONY WHICH COULD IMPACT THE NCC CHARGES.
        (SEE LETTER FOR REMAINDER)
15    09/22/2003
        TRIAL CALENDAR - JURY TRIAL - CONTINUED - COURT CLOSED DUE TO
        INCLEMENT WEATHER
18    10/06/2003
        REINDICTMENT - TRUE BILL FILED.NO 106
        ARRAIGNMENT AND BAIL STATUS 10/28/03 AT 9:30
19    10/28/2003                            VAVALA MARK STEPHEN
        ARRAIGNMENT/BAIL STATUS HEARING:  DEFENDANT WAIVED READING, ENTERED
        PLEA OF NOT GUILTY, JURY TRIAL DEMANDED.
        SECURED BAIL-HELD                  40,000.00
        UNSECURED BOND                     17,000.00
20    10/31/2003
        ORDER SCHEDULING TRIAL FILED.
        TRIAL DATE: 01/13/04
        CASE CATEGORY: #2
        ASSIGNED JUDGE (CATEGORY 1 CASES ONLY):
        UNLESS THE COURT IS ADVISED WITHIN 2 WEEKS OF THE UNAVAILABILITY
        OF NECESSARY WITNESSES, THE COURT WILL CONSIDER THE MATTER READY
```

A 17

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

| | |
|---|---|
| THE STATE OF DELAWARE | :  CRIMINAL ACTION NOS. |
| | :  02-10-0923 thru 0924, 0927 thru 0928 |
| vs. | : |
| | :     SUPERCEDING |
| **JOHN H. BENGE** | :  INDICTMENT BY THE |
| | :     GRAND JURY |
| **I.D. NO. 0210012355** | : |

The Grand Jury charges that **JOHN H. BENGE** did commit the following offenses, to-wit:

### COUNT 1 - POSSESSION OF A FIREARM DURING COMMISSION OF A FELONY
#### 02-10-0923

**JOHN H. BENGE**, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did knowingly possess a firearm, a handgun, during the commission of Attempted Murder in the First Degree, a felony, as set forth in Count # 3 of this Indictment which is herein incorporated by reference, in violation of Title 11, § 1447A of the Delaware Code.

### COUNT 2 - POSSESSION OF A FIREARM DURING COMMISSION OF A FELONY
#### 02-10-0924

**JOHN H. BENGE**, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did knowingly possess a firearm, a handgun, during the commission of Burglary in the Second Degree, a felony, as set forth in Count # 5 of this Indictment which is herein incorporated by reference, in violation of Title 11, § 1447A of the Delaware Code.

A 18

### COUNT 3 - ATTEMPTED MURDER IN THE FIRST DEGREE

JOHN H. BENGE, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did attempt to intentionally cause the death of another person, Edward S. Smith, which acts constituted a substantial step in a course of conduct planned to culminate in the commission of the act of Murder in the First Degree, in violation of Title 11, § 636(a)(1) of the Delaware Code, in violation of Title 11, § 531 of the Delaware Code.

### COUNT 4 - ASSAULT IN THE SECOND DEGREE
### 02-10-0927

JOHN H. BENGE, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, while engaged in the commission of the crime of Burglary in the Second Degree, did intentionally assault Donna Benge with a disabling chemical spray with the intent to incapacitate the victim, in violation of Title 11, § 612(a)(7) of the Delaware Code.

### COUNT 5 - BURGLARY IN THE SECOND DEGREE
### 02-10-0928

JOHN H. BENGE, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did knowingly enter or remain unlawfully in a dwelling belonging to Donna Benge with the intent to commit the crime of Attempted Murder in the First Degree therein, in violation of Title 11, § 825(1) of the Delaware Code.

