IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN H. BENGE, | : |
|           Petitioner, | : |
| v. | :   Civ. Act. No. 05-550-GMS |
| RICK KEARNEY, Warden,<br>CARL C. DANBERG, Attorney General<br>of the State of Delaware, | : |
|           Respondents. | : |

## ANSWER[1]

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, the respondents state the following in response to the petition for a writ of habeas corpus:[2]

In August 2003, after a seven-day jury trial, a Superior Court jury in Sussex County convicted the petitioner, John H. Benge, of second degree assault as a lesser included offense of attempted first degree murder, offensive touching as a lesser included offense of second degree assault, and first degree criminal trespass as a lesser included offense of second

---

[1] By order dated September 28, 2006, the Court struck the resondents' answer which was filed on December 28, 2005. The petitioner has two pending federal habeas actions (Civ. Act. Nos. 05-550-GMS and 05-551-GMS), and according to the Court, the respondents had misnumbered the corresponding answers. Counsel notes that he discussed the matter with the Clerk of the Court when the copy of the petition was received without a case number affixed. Pursuant to the Court's instruction, the answers have been renumbered and submitted without additional argument.

[2] Pursuant to the Court's order and Civil Rule 25(d)(1), Carl C. Danberg, who succeeded M. Jane Brady as Attorney General for the State of Delaware, is substituted as a party in this proceeding.

degree burglary. The jury acquitted Benge of two weapons offenses. (A1).[3] Other charges of possession of a weapon by a person prohibited and two counts of violation of a protection from abuse order were severed prior to trial. Benge pled guilty to those charges and was sentenced in a separate state court proceeding. *See* Op. Brf. in *Benge v. State*, No. 544, 2003 at 1. Benge was sentenced to a cumulative sentence of nine years and one month in prison followed by probation.[4] The record reveals that Benge did not pursue state post-conviction remedies. (D.I. 1 at 3 (¶ 10)).

### Facts

In the direct appeal, the state supreme court provided the following recitation of facts:

> In response to a 911 call, the Rehoboth Beach Police arrived at the Oak Grove Motor Court Inn to find Benge and Edward Stacey Smith involved in an altercation outside the motel. Smith, who was on top of Benge at the time the police arrived, had sustained a gunshot wound to his chest. At the scene, the police recovered two loaded handguns, two speed loaders, several live, loose .22 caliber rounds, and two holsters which were attached to Benge's belt.
>
> This incident was the result of the deterioration and later dissolution of the marriage between Benge, and his ex-wife, Donna Kay Lovett. Lovett informed Benge that she wanted to separate and moved into her brother's North Wilmington home. In fact, Benge had checked her phone records, and placed a recording device under Lovett's bed with a microphone attached to

---

[3]"A" refers herein to the appendix submitted with the opening brief in *Benge v. State*, Del. Supr. Ct. No. 544, 2003.

[4]Benge also pled guilty in the Delaware Superior Court in and for New Castle County on January 13, 2004 to two counts of third degree burglary (DEL. CODE ANN. tit. 11, § 824)), three counts of unlawful interception of oral communications (wiretapping) (DEL. CODE ANN. tit. 11, § 2402), and one count of attempted wiretapping. Benge was sentenced on March 19, 2004 to five years in prison, suspended after three years for probation on the first wiretapping charge. That conviction is the subject of a separate federal habeas proceeding (*Benge v. Kearney*, No. 05-550-GMS). *See Benge v. State*, No. 137, 2004 (Del. Nov. 12, 2004).

the mattress. After some time, Lovett returned to the couple's home in Centreville. From that point on Benge continually sought reassurance from Lovett that she had not fallen in love with someone else.

In October 2001, Lovett filed for divorce, left the Centreville home and permanently moved to her brother's house in North Wilmington. After Lovett left, Benge took a set of her new house keys and duplicated them. He then used those duplicate keys to enter the North Wilmington home on several occasions, continuing to do so even after the divorce had become final. On one of these occasions he placed a voice-activated tape recorder in the dresser located in Lovett's bedroom. Furthermore, her brother, the owner of the North Wilmington home, saw Benge driving near the house at around the time of the break-in.

After the divorce was final, Lovett began a new relationship with Smith, a man whom she had known for several years. Smith was an elementary school teacher and worked during the summer as a maintenance man at Oak Grove, which Lovett's family owned.