### COUNT 6 - POSSESSION OF A FIREARM BY PERSON PROHIBITED
### 02-10-0929

JOHN H. BENGE, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did have in his possession a handgun, a deadly weapon as defined under 11 Del. C., §222(5), while being under a Family Court protection from abuse order, in violation of Title 11, § 1448(a)(6) of the Delaware Code.

A 19

## COUNT 7 - POSSESSION OF A FIREARM DURING COMMISSION OF A FELONY

JOHN H. BENGE, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did knowingly possess a firearm, a handgun, during the commission of Attempted Kidnapping in the First Degree, a felony, as set forth in Count # 8 of this Indictment which is herein incorporated by reference, in violation of Title 11, § 1447A of the Delaware Code.

## COUNT 8 - ATTEMPTED KIDNAPPING IN THE FIRST DEGREE

JOHN H. BENGE, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did attempt to unlawfully restrain Donna Benge with the intent to facilitate the commission of Attempted Murder in the First Degree and the defendant did not voluntarily release her alive, unharmed and in a safe place prior to trial, which act constituted a substantial step in a course of conduct planned to culminate in the commission of the act of Kidnapping in the First Degree, in violation of Title 11, § 783A(3) of the Delaware Code, in violation of Title 11, § 531 of the Delaware Code..

## COUNT 9 - POSSESSION OF A FIREARM DURING COMMISSION OF A FELONY

JOHN H. BENGE, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did knowingly possess a firearm, a handgun, during the commission of Attempted Kidnapping in the First Degree, a felony, as set forth in Count #10 of this Indictment which is herein incorporated by reference, in violation of Title 11, § 1447A of the Delaware Code.

A 20

## COUNT 10 - ATTEMPTED KIDNAPPING IN THE FIRST DEGREE

**JOHN H. BENGE**, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did attempt to unlawfully restrain Edward S. Smith with the intent to facilitate the commission of Attempted Murder in the First Degree and the defendant did not voluntarily release him alive, unharmed and in a safe place prior to trial, which act constituted a substantial step in a course of conduct planned to culminate in the commission of the act of Kidnapping in the First Degree, in violation of Title 11, § 783A(3) of the Delaware Code, in violation of Title 11, § 531 of the Delaware Code.

## COUNT 11 - CRIMINAL CONTEMPT - 03-04-

JOHN H. BENGE, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did commit the act of Criminal Contempt when the defendant knowingly violated or failed to obey any provision of a protective order issued by Family Court, to wit: the defendant had contact with Donna Benge in violation of Title 11, § 1271A of the Delaware Code.

## COUNT 12 - CRIMINAL CONTEMPT - 03-04-

JOHN H. BENGE, on or about the 20th day of October, 2002, in the County of Sussex, State of Delaware, did commit the act of Criminal Contempt when the defendant knowingly violated or failed to obey any provision of a protective order issued by Family Court, to wit: the defendant possessed firearms, in violation of Title 11, § 1271A of the Delaware Code.

A 21

A TRUE BILL


_____

(Foreperson)



_____

(Secretary)


s/M. JANE BRADY

ATTORNEY GENERAL


DEPUTY ATTORNEY GENERAL


DATE:  April 29, 2003


A 22