In October 2002, Benge drove to the motel and took with him two loaded handguns with holsters, extra ammunition in two speed-loaders, a pair of wirecutters, and a can of high-intensity pepper spray. When Benge reached the motel, he illegally entered room number five, using a duplicate set of keys. After consuming alcohol, he left the motel room and went in search of Lovett and Smith. Once outside the motel, Benge cut the telephone line that ran to the facility. He then entered the motel office, which has separate apartments on each side. Benge entered one of the apartment bedrooms where he found Lovett. He confronted her, demanding to know where Smith was. After apparently failing to get the answer he wanted, Benge sprayed Lovett in the face with the pepper spray. Lovett ran from the bedroom to the living room and tried to unlock the door of the apartment. Benge then pulled her back and sprayed her again.

Smith heard Lovett screaming and entered the room from the other apartment. When Smith entered the room Benge released Lovett, whom he had been holding with a weapon at her face. Lovett then fled to the motel office and managed to call the police on her cell phone. Lovett observed Benge and Smith struggling in the apartment and heard two gunshots.

After Benge released Lovett, he sprayed Smith in the face and chest with the pepper spray. A struggle ensued and Benge drew one of his handguns. Smith heard gunshots and tried to push Benge out the door. As a result of the struggle, Smith sustained a gunshot wound to his chest, a punctured right eardrum, irritated eyes, a gouge in his left foot, and other less serious injuries.

At trial Benge testified that he had been so distraught over the divorce that he had decided to kill himself and claimed that he wanted to commit suicide in front of Lovett and Smith. Benge expressly denied any intention to harm anyone else. Benge further claimed that once inside the motel office, however, he decided against suicide, but panicked when he saw Lovett and as a result sprayed her with the pepper spray. When Smith charged him, he also sprayed Smith. Benge also testified that during the struggle, he could not see what was going on because his sweatshirt was pulled over his head. Although, Benge acknowledged that his gun went off, he denied pulling the trigger. Benge did admit, however, that he had duplicated Lovett's keys and used those keys to enter the North Wilmington home where he had placed the tape recorder.

*Benge v. State*, No. 544, 2003, order at ¶¶ 2-9 (Del. Nov. 15, 2004).

## Discussion

In his habeas petition (D.I. 1) and a supporting brief (D.I. 3), Benge presents five grounds for relief:[5] 1) the trial court should have given a "specific unanimity instruction as to assault second degree"; 2) the trial court gave an "incomplete instruction on lesser included offenses" regarding the weapon used during the attack; 3) the prosecutor improperly impeached Benge's character when Benge testified; 4) evidence of the unlawful electronic

---

[5] The copy of the petition (D.I. 1) served on the respondents refers only to four claims whereas the opening brief (D.I. 3) presents five claims. The petition does not include argument IV of the opening brief. Because the opening brief discusses each of the five claims, which otherwise correspond in the order they are listed in the petition, the respondents address all five issues.

4

interception charges prejudiced the result of his trial; and 5) the sentences imposed exceeded the maximum penalties authorized by state law which violated the Sixth Amendment and the rule of *Blakely v. Washington*, 542 U.S. 296 (2004). (D.I. 1 (unnumbered pages); D.I. 3).

*Claims One, Two and Three are Procedurally Barred*

Benge presented claims one, two and three as listed above to the state supreme court on direct appeal, and thus state remedies are exhausted. *See* 28 U.S.C. § 2254(b); *Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). Consideration of the three claims is precluded, however, because he defaulted the claims in the state courts.

After finding that a petitioner has exhausted state remedies, this Court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of constitutional error in a state conviction." *Bond v. Fulcomer*, 864 F.2d 306, 310 (3d Cir. 1989). Benge, however, did not comply with state procedural requirements. Benge presented the three issues on appeal, without having presented them first in the Superior Court. The Delaware Supreme Court specifically found that Benge had not presented the claims during the trial proceedings. *Benge v. State*, No. 544, 2003, order ¶¶ 13-17 (Del. Nov. 15, 2004). Accordingly, the Delaware Supreme Court rejected each of the three claims on procedural grounds, reviewing only for plain error under Delaware Supreme Court Rule 8. *Id.* Under Rule 8, "Only questions fairly presented to the trial court may be presented for review" on appeal. DEL. SUPR. CT. R.8; *see Harris v. Reed*, 489 U.S. 255, 263-64 (1989). This Court has repeatedly held that Rule 8 is an independent and adequate state procedural rule which precludes federal habeas review. *See, e.g.*, *Johnson v. Carroll*, 327 F. Supp. 2d 386, 394 (D. Del. 2004), *aff'd*, 2005 WL 2662326 (3d Cir. 2005);

*McLaughlin v. Carroll*, 270 F. Supp. 2d 490, 517-18 (D. Del. 2003); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 452-53 (D. Del. 1998); *Dawson v. Snyder*, 988 F. Supp. 783, 825 (D. Del. 1997).