```
 1    at nearly 1:00 o'clock in the morning and leaves at

 2    10:00 o'clock in the morning.  He stays nine

 3    hours -- less than nine hours.  On October 10th, he

 4    arrives at 2129, 9:29 p.m. on the 10th, and then

 5    stays until about 6:00 p.m. the following day.  On

 6    the 12th, he arrives at 11:00 p.m. and leaves at

 7    11:00 a.m. the following day.

 8              THE COURT:  All right.  I will address the

 9    first group that I discussed first.  Those are

10    Items 1, which is titled April of 2002.  Item No.

11    2, which is titled between April and October of

12    2002.  Item No. 4, which is early summer of 2002.

13    And Item No. 6, July 25th, 2002.

14              As referred to in Mrs. Withers' July 11,

15    2003 letter to me -- and, Mr. Hurley, without going

16    through the full Getz analysis as to Item No. 4,

17    early summer of 2002, which is the bikini bottom, I

18    am going to simply exclude that, given the nature

19    of the lead charge here, attempted murder.  I do

20    not think it proves a great deal, given the nature

21    of the item involved.  I think it is somewhat

22    unfairly prejudicial to drop that out in front of

23    the jury. So I will exclude that one.  That leaves
```

KATHY S. PURNELL
OFFICIAL COURT REPORTER

RULING I

A 23

1    us with Item Nos. 1, 2 and 6.  I will go over the

2    entire Getz analysis for those items.

3         As I view the case as offered by the State

4    and the State's rationale for those items,

5    Mr. Benge and his wife were going through a

6    somewhat difficult divorce.  Mr. Benge did not want

7    to be divorced, and Mr. Benge certainly did not

8    want his wife to establish a relationship with

9    another man.  It is, in my view, somewhat difficult

10   to simply separate the charge of attempted murder

11   of that new man in Mrs. Benge's life from these

12   other relationships and these other factors.  That

13   is really how the State has offered this, forming

14   consideration.

15        Looking at the Getz factors, the first

16   factor is the evidence of the other crimes must be

17   material to an issue or ultimate fact in dispute in

18   the case.  And Getz was somewhat modified by

19   Terrell and Milligan, where it said that the other

20   acts must be relevant to an element of the State's

21   prima facie case.  Certainly, in the attempted

22   murder charge, the hotly contested -- I assume it

23   will be hotly contested -- element was what was

KATHY S. PURNELL
OFFICIAL COURT REPORTER

A 24

1    Mr. Benge's intent.  The State offers these three
2    other things to show that Mr. Benge was not happy
3    with Mr. Smith because Mr. Smith was the new man in
4    Mrs. Benge's life, and that was certainly
5    difficult, arguably difficult for Mr. Benge to
6    accept.  So that is both the factual dispute and
7    the element of the law, which is that dispute.  So
8    I do certainly think it does touch on a very
9    important issue in this case.
10        Number two, the evidence that the other
11   crimes or matters must be introduced for a purpose
12   sanctioned by Rule 404(b) or any other purpose not
13   inconsistent with the basic prohibition against
14   evidence of bad character or criminal disposition.
15   Again, 404(b) certainly touches on intent and
16   motive, and I think those three other factors that
17   you've discussed, three other factual situations
18   that the State has offered, certainly are there for
19   an explanation of Mr. Benge's alleged behavior.
20        The next conversation is that the other
21   crimes must be proved by evidence which is plain,
22   clear and conclusive.  I do think when you consider
23   all of these three things together, I think that

KATHY S. PURNELL
OFFICIAL COURT REPORTER

A 25

1    requirement can be met.

2         Now, obviously, no one is an eyewitness to

3    Mr. Benge going into Mrs. Benge's new residence,

4    but we do have Mrs. Benge's brother seeing

5    Mr. Benge in the neighborhood.  We do have

6    Mrs. Benge finding keys to her residence in

7    Mr. Benge's house in Snuff Mill.  And we do have

8    proffered testimony that Mrs. Benge will say that

9    it was Mr. Benge who had taped her many times

10   before at their residence, at Snuff Mill.  And I

11   think when you put all of those things together,

12   the testimony does rise to the level of evidence

13   which is plain, clear and conclusive.

14        The fourth factor is the other crimes must

15   not be too remote in time from the charged offense.

16   All of these things happened within roughly five or

17   six months of the alleged crimes in 2002.  So they

18   are certainly not remote in time.

19        The fifth factor is the Court must balance

20   the probative value of such evidence against the

21   unfairly prejudicial effect, as required by Rule

22   403.  In that, there is a nine-factor analysis set

23   forth in Deshields.  The first one is the extent to

KATHY S. PURNELL
OFFICIAL COURT REPORTER

*A 26*

A-44

1       which the point to be proved is disputed.  It is

2       certainly a very disputed point in this case,

3       although I think Mr. Hurley made a reasonably good

4       argument that Mrs. Withers will probably make on

5       the issue of intent.  And that is, if you show up

6       and shoot somebody a couple of times, well, of

7       course, you intended to kill them.  What else could

8       you have intended?  But at least at this point that

9       is -- I will say it is a hotly disputed issue.

10           Number two, the adequacy of proof of the

11      prior conduct.  I am satisfied of the proof of that