The state procedural bar of Rule 8, therefore, is an independent and adequate state law ground under *Wainwright v. Sykes*, 433 U.S. 72 (1977) which would preclude federal habeas review of Benge's claims unless he can establish cause for his procedural default and resulting prejudice, or that a miscarriage of justice would result if the Court refused to hear the claims. *See* 28 U.S.C. § 2254(a); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Harris*, 489 U.S. at 262; *Murray v. Carrier*, 477 U.S. 478, 493 (1986); *Caswell v. Ryan*, 953 F.2d 853, 860-61 (3d Cir. 1992); *Neely v. Zimmerman*, 858 F.2d 144, 147 (3d Cir. 1988); *Dawson*, 988 F. Supp. at 804-05. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478, 487 (1986); *McLaughlin*, 270 F. Supp. 2d at 501; *Dawson*, 988 F. Supp. at 805. To establish prejudice under the cause and prejudice standard, a petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *Dawson*, 988 F. Supp. at 804-05.

Benge, however, has not alleged, and the record does not reveal, cause for his procedural default. *See Coleman*, 501 U.S. at 752; *Murray*, 477 U.S. at 487; *Dawson*, 988 F. Supp. at 809-10. Because Benge has not alleged and the record does not reveal cause for his procedural default, this Court need not reach the question of whether he has shown any actual

6

prejudice. *See Coleman*, 501 U.S. at 757; *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Lawrie*, 9 F. Supp. 2d at 454; *Dawson*, 988 F. Supp. at 804-05; *Carter v. Neal*, 910 Supp. 143, 151 (D. Del. 1995). Accordingly, Benge's first, second and third claims should be rejected as procedurally barred.

The "miscarriage of justice exception" to the procedural default rule applies only to "extraordinary cases." *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 496, *cited in Carter*, 910 F. Supp. at 151. To establish a miscarriage of justice, Benge must show that it is more likely than not that no reasonable juror would have convicted him. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992) (holding a miscarriage of justice "in a colloquial sense is the case where the State has convicted the wrong person of the crime"). Here, Benge has not alleged any facts that would tend to establish that he is actually innocent of the crimes for which he was convicted, or that the Court's failure to consider his claims will otherwise result in a fundamental miscarriage of justice. *See Dawson*, 988 F. Supp. at 807-08; *Carter*, 910 F. Supp. at 151.

*Fourth Claim Presents Only an Issue of State Law*

In the fourth claim, Benge argues that the admission of prior bad acts evidence prejudiced his case. As the argument goes, the trial court improperly admitted evidence regarding the then-pending charges wiretapping. *See supra* note 1. Benge argued in the state supreme court that the holding of *Getz v. State*, 538 A.2d 726 (Del. 1988) "was offered as controlling" precedent. (D.I. 3 at 70). Benge is thus renewing argument I from his opening brief on direct appeal, i.e., that the prior bad act evidence was admitted in violation of Delaware Rule of Evidence 404(b).

In the state courts, Benge presented the substantive claim here only as a violation of state evidentiary rules and not as a federal due process claim. *See* Op. Brf. in No. 544, 2003 at i, 8-13. To satisfy the exhaustion doctrine, a petitioner who challenges admission of evidence at trial as a violation of due process under the Fourteenth Amendment must first present that claim in the state courts. *E.g., McLaughlin v. Carroll*, 270 F. Supp. 2d 490, 515 (D. Del. 2003) (federal due process claim not exhausted where petitioner's brief on direct appeal mentioned only state law without arguing federal law); *Bright v. Snyder*, 218 F. Supp. 2d 573, 578 (D. Del. 2002) (same) (citing *Duncan v. Henry*, 513 U.S. 364, 366 (1995)). Benge did not present a claim based on the Due Process Clause in the first instance to the state courts, and therefore the claim is unexhausted. Accordingly, Benge's federal due process claim cannot provide a basis for federal habeas relief. *See* 28 U.S.C. §2254(b); *see, e.g., Bright*, 218 F. Supp. 2d at 579-80.