12      conduct.  It is difficult to think of why anyone

13      else but Mr. Benge would have engaged in these

14      things.  Mr. Benge was seen near the house.  He had

15      the keys in his home.  He had taped his wife

16      before.  So I am satisfied that the proof is

17      adequate.

18           Number three, the probative force of the

19      evidence.  You know, notwithstanding what people

20      may think, that if you stick a gun at somebody and

21      shoot them, that you, of course, intended to kill

22      them.  It is hard to tell how the facts in this

23      case may ultimately play out.  Certainly the

KATHY S. PURNELL
OFFICIAL COURT REPORTER

*A 27*

1     defendant could argue that he was merely struggling

2     with Mr. Smith and Mr. Smith was getting the better

3     of him and he did what he did to defend himself.

4     These three things that the State has offered

5     certainly explains why -- regardless of what

6     actually happened, they do explain why the

7     defendant may have wanted to cause serious harm to

8     Mr. Smith.  So in that sense, I think they are

9     probative of the point to be proven by the State in

10    which the State must prove in its case in chief.

11          Number four, the proponent need for the

12    evidence.  I do not think we can consider these

13    things in a vacuum.  I think the jury would

14    certainly be looking for an explanation of why

15    Mr. Benge would want to do this to Mr. Smith.

16    Other than the fact that Mr. Benge is alleged to

17    have shot Mr. Smith, I do not know that the State

18    really has anything else that would offer a

19    rationale for why Mr. Benge was displeased with

20    Mr. Smith, and, therefore, I think the State does

21    have a need for this.

22          The availability of less prejudicial

23    proof.  Again, you know, the defense's answer to

KATHY S. PURNELL
OFFICIAL COURT REPORTER

A 28

1    this is, well, he shot him with a gun. And as I

2    said before, there may be other explanations for

3    that, that that takes away from the State. The

4    State may have to rely on other things, and I think

5    these are those other things that the State will

6    have to rely on.

7        Number six, the inflammatory or the

8    prejudicial effect of the evidence. I agree that

9    these things are somewhat prejudicial, but

10   certainly in the context of people going through a

11   painful divorce, they are, I do not think at all

12   unusual. People who have been married for a long

13   time may have a difficult time letting go and they

14   may do other things that they would not normally

15   do. I think people understand that. So it is

16   somewhat prejudicial, but I think in the context of

17   a divorce proceeding, it is also understandable.

18       Number seven, the similarity of the prior

19   wrong to the charged offenses. I do not think

20   these things are similar, and I think that is what

21   makes them much less prejudicial.

22       Number eight, the effective list of

23   limiting instructions. We have certainly long

KATHY S. PURNELL
OFFICIAL COURT REPORTER

A 29

1    believed that the limiting instructions are

2    effective, and I certainly have no doubt, in the

3    context of these other acts, that those

4    instructions would be effective and could explain

5    the limited purpose for which these three acts

6    would be considered.

7         And number nine, the extent to which prior

8    act evidence would prolong the proceedings.  No

9    doubt that these things will prolong the

10   proceedings to some extent.  But again, we cannot

11   consider the case in a vacuum.  An explanation for

12   why people do things, I think, is certainly

13   necessary and it is an essential part certainly of

14   this case.  So it is going to make it a little

15   longer, but it is not going to make it a whole lot

16   longer.

17        So on balance, after having considered

18   those nine factors, I think the probative value of

19   these three things that I mentioned, outweighs any

20   unfair prejudice associated with them.  I already

21   considered what I considered to be the seventh Getz

22   analysis, and that is that the other acts must be

23   relevant to an element of the State's prima facie

KATHY S. PURNELL
OFFICIAL COURT REPORTER

A30

1    case that goes to the incident.  I certainly think

2    they are all linked to the incident.  So I will

3    allow the State to discuss those things.

4         And, Mr. Hurley, if you have any limiting

5    instruction that you would like to submit, I will

6    certainly consider it.

7         MR. HURLEY:  Yes.  And I'm also going to

8    ask, although in the legal field that limiting

9    instruction works, there are some that are more

10   workable than others because they are easier to

11   understand.  I'm going to ask for the usual step of

12   the jury being given a copy of what you would read

13   so they can read along.  Because I found that the

14   404 limiting instructions are very difficult for

15   jurors to comprehend just having them read to them

16   as quickly as you would normally read.  The very

17   fact that you give them instructions to take with

18   them in the jury room, suggests that that's a

19   better vehicle for communication.

20        THE COURT:  Well, I would certainly give

21   this to them.  Any Getz instructions that I give

22   during the course of the trial, I put in the final

23   packet.  But I do not have any problem with them

KATHY S. PURNELL
OFFICIAL COURT REPORTER

A 31

E-72

BENGE - Direct