Benge also invokes *Getz v. State*, 538 A.2d 726 (Del. 1988), a case which provides an analytical framework under Delaware law for determining the admissibility of prior act evidence under Delaware Rule of Evidence 404(b). (D.I. 3 at 70-71). A challenge to the trial court's application of Delaware's evidentiary rules, however, constitutes a state law claim which fails to articulate a basis for federal habeas relief. *See McLaughlin*, 270 F. Supp. 2d at 515; *Bright*, 218 F. Supp. 2d at 578-79; *Kendall v. Attorney General of Delaware*, Civ. Act. No. 01-231-JJF, 2002 WL 531221 at *6 (D. Del. Mar. 26, 2002). This is so because claims based on errors of state law do not provide a basis for federal habeas relief. *See generally* 28 U.S.C. § 2254(a); *Romano v. Oklahoma*, 512 U.S. 1, 7 (1994); *Estelle v. McGuire*, 502 U.S. 62, 67-79 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Taylor*, 277 F.3d 261, 310 & n.8 (3d Cir. 2001). Thus, Benge's claim that evidence was admitted at trial in

violation of Delaware's rules of evidence is not cognizable in this federal habeas proceeding. *McLaughlin*, 270 F. Supp. 2d at 514-15; *Bright*, 218 F. Supp. 2d at 581 & n.1; *Kendall*, *supra*, order at *6.

It is clear from a review of the state court records from the direct appeal that Benge alleged only a violation of state law under Delaware Rule of Evidence 404(b). Facially, Benge's brief filed in the Delaware Supreme Court does not cite federal decisional authority or otherwise mention constitutional or federal law. *See* Op. Brf. in No. 544, 2003 at 8-13. In the argument presented to the state supreme court on direct appeal, Benge cited only to state cases which do not refer to constitutional analysis. The cursory reference to "F.R.E. 403 advisory committee note" in the opening brief (p.13) does not compel a different conclusion. Delaware Rule of Evidence 404(b) tracks Federal Rule of Evidence 404(b). *See Pitts v. Redman*, 776 F. Supp. 907, 921 n.13 (D. Del. 1991), *aff'd,* 970 F.2d 899 (3d Cir.), *cert. denied*, 506 U.S. 1003 (1992); DEL. R. EVID. 404 cmt.; *Tice v. State*, 624 A.2d 399 (Del. 1993). And the balancing test of Rule 403 is a part of the analytical framework of Getz. But Benge's conclusory reference to the advisory committee note accompanying Federal Rule of Evidence 403 was not advanced for the proposition that Benge was presenting a claim grounded in notions of federal due process. *Cf. Walters v. Maass*, 45 F.3d 1355, 1357-58 & n.3 (9th Cir. 1993); *Brown v. Williams*, 820 F. Supp. 64, 69-70 (W.D.N.Y. 1993). Thus, Benge challenged admission of the prior bad act evidence only as a state law claim. *Cf. McLaughlin*, 270 F. Supp. 2d at 515; *Bright*, 218 F. Supp. 2d at 578-79; *Kendall*, *supra*, mem. op. at 12-13.

Further, the State's answering brief in the direct appeal filed by state prosecutors does not reveal any indication that prosecutors viewed Benge as having raised this claim as a

federal matter. *See* Ans. Br. in No. 544, 2003 at 9-15; *see also Brown v. Cuyler*, 669 F.2d 155, 159 (3d Cir. 1982) (holding state's understanding of a petitioner's argument, as reflected in its brief before the state court, may shed light on whether a petitioner has exhausted state remedies). The answering brief similarly does not refer to federal or constitutional law. *See* Ans. Brf. in *Benge v. State*, No. 544, 2003 at ii-iii, 9-15. Finally, the Delaware Supreme Court did not analyze the evidentiary issues presented by Benge on direct appeal as a constitutional or federal claim, instead determining the issue under the well-established framework articulated in *Getz*. *See Benge*, order at ¶¶ 10-11. Thus, in the fourth claim, Benge's allegation of a violation of state evidentiary law fails to provide a basis for federal habeas relief. *E.g.*, *McLaughlin*, 270 F. Supp. 2d at 515; *Bright*, 218 F. Supp. 2d at 578-79; *Kendall*, *supra*, mem. op. at 12-13; see 28 U.S.C. § 2254(a).