```
1        A    By suicide.

2        Q    What type of suicide?

3        A    By gunshot.

4        Q    Education?

5        A    I have a Bachelor's Degree in History from

6    Franklin Marshall College in Lancaster, Pennsylvania,

7    and I have a Jurist Doctorate Degree from Villanova

8    School of Law in Villanova, Pennsylvania.

9        Q    What year did you graduate from law school?

10       A    1976.

11       Q    Do you have any military service?

12       A    Yes.  I served in the United States Army

13   from August of 1970 until March of 1972.

14       Q    Was that draft or volunteer?

15       A    I was drafted.

16       Q    Conditions of discharge?

17       A    I received an honorable discharge and good

18   conduct medal.

19       Q    Did there come a point -- obviously, there

20   came a point in your life when you met Donna.  Would

21   you describe when that occurred?  How that occurred?

22       A    I met Donna in November of 1976.

23       Q    And how did the relationship develop?
```

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 32

E-73

BENGE - Direct

1     A     Well, I met her at the recorder of deeds in

2     the old Wilmington courthouse, and I had spoken with

3     her a few times.  I asked her out to lunch, and she

4     said no.

5          So I wasn't getting her attention, and we

6     had a late snow storm that year, actually March of

7     the next year, March of 1977, and I thought if I went

8     over to her house -- I knew where she lived because

9     it was on the way to my uncle's home in Yorklyn,

10    Delaware.  I thought if I went over and shoveled the

11    snow in her driveway, she would pretty much have to

12    go out with me.  So that's what I did, and we started

13    dating after that.

14    Q     When did you marry?

15    A     We were married November 17th of 1979.

16    Q     And the union has produced how many

17    children, names and ages?

18    A     We have three children.  Laura is 23, Sarah

19    is 19, and J.P., whose name is John Paul, is 15.

20    Q     And the two of you, until your separation,

21    raised them jointly?

22    A     That's correct.

23    Q     After your separation, what were the primary

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 33

BENGE - Direct

1    care situations with regard to your children?

2        A    We -- J.P. was the only true minor child.

3    Sarah turned 18 in April of 2002. J.P. was then 13,

4    I guess. Yeah, 13. And J.P. -- custody and

5    parenting of J.P. was shared fifty-fifty in all

6    respects.

7        Q    You were married how many years before your

8    divorce in May of 2002?

9        A    It would be 22 and almost a half, I guess.

10       Q    And had you been married before that time?

11       A    No.

12       Q    And have you been with another woman since

13   that time?

14       A    No.

15       Q    You heard Donna testify last week regarding

16   the fact that -- regarding her interpretation of the

17   facts that led to the demise of the relationship. Do

18   you agree with how she characterized things?

19       A    Mr. Hurley, I don't know. I don't know what

20   happened. I don't know what went wrong.

21       Q    From your point of view, what did you see

22   happening around you?

23       A    What Donna told me she believed was -- was

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 34

BENGE - Direct

1    wrong.  I had to accept her explanation as to why she

2    felt the way she felt.  That's all I can say.

3        Q     Explain to the jury what was being told to

4    you that you ended up in that motel?

5        A     Donna told me in the winter of 2000 that

6    people change and that she thought that we should

7    separate.  I told her that I believe that was the

8    worse thing that could be imaginable for herself, for

9    me, for the kids, for everything that we had held

10   dear to us throughout our lives together.

11           I thought that was just the worse thing

12   because I told her you will drift.  You will find

13   someone else.  And that will destroy everything that

14   we have and everything that we are.  Everything that

15   we've worked to achieve in the 21 years or so that we

16   had been married at that point in time.  And that did

17   not seem to move her at all.

18           She continued speaking along those terms.

19   She grew more distant.  She grew less willing to