*Fifth Claim–Sentencing Decision Does Not Provide a Basis for Relief*

In the fifth claim, Benge contends that the holding in *Blakely v. Washington*, 542 U.S. 296 (2004) invalidates the statutory maximum sentences he received for the three convictions in this case. Benge does not (and cannot) contend that the sentences exceeded the maximum penalty proscribed by statute, but instead claims that the sentences exceeded Delaware's voluntary sentencing guidelines. Benge received an aggregate sentence of nine years and one month in prison followed by probation. More specifically, the Superior Court sentenced Benge for the second degree assault conviction to 8 years in prison followed by probation with credit for time served. Second degree assault is a class D felony punishable by a maximum statutory term of eight years in prison. *See* DEL. CODE ANN. tit. 11, §§ 612(d), 4205(b). The Superior Court also sentenced Benge to one year in prison for the first degree criminal trespassing conviction. The crime is a class A misdemeanor which may include a

statutory term of one year in prison. *See* DEL. CODE ANN. tit. 11, §§ 823, 4206. Finally, the Superior Court sentenced Benge to 30 days in prison for the offensive touching conviction. *See* DEL. CODE ANN. tit. 11, §§ 601, 4206(c). Thus, Benge was sentenced within the applicable statutory limit under state law, and Benge does not dispute this point. *See* D.I. 3 at 3.

It is well-settled that a question of state substantive law is not a proper subject for federal habeas corpus review. 28 U.S.C. § 2254(a); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42-43 (3d Cir. 1984). A state court's sentencing decision, which is authorized by law and does not exceed statutory limits, and the claims arising out of that decision are generally not constitutionally cognizable. *Dorn v. Kearney*, Civ. Act. No. 96-301-SLR, 1997 WL 811565 at *2 (D. Del. Dec. 10, 1997); *Twyman v. Brewington-Carr*, Civ. Act. No. 96-265-SLR, 1997 WL 309456 at *3 (D. Del. Apr. 7, 1997). Thus, sentencing is considered a matter of state law even if the petitioner's claim is couched in terms of due process. *Twyman*, *supra* at *3 (citing *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)). Under Delaware law, the SENTAC sentencing guidelines are considered voluntary and non-binding. *Dorn*, *supra* at * 3; *Mayes v. State*, 604 A.2d 839, 845-46 (Del. 1992); *Gaines v. State*, 571 A.2d 765, 766-67 (Del. 1990); *Ward v. State*, 567 A.2d 1296, 1297 (Del. 1989). Accordingly, as this Court has held repeatedly, a challenge to the Superior Court's departure from the SENTAC guidelines presents only a question of state substantive law, for which federal habeas relief is unavailable. *E.g., Felicetty v. Bianco*, Civ. Act. No. 02-585-JJF, 2003 WL 21402544 at * 6 (D. Del. June 10, 2003); *Dorman v. Brewington-Carr*, Civ. Act. No. 98-223-SLR, 2002 WL 393105 at * 3 (D. Del. Mar. 12, 2002) ("Whether the Superior Court sentenced petitioner in

accordance with Delaware's Truth-In-Sentencing Guidelines is a question of state law."); *Schmitz v. Carroll*, Civ. Act. No. 02-1527-GMS, 2003 WL 22299028 at *21-22 (D. Del. Oct. 7, 2003) ("[A] federal court will review only those state decisions that exceed or are outside the statutory limits or are wholly unauthorized by law.") (citing cases); *Dorn*, *supra* at *2-3; *Twyman*, *supra* at *3; *see also Hoover v. Snyder*, 904 F. Supp. 232, 234-35 (D. Del. 1995).