20   speak with me.  I had suggested that we go to

21   counseling because I had been, myself, to a counselor

22   and spoken with him for some period of time.  I

23   suggested that Donna come with me because the

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 35

E-76

BENGE - Direct

1    counselor had told me let's see if we can't get your

2    wife in here and sit down and see what the problems

3    are and what we can resolve.

4        I asked Donna if she would go, and she said,

5    "Yes, she would."  I said, "Will you participate,"

6    and she said, "I will go to state my point of view.

7    I will go to tell the counselor how I feel about

8    things, and that's all."  And I said, "That's not

9    participating.  I want this to be something that we

10   go to try to work on our problems, to try to save

11   what we have, to make it work again."  And she said,

12   "No."  That's not something that she was willing to

13   do.

14   Q    We heard her describe life in the Benge

15   household around 2000 where you were not working, you

16   were drinking, and, apparently, sitting on your

17   behind doing nothing.  Would you give your viewpoint

18   with regard to her description in that regard?

19   A    It's true, indeed, Mr. Hurley, that I was

20   not working.  But I'm not the kind of person who can

21   simply sit around and do nothing.  I was working in

22   and around the house doing any number of things.

23       I was speaking with people about the

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 36

E-79

BENGE - Direct

1    week that I don't usually consume alcohol.

2         If you were asking me was I intoxicated all

3    the time, no, I was not.  I do not drink to excess.

4    I do not drink to become intoxicated.  I do not drink

5    in order to black out.  I believe myself to be a

6    social drinker.  I never drink during the day.  I

7    drink only after work is done, usually not before

8    5:00 in the afternoon.

9    Q    In your initial efforts trying to decipher

10   what was going on in Donna's mind to tell you what

11   she told you, did it occur to you in the initial

12   stage that it might be an involvement with another

13   male?

14   A    It did not.

15   Q    Why not?

16   A    Donna told me she was faithful to me.  I

17   believe that.  My fear was that she would go to

18   someone for consolation, for companionship, because

19   she's always been someone who has had male friends.

20   I have always accepted that.  I never viewed that as

21   threatening, but I thought one or more of those

22   relationships might turn into something more than

23   just friendship.  And that she would drift from me,

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 37

E-80

BENGE - Direct

1    and that I would lose her.

2          But I believe her to have been faithful

3    because I asked her, directly, "Is there anyone that

4    is replaced me in your heart." And several occasions

5    that I asked her that, she said, "No."

6    Q    As you look back on it now, did there come a

7    time when you can see the first crack in your belief

8    that she wasn't involved with somebody else?

9    A    The first crack in my belief, my faith in

10   her, my unquestioning faith in her, occurred

11   approximately in October of 2000.

12   Q    Explain that, please.

13   A    We had always went to the beach with my

14   family in August, the first week in August. And when

15   we came home, several months later in August, I was

16   cleaning the dining room in anticipation of using the

17   dining room table to repair some furniture.

18          That's another thing that I did. Donna has

19   a lot of birdseye maple furniture. Over the years,

20   it had gotten pretty beat up. I repaired a lot of

21   that. Using the dining room table, I shouldn't have

22   done that, but it was the only work surface that I

23   had.

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 38

E-92

BENGE - Direct

1    won't forget, and there are several other dates that

2    I'll never forget.

3        Q    What occurred on September 21st that you

4    will never forget?

5        A    Donna received a phone call from her friend

6    in Florida.  I answered the phone.  And gave the

7    phone to Donna.  And Donna and her friend, who spoke

8    very often on the phone, had a long conversation.  I

9    was -- it was in the early evening.  I was doing,