Benge's reliance on *Blakely* does not compel a different conclusion. In permissive supplemental briefing filed on direct appeal, Benge presented a claim based on *Blakely*. Accordingly, state remedies are exhausted. Benge's petition is subject to the terms of the Antiterrorism and Effective Death Penalty Act of 1996. *See generally Lindh v. Murphy*, 521 U.S. 320, 326 (1997) (holding the AEDPA applies to "such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 433 n.1 (D. Del. 1998); *Dawson v. Snyder*, 988 F. Supp. 783, 802-03 (D. Del. 1997). Title I of the Act amended various sections of chapter 153 of the Judicial Code (28 U.S.C. §§ 2241-55) and created a new chapter 154 which established special procedures for federal habeas review of capital sentences if the State meets certain criteria (28 U.S.C. §§ 2261-66). As revised, 28 U.S.C. § 2254 restricts the scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court with respect to claims adjudicated on the merits in state court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir. 1999) (*en banc*). The state supreme court in Benge's case, however, did not address the issue on the merits in the written order determining the direct appeal. Accordingly, review is under pre-AEDPA standards. *See, e.g.*, *Melendez v. Carroll*, Civ. Act. No. 1537-SLR, mem. op. at 11-12 (D. Del. Jan. 5, 2006) (citing *Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004)).

*Blakely* was a case specific application of the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See Blakely*, 542 U.S. at 301; *see also Ring v. Arizona*, 536 U.S. 584 (2002). The rule in *Blakely*, consistent with *Ring* and *Apprendi*, stands simply for the proposition that the "statutory maximum" sentence is the maximum sentence a judge may impose based solely on the facts as reflected in the jury's verdict or admitted by the defendant. In *Blakely*, the Court held that the Washington sentencing scheme did not comply with the Sixth Amendment right to trial by jury because it contemplated mandatory sentence enhancement based upon facts found by the judge and not the jury. The *Blakely* Court, however, emphasized that indeterminate, i.e., non-binding, sentencing schemes, such as Delaware's voluntary sentencing guidelines, do not improperly "infringe on the province of the jury." 524 U.S. at 309. And as discussed *supra*, this Court has repeatedly recognized that, under Delaware law, the sentencing guidelines are voluntary and non-binding such that no party has a right to appeal a sentence which does not conform to the sentencing guideline standards.

The United States Supreme Court holding in *United States v. Booker*, 125 S. Ct. 738 (2004) supports the proposition that *Blakely* does not invalidate Delaware's non-binding sentencing guidelines. In *Booker*, the Court held that the federal sentencing guidelines were subject to the jury trial requirements of the Sixth Amendment. The Court said that the Sixth Amendment requirement that the jury find certain sentencing facts was incompatible with the Federal Sentencing Act, thus requiring severance of the Act's provisions making the guidelines mandatory. This remedial interpretation of the Act without its "mandatory" provision passed constitutional muster. 125 S. Ct. at 766-67. Thus, Delaware's non-binding

sentencing guidelines are in accord with *Booker's* remedial interpretation of the Federal Sentencing Act.

Accordingly, neither *Blakely* nor *Booker* impacts Delaware's voluntary and non-binding sentencing guidelines.  In this case, the Superior Court was statutorily authorized to impose the sentences on Benge by virtue of the jury's verdict standing alone. *See Blakely*, 524 U.S. at 309 ("In a system that says the judge may punish a burglar with 10 to 40 years, every burglar knows he is risking 40 years in jail.").  Thus, Benge's sentences in this case comport with *Blakely* and the requirements of federal law, and thus habeas relief is foreclosed under 28 U.S.C. § 2254(a).

Conclusion

Based upon a review of the record, it appears that a transcript of Benge's trial proceedings and sentencing hearing have been prepared. In the event that the Court directs production of any other transcript, the respondents cannot state with specificity when the transcript could be produced, but reasonably expect that production would take 90 days from the issuance of any order by the Court.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ _____
Thomas E. Brown
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE  19801
(302) 577-8500
Del. Bar ID#  3278
*ThomasE.Brown@state.de.us*

Date: October 30, 2006

**CERTIFICATE OF SERVICE**

The undersigned, being a member of the Bar of this Court, hereby certifies that on October 30, 2006 he caused to be electronically filed the attached document (Answer) with the Clerk of the Court using CM/ECF. I hereby certify that on October 30, 2006 I have also caused to be mailed by first class U.S. Mail two copies of the document to the following non-registered participant, the petitioner:

John H. Benge (No. 494395)
Sussex Correctional Institute
P.O. Box 500
Georgetown, DE 19947.

      /s/_____
Thomas E. Brown
Deputy Attorney General
Del. Dept. of Justice

Counsel for Respondents

Date: October 30, 2006