10   pardon me, homework with J.P., and perhaps with

11   Sarah.  And it wasn't until the next day that I

12   listened to the conversation that she had, that Donna

13   had had with her friend.

14       Q    What portion of that conversation had any

15   interest in terms of it, the topic, that we are

16   discussing?

17       A    Well, Donna's voice was very childlike.  It

18   was something -- I hadn't ever heard that tone of

19   voice that she was using.  I even wondered if it was

20   her.  But she was speaking with her friend, and I

21   guess they were both tired because they both started

22   yawning.

23            Donna's friend, whose name is Lynn, said to

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 39

BENGE - Direct

1    Donna, "We are getting old.  Remember how we used to

2    stay up, and you can't do that anymore.  You must be

3    really getting old."  Donna said, "No.  No.  No.  I

4    can still stay up."  Donna said, "I'm having a hard

5    time.  Sometimes it's 3:00 a.m. before I go to bed."

6    And Lynn said, "Well, why?  You can't sleep."  And

7    Donna said, "No, because I don't want to go to bed."

8         And Lynn said, "Well, what are you doing?"

9    And Donna laughed, and, again, it was this very, very

10   childish, child-like sounding laugh.  Donna said,

11   "I'm having fun."  And Lynn said, "I don't

12   understand.  Fun where?"  And Donna said, "At Oak

13   Grove."  And Lynn said, "You mean when John is not

14   there," and Donna said, "Yes."  And Lynn said, "I'm

15   stupid.  I'm stupid.  I don't know what you mean."

16   And Donna just laughed, and then Lynn said, "Oh, oh,

17   I get it.  I'm stupid.  I understand."  And then they

18   went onto talk about some other things.

19   Q    After you heard that, did you approach or

20   confront Donna?

21   A    No.  I did not.  I was very shocked by that.

22   I did not approach her.  I did not ask her about it.

23   I don't believe I ever discussed that telephone call

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 40

BENGE - Direct

1    with Donna.

2        Q    What is the next event that occurs?

3        A    Well, Laura was going to the University of

4    South Carolina.  She was in her final year, her

5    senior year.  She returned home the weekend of

6    October the 15th.  South Carolina has a fall break.

7    I'm not sure why because it's a big football school,

8    and a fall weekend is a big deal down there.  But

9    Laura came home, and she was with us for a while.

10        On Monday night, October the 15th, Laura was

11    still there.  She wasn't going to return to school

12    until the next day, and Donna, very

13    uncharacteristically, decides she was going to go to

14    work.  She did not say she had a project she had to

15    get done or anything she needed to finish.

16        And Donna and Laura have always had a very

17    special, special relationship.  Donna calls Laura my

18    baby even though J.P. is the youngest child, and for

19    Donna to leave the house when Laura was home,

20    especially since Laura was away from the family, was

21    very unusual.  It seemed very strange to me that

22    Donna was doing that.

23        Q    What happened?

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 41

BENGE ~ Direct

1       A    Well, I was, again, doing something I'm

2   very, very ashamed of.  I listened to the phone calls

3   from that day, and there was a phone call that Donna

4   had placed earlier in the day to the Wyndham Motel in

5   Wilmington, and she had spoken to her boss.  The

6   fellow that you called John Doe or Jim Doe, and Donna

7   had gone to see him at his hotel room that Monday

8   night, October 15th.

9       Q    Do you remember any of the specifics of the

10  conversation that you heard that had an impact on

11  you?

12      A    Yes, I do.

13      Q    What?

14      A    Donna asked Mr. Doe if he wanted her to

15  bring dinner to his room, and he said, "He wasn't

16  sure.  It didn't matter."  She asked him which room

17  he was in, and he said, "Room 801," and Donna said,

18  "Up there again."  And he said, "That's right."

19          And then he asked her if she was coming to

20  see him, and she said, "Yes.  But I have a lot of

21  work to do," and Mr. Doe said, "So you're not going

22  to make love to me tonight."  And Donna said, "No.

23  No, I'm not."

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 42

E-96

BENGE - Direct

```
1              And Mr. Doe hesitated for a moment.  His
2     voice got caught, and Donna said, "I have a lot of
3     work to do.  I have to go to work.  So don't touch me
4     because you know what happens."  And Mr. Doe said,
5     "You know what happens when you touch me.  So it's
6     something mutual.  So I guess we better not touch
7     each other."
8         Q    Was Donna your wife when you heard that
9     conversation?
10        A    Yes.
11        Q    Was there any agreement between the two of
12    you that allowed you to go out, from your point of
13    view?
14        A    Go out?
15        Q    With other people, sexually?
16        A    No.  No.  We had a strictly monogamous,
17    committed relationship, husband and wife.  If I had
18    suggested anything of that nature to Donna, I would
19    have expected her to leave me immediately.  And if
20    she had suggested that she wanted to be with other
21    people intimately, I would have been completely
22    devastated, surprised mostly, but devastated that she
23    felt that need or desire.  We had committed to each
```

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 43

BENGE - Direct

1    other.  We had taken vows to cleave only to one

2    another.

3        Q    You have heard from Donna that you

4    confronted her about that conversation.  Give us your

5    version.  She gave us her version.

6        A    I called Donna on the telephone at the

7    office the next day, which would be Tuesday, after

8    Laura had returned to school.

9            And I said, "What are you doing?  What is

10   going on with your boss?"  And she said, "What are

11   you talking about?  There is nothing going on with my

12   boss."  And I said, "Donna, I know that you were in

13   Room 801 at Wyndham Hotel last night with him," and

14   she said, "How do you know?  Are you having someone

15   follow me?"  I said, "No.  What is going on with your

16   boss?  Tell me," and she would not comment on that.

17           She said, "I am at work.  I have to get back

18   to work."  And I said, "Donna, we have to talk about

19   this.  We have a family.  We've got a life that we

20   lived together.  We have a future together.  And I

21   want to talk with you about this."  And she said that

22   she couldn't talk, and that was pretty much the end

23   of the conversation.

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A44

E-93

BENGE - Direct

1      Q    When did you next talk to her about the John

2    Doe-Jim Doe topic?

3      A    I tried to speak with her during the week,

4    but I don't recall that I was successful, and she was

5    going to Oak Grove that weekend.  I did not go

6    Friday.

7          I drove J.P. down on Saturday, and Saturday

8    night I got there with J.P. about 8:00, after dark.

9    And I said, "Please, Donna, take a walk with me," and

10   as we had done so many times before, for decades, we

11   walked around Oak Grove and down to Sixth Street, and

12   I questioned her about her relationship with her

13   boss, what she was doing.  And she was very evasive.

14   And I can recall I just couldn't get a straight

15   answer from her.

16         And then as we were walking on Sixth Street,

17   in an area where there were no cars parked, and there

18   was no one around, and it's sort of a -- it's not a

19   dead end, but it's sort of a portion of the street

20   where there are really no houses.  No reason for

21   anybody to be there.

22         Stacey Smith came walking along very slowly,

23   walked on the other side of the road, as if he

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER
A45

E-99

BENGE - Direct

1    somehow thought -- it seemed to me that he ought to
2    be a part of the conversation, and I stopped talking
3    to Donna, and she said hello to Stacey, and I waited
4    for him to pass by, which was a long time.  He was
5    looking at us both, and we were interrupted.
6            And I came back, and I said, "Donna, I know
7    you were with him, and I want to know are you having
8    sex with him.  Did you sleep with him?"  And she
9    said, "No."  And I said, "Well, was there sexual
10   contact," and she said, "Yes, John.  Yes, there was a
11   lot of it."
12           And I said, "What are you doing?  You can't
13   think this is good for you.  You can't think a
14   relationship with your boss is going to go anywhere.
15   He is married.  He has a wife.  He has children.
16   This is not someone that is going to make a
17   commitment to you, and you're jeopardizing your job.
18   Don't you read the newspapers?  A sexual relationship
19   at work is a powder keg waiting to explode in this
20   day and age.  It's just not something that people
21   should do.  It's not appropriate at all for that to
22   occur at work.  You are jeopardizing your job."
23           And that was pretty much the end of the

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 46

E-100

BENGE - Direct

1      conversation.  I got in the car and went home.

2          Q     On that occasion, or the later occasion, did

3      you get more specific with regard to a description of

4      the sexual activity?

5          A     I spoke with her about that.  I told her the

6      next week -- I said, "This has got to stop.  You are

7      going to tell Mr. Doe that he is going to stop it.

8      He is going to tell his wife.  He is going to tell

9      you that he told his wife.  You are going to tell me

10     that he has told his wife.  And that's the end of

11     that.  It's going to stop.

12          And if you don't tell him, I will call his

13     wife, and I will tell her what's going on.  And if

14     you don't tell me that has been done, then I will

15     call his boss, and I will tell him, Mr. Doe's boss,

16     what is going on."

17          And I told Donna, "I forgive you."

18          Q     Was there any reference to any specific

19     sexual activities, either made by you and

20     acknowledged by her, or made by her?

21          A     Yes, Mr. Hurley, there was.  I was upset

22     with her at one point.  This was some weeks later.

23     After I confronted her about the necessity for

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 47

E-101

BENGE - Direct

1    Mr. Doe to inform his wife.  I confronted her, and

2    yes, I was trying to see if she had understood how

3    inappropriate it was for her to be carrying on with

4    someone at work, and I just wasn't getting anywhere,

5    and I was frustrated, and yes, I did say something

6    about what had been going on between them.  I'm not

7    proud of it, but I said it.

8        Q    As a result of that comment, what was your

9    understanding of the nature of the contact between

10   them, the sexual contact?

11       A    That they had not had sex involving

12   penetration of Donna vaginally, but she had sex

13   involving manual or oral relations.

14       Q    Did you know where he worked?

15       A    Oh, yes.  Yes, I did.

16       Q    Did you go and confront him violently?

17       A    No.  In fact, I didn't speak with Mr. Doe

18   for almost a full year after that.

19       Q    Did you get violent with her?

20       A    No.  Mr. Hurley, I did not.  I told her that

21   I forgave her.  That I would forgive her a thousand

22   times.

23       Q    After the October 15th conversation in the

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A 48