ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

John H. Benge, Jr., )
)
*Petitioner* )     C.A. No. 05-0550 (GMS)
)
v. )
)
Rick Kearney, Warden )
Sussex Correctional )
Institution; and Carl )
C. Danberg, Attorney )
General of the State )
of Delaware, )
)
*Respondents* )

FILED

NOV - 3 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

# PETITIONER'S REPLY BRIEF IN SUPPORT OF
# PETITION FOR *HABEAS CORPUS*

John H. Benge, Jr.
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

November 2, 2006

## TABLE OF CONTENTS

Page

Table Of Citations............................................................................iii

Supplemental Statement of the Nature and
Stage Of the Proceedings ......................................................................1

Argument

1. Each Of Petitioner's Claims For
   Habeas Corpus Relief Have Been Exhausted ...............................4

A). "Fair Presentation " Of A Habeas
    Corpus Claim .......................................................................4

B). Fair Presentation Of Petitioner's Habeas
    Corpus Claims......................................................................8

   1). The Schad Due Process Claim......................................8

   2). The Erroneous "Dangerous Instrument" 5th
       Amendment Claim ...............................................11

   3). The Prosecutorial Misconduct 5th Amendment.................13

   4). The Blakely 6th Amendment Sentencing ...........................17

   5). The DRE 404 (b) "Prior Bad Acts" Evidence
       5th Amendment Due Process Claim......................................18

   6). The Scope Of Review ......................................................24

   7). Futility Of Further Review ...................................25

II. Petitioner's Claims Are Not Procedurally Barred ....................26

   A). The Procedural Bar Rule.......................................................26

i

B. Delaware Supreme Court Rule 8 ................................28

  1). The Text and History Of Rule 8................................28

  2). The Operations Of Rule 8........................................ 29.

  3). Procedural Bar In The Third Circuit ...................................33.

  4). Petitioner's Claims Were Decided On The Merits

  5). The Adequacy Of Rule 8………………………………………37

  6). Respondent's Assert A Previously Unrecognized
      Procedural Bar As To The Prosecutorial
      Misconduct Claim………………………………………….. 39

  7). Cause And Prejudice…………………………………….. 44

III. Delaware's  Sentencing Scheme Violates The 6th
      Amendment As Applied To Petitioner …………………………48

  A). Blakely Issues Do Not Present Matters Of State Law……….. 48

  B). The Enhancement Of Petitioner's Sentence
      Was Impermissible Under the 6th Amendment……………….65

Conclusion……………………………………………………….. 67

  A. Petitioner Is Entitled To Relief Under 28. S. C. §2254…………67

  B. Amendment Of Petitioner/Stay And Abeyance ………………..68

  C. Certificate of Appealibility………………………………………69

**Tables**

    **Table 1**
    **Table 2**
    **Table 3**

**Certificate Of Service**

## TABLE OF CITATIONS

CASES

*Amadeo v. Zant,* 486 U.S. 214 (1988)………………………………… 67

*Appel v. Horn*, 250 F.3d 203 (3rd Cir., 2001)……………………………… 47

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)……………………………… passim

*Baldwin v. Reese*, 541 US __ (2004)………………………………………… 4

*Banks v. Dretke,* 540 U.S. 668 (2004)…………………………………… 44

*Benge v. State*, Order, No. 137, 2004, November 12, 2004 (Del.)……….. passim

*Biasaccia v. Attorney General*, 623 F.2d 307 (3rd Cir., 1980) *cert. denied,*
   449 U.S. 1042 (1980)…………………………………………………... 6

*Blakely v. Washington*, 542 U.S. ___ (2004)…………………………… passim

*Boatson, v. State,* 457 A. 2d 738 (Del., 1983)……………………………….16

*Bowling v. Parker,* 344 F. 3D 487 (6th Cir., 2003)……………………… 40

*Bradshaw v. Richey, 546 U.S.* ___(2005)………………………………… 30

*Brokenbrough v. State,* 522 A. 2d 851 (1987)………………………… 16

*Bronshtein v. Horn, 404 F. 3rd 700* (3rd Cir., 2005)…………………… 26

*Brown v. Allen*, 344 US 443 (1953)……………………………………… 49

*Brown v. Payton*, __US__ (2005)………………………………………… 49

*Bullock v. State, 775* A.2d 1043 (Del., 2001)…………………………… 24

*Cabrera v. Barbo,* 175 F. 3rd. 307 (3rd. Cir., 1999)……….…………… . 34

*Capano v. State,* __A.2d __ (Del., 2006)…………………………………… 60

*Capano v. State,* 781 A.2d 556 (Del., 2001)…………………………… 23

*Castille v. Peoples*, 489 US346 (1989)…………………………………… 6

*Clayton v. State,* 765 A. 2d. 940 (Del., 2000)............................... 16

*Coleman v. Thompson,* 501 U.S. 722 (1991)............................... 26

*Daniels v. State,* 859 A. 2d 1008 (Del., 2004)............................... 15

*Daye v.Attorney eneral Of New York,* 696 F.2d 186 (2nd Cir.,1982) .......... . 6

*Deshields v. State,* 706 A 2d 502 (Del., 1998)............................... 22

*Doctor v. Walters,* 96 F.3d 675 (3Rd Cir., 1996)............................... 7

*Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)............................ 16

*Dowling v. United States,* 493 U.S. 342 (1990) ............................. 24

*Duncan v. Henry,* 513 US 364 (1995)........................................... 5

*Dye v. Hofbauer,* __US__(2005)................................................. 8

*Duphily v. Delaware Electric Cooperative,Inc.*, 662 A.2d 821 (Del.1995). 32

*Dyson v. United States,* 418 A 2d 127 ( D.C. App., 1980................... 15

*Engle v. Issac,* 456 US 107 (1982)............................................ 25

*Evans v. Court of Common Pleas, Delaware County,*
*Pennsylvania,* 959 F.2d 1227 (3rd Cir., 1992)................................. 6

*Everett v. Beard,* 290 F.3d 500 (3rd Cir., 2002)................................. 67

*Farmer v. Litscher,* 303 F. 3d 840 (7th Cir., 2002)............................. 40

*Floray v. State, 720* A 2d 1132 (Del .,1998)........................ .......... 12

*Ford v. Georgia,* 498 U.S. 411 (1991)...................................... 27

*Fountain v. State, 275 A.* 2d 251 (Del., 1971)............................... 29

*Frazier v. Huffman,* 348 F. 3d 174 (6th Cir., 2003)............................ 40

*Gattis v. Snyder,* 278 F.3d 222 (3rd Cir., 2002)................................ 67

*Getz v.State, 538* A. 2d 726 (Del., 1988)...................................... 20

*Granberry v. Green,* 481 U.S. 129 (1987)..................................... 25

*Hollowell v. Keve*, 555 F. 3d 103 (3rd Cir., 1977)………………………….. 13

*Hooks v. State*, 416 A. 2d 189 (Del., 1980)……………………………… 15

*Hughes v. State*, 437 A. 2d 559 (Del., 1981)……………………….…...... 15

*Humphrey v. Cady*, 405 US 504 (1972)………………………………….. 5

*Idaho v. Stover*, No. 30313 (January 6, 2005)……………………………. 60

*Ivy v. Caspari*, 173 F. 3d 1136 (8th Cir., 1999)…………………………… 44

*Jacobs v. Horn*, 395 F.3d 92 (3rd Cir., 2005)……………………………… 67

*Jenkins v. State* 305 A. 2d 610 (Del., 1973)………………………………. 29

*Johnson v. Pinchak, 392* F. 3d 551 (3rd Cir., 2004)……………………… 34

*Johnson v. Carroll*, 327 F. Supp 2d 386 (D.Del., 2004) aff'ed 157 Fed.Appt

472 (3rd Cir., 2005) ….. 37

*Keller v. Larkins*, 251 F.3d 403 (3rd Cir., 2001)……………………………. 7

*Kominski v. State*, 154 A 2d 691 ( Del., 1959)………………………….….. 29

*Kotteakos v. United States*, 328 U.S. 750 (1946)………………………….. 15

*Lea v. Kemna*, 534 U.S. 362 (2002)……………………………………….. 27

Lesko *v. Owens* 881 F. 2d 44 (3rd Cir., 1989)……………………………… 23

*Lewis v. State*, 757 A. 2d 712 (Del., 2000)…………………………………. 33

*Lines v. Larkins*, 208 F.3d 153 (3rd Cir., 2000)…………………………… 6

*Lopez v. State*, Case No. 04SC150 (Colo., 2005)…………………….…….. 50

*Marshal v. Hendricks*, 307 F.3d 36 (3rd Cir., 2002)……………………… 67

*McBride v. State*, 477 A 2d 174 (Del., 1984)……………………………… 30

*McCandleless v. Vaughn*, 172 F.3d 255 (3rd Cir., 1999)………………… passim

*Michael v. State*, 527 A. 2d 752 (Del., 1987)…………………………….. 16

*Michigan v. Claypool*, 684 N.W.2d 278 (Mich., 2004)..........................  59

*Milligan v. State,* 761 A 2d 6 (Del., 2000)......................................  22

*Minnsesota v. Shattuck*, 689 N.W.2d 785 (Minn., 2005)......................  51

*Moore v. State,* 652 A. 2d 560  (Del.,1995)....................................  22

*Moorhead v. State,* 638 A 2d 52 (Del., 1994)..................................  22

*Murray v. Carrier*, 477 US 478 (1986)...........................................  43

*New Jersey v. Abdullah*, 878 A.2d 746 (N.J., 2005)...........................  52

*New Jersey v. Natale*, 878 A.2d 746 (N.J., 2005)..............................  52

*People v. Black*, 35 Cal. Rpt.4th 1238 (Cal., 2005)............................  58

*People v. Nitz*, __N.E.2d (Ill. App., 2005).....................................  50

*Peterson v. Hall,* 421 A. 2d 1350 (Del., 1980)................................  30

*Picard v, Conner*, 404 US 270 (1971).............................................  4

*Pierson v. De La War School District*
  *Board of Education*, 300 A. 2d  3 (Del., 1972)...............................  29


*Price v. State,*  ___ A. 2 d ___  (Del., 2003)..................................  16

*Probst  v. State,*  547 A. 2d . 114 (Del., 1998)................................  10

*Reynolds v. Ellingsworth,*  843 F. 2d 712 (3rd Cir., 2001)...................  27

*Rhines v. Weber*, 544 US __ (2000)...............................................  69

*Riley v. Taylor,*  277 F.3d 261 ( 3rd Cir., 2001)................................  35

*Riley v. State,*  495 A 2d  997 (Del., 1985) .....................................  38


*Ring v. Arizona*, 536 U.S. 584 (2002)............................................  61

*Rose v. Lundy*, 455 US 509 (1982)................................................  68

*Ross v. Petsock,* 868 F.2d 639 (3rd Cir., 1989)..................................  68

*Sawyer v. State,* 634 A. 2d 377 (Del., 1993) ……………………………….. 23

*School v. Arizona,* 501 U.S. 624 (1991)…………………………………….. 8

*Schmitz v. Carroll,* No. 02-1527(GMS) (D. Del., October 10 , 2003).. …… 65

*Shelton v. State,* 744 A 2d 465 (Del., 1999)………………………………… 32

*Slack v. McDaniel,* 529 US 473 (2000)……………………………………… 69

*Smith v. Digmon,* 434 US 332 (1978)………………………………………… 8

*Smylie v. State,* 823 N.E.2d 679 (Ind., 2005)………………………………. 50

*State v. Allen,* 615 S.E.2d 256 (N.C., 2005)……………………………….. 52

*State v. Brown,* 99 P.3d 15 (Ariz., 2004)…………………………………. 49

*State v. Brown,* No. 03-K-2788 (La., 2004)……………………………….. 51

*State v. Gould,* 23 P.3d 801 (Kas., 2001)……………………………..……. 51

*State v. Dilts,* 82 P.3d 593 (Ore., 2003)……………………………………. 53

*State v. Foster,*   N.W. 2d   (OHIO, 2006)……………………………….. 52

*State v. Lucas,* 548 S.E.2d 712 (N.C., 2001)………………………………. 52

*State v. Rivera,* 102 P.3d 1044 (Hai., 2004)………………………………. 60

*State v. Schofield,* 876 A.2d 43 (Me., 2005)………………………………. 51

*Stewart v. Smith,* 536  U.S. 856 (2002)……………………………………. 36

*Strickler v. Green,* 527 U.S. 263  ( 1999)…………………………………. 44

*Stulzker v. Johnson* 393 F. 3d  373  ( 3 Cir.,2004)………………………… 46

*Swanger v. Zimmerman,* 750 F.2d 291 (3rd Cir., 1984)…………………… 8

*Tennessee v. Lopez,* 163 S.E.2d 658 (Tenn., 2005)………………………… 58

*Trowbridge v. State,* 717 N.E.2d 138 (Ind., 1999)…………………………50

*Trump v. State,* 753 A 2d 963 (Del., 2000)………………………………… 22

*United States v. Cepero*, 224 F.2d 256 (#rd Cir., 2000)............................ 70

*United States v. Olano*, 507 U.S. 725 (1985)....................................... 12

*United States v. Young*, 470 U.S. 1 (1985)..............................................16

*Villot v. Varner*, 373 F. 3d 327 (3rd Cir., 2004).......................................33

*Wainwright v. State*, 504 A. 2d 1096 (Del.,1986)................................... 12

*Wainwright v. Sykes*, 433 U.S. 72 (1977).............................................. 43

*Walker v. Endell*, 850 F.2d 470 (9th Cir., 1987) ..................................... 37

*Walls v. State*, 560 A. 2d 1038 (Del.,1989) ...........................................24

*White v. State*, 576 A.. 2d 1322 (Del., 1990) ..........................................31

*Whitney v. Horn*, 280 F.3d 240 (3rd Cir., 2002)................................... 25

*Williams v. Taylor*, 529 US 362 (2000)................................................ 67

*Wilmington Memorial Co. v. Silverbrook Cemetery Company,*
        297 A. 2d 378 (Del., 1972)............................................... 29

*Wilmington Trust Company v. Barry*, 359 A. 2d 664 (Del., 1979).............. 29

*Ylst v. Nunnemaker*, 501 U.S. 797 (1991)........................................... 27

<u>CONSTITUTIONAL PROVISIONS</u>

United States Constitution, Amendment V---------------------------------- passim
United States Constitution, Amendment VI--------------------------------- passim

<u>FEDERAL STATUTE</u>

28 U.S.C. §2254----------------------------------------------------------- passim

## DELAWARE STATUTE

11 Del. C. §4204(m)………………………………………………………  63


## FEDERAL RULES

FRCP Rule 25 (d)(1)………………………………………………………………  1


## DELAWARE COURT RULES

Supreme Court Rule 8……………………………………………………..passim, post - 28

Superior Court Criminal Rules
Rule 61 (i)(3)…………………………………………………………………...  39

Delaware Rules Of Evidence
403 ………………………………………………………………………  20
404 (b)……………………………………………………………………  18

## SUPPLEMENTAL STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Following the entry by this Court of a scheduling order dated October 11, 2005, as extended by order of December 1, 2005, respondents Rick Kearney, Warden, Sussex Correctional Institution, and Carl C. Danberg, FRCP Rule 25 (d)(1) substituted respondent Attorney General of the State of Delaware, ("Respondents") have filed an answer to the petition (the "Answer") in this *habeas corpus* action.

In the Answer filed in this action, Respondents assert:

❖ that Petitioner's *habeas corpus* claim based upon the trial court's admission of "prior bad acts" evidence is not exhausted;

❖ with the exception of Petitioner's *Blakely* and "prior bad acts" evidence claims for *habeas corpus* relief, the 5th and 6th Amendment claims relied upon by Petitioner are procedurally barred;

❖ that Petitioner's 6th Amendment *Blakely* claim is not a cognizable claim in a federal *habeas corpus* court as it presents a question solely of state law; and

1

❖ that as Petitioner's claims afford him no basis for *habeas corpus* relief, his petition should therefore be dismissed.

As to Petitioner's *habeas corpus* claim based upon *Blakely v. Washington*, 542 US __ (2004), the Respondents do not contend that Petitioner's account of the legislative history of the Delaware sentencing scheme as set forth in his opening brief is inaccurate or incomplete. Nor do Respondents take issue with Petitioner's assertion that the facts upon which the sentencing judge enhanced Petitioner's sentence were not tried to a jury or admitted by Petitioner. The Respondents also do not dispute the notion advanced by Petitioner that under Delaware's sentencing scheme, a sentencing judge *must* state "reasons" in order to impose a sentence that departs from the SENTAC presumptive sentences and that in Petitioner's case those "reasons" equate to findings of fact on matters not tried to a jury. (See Petitioner's opening brief on *habeas corpus*, pp. 20–39).

Petitioner further calls to the attention of the Court that the documents filed by Respondents with the Answer include only Petitioner's brief and appendix on direct appeal; the State's answering brief on direct appeal and the appendix thereto; and the Delaware

2

Supreme Court's dispositive order. Not included with the documents filed by Respondents with the Answer is Petitioner's reply brief on direct appeal (this is included in the appendix submitted with this brief - Petitioner's *habeas corpus* reply brief – see the Appendix to this brief, A1-A15). The availability of the transcript of Petitioner's trial and sentencing is not mentioned in the Answer; both proceedings were fully transcribed and the transcripts are available to the Court upon reproduction.

Finally, the Answer does not raise any issue of non-retroactivity or the bar of the statute of limitations.

## ARGUMENT

## I.    Each Of Petitioner's Claims For *Habeas Corpus* Relief Have Been Exhausted

Although Respondents' Answer raises the issue of failure to exhaust as to only one of the five claims for relief set forth in Petitioner's *habeas corpus* petition, the Answer does not expressly waive exhaustion as to any ground.  The following section of this brief therefore demonstrates that each ground for *habeas corpus* relief set forth in the petition filed in this action has been exhausted.

### A). "Fair Presentation" Of A *Habeas Corpus* Claim

To satisfy the exhaustion requirement of 28 U.S.C. §2254, state courts must be given one full "opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Baldwin v. Reese*, 541 US (2004); *Duncan v. Henry*, 513 US 364 (1995); *Picard v, Conner*, 404 US 270 (1971).  The necessary "opportunity" knocks when the prisoner has "fairly presented" his federal claim, thereby "alerting" the state courts to the federal nature of his claim. *Baldwin v. Reese, supra; Duncan v Henry, supra; O'Sullivan v. Boerckel*, 526   US 838 (1999).

4

While it is now clear that "fair presentation" must appear and be made in the confines of an appellate brief or similar legal pleading (*Baldwin v. Reese, supra*), it remains the case that a *habeas corpus* petitioner need not have recited "book and verse" of the Federal Constitution in any such document. *Picard v. Conner, supra*, 404 US, at 277; *McCandleless v. Vaughn*, 172 F.3d 255 (3rd Cir., 1999), at 261. In other words, "…the absence of *explicit* reference to federal law does not resolve the issue of whether a federal claim was fairly presented." *Id.* 172 F.3d, at 261 (emphasis supplied).

There is, accordingly, no need to state the federal claim in any particular manner or to invoke any "talismanic" constitutional phrase. *Evans v. Court of Common Pleas, Delaware County, Pennsylvania*, 959 F.2d 1227 (3rd Cir., 1992), at 1230-1233. A petitioner need only fairly present in state court the *substance* of the claim later asserted for *habeas corpus* relief. *Humphrey v. Cady*, 405 US 504 (1972). This a petitioner may do in a number of ways.

In *Evans v. Court of Common Pleas, supra*, the Third Circuit noted *some* of the ways in which a *habeas corpus* petitioner may communicate to a state court that a federal claim is being asserted without

5

explicit reference to the Federal Constitution. Quoting *Daye v. Attorney General Of New York*, 696 F.2d 186 (2nd Cir., 1982), the Third Circuit held the "required message" can be conveyed through: a) reliance on pertinent federal cases employing constitutional analysis; b) reliance on state cases employing constitutional analysis in like fact situations; c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; or d) allegation of a pattern of facts well within the mainstream of constitutional litigation. *Evans, supra*, 959 F.2d at 1232; see also *McCandleless v. Vaughn, supra*, at 172 F.3d 261; as to a) and b) above, see also *Baldwin v. Reese, supra*.

Through means such as those described in *Evans*, a petitioner satisfies the exhaustion requirement by asserting in state court a legal theory and facts that are substantially equivalent to those contained in his *habeas corpus* petition, *Castille v. Peoples*, 489 US 346 (1989); *Doctor v. Walters*, 96 F.3d 675 (3rd Cir., 1996); *Lines v. Larkins*, 208 F.3d 153 (3rd Cir., 2000).

Exhaustion may be satisfied *without* mention of the Federal Constitution and absent citation to federal case law by an adequate

6

statement of the facts involved in a state court pleading together with such words and phrases as: "[petitioner] is entitled as a constitutional right to a fair trial." *Biscaccia v. Attorney General Of New Jersey*, 623 F.2d 307 (3rd Cir., 1980), at 310; the right to a "fair trial," *Evans, supra*, 959 F.2d, at 1233; by a passing reference to the concept of a "fair trial," *Keller v. Larkins*, 251 F.3d 403 (3rd Cir., 2001); and the "right to a fair trial," *Daye v. Attorney General Of New York, supra*, 696 F.2d, at 189.

When a claim is so presented in state court, a federal *habeas corpus* court "…cannot assume that the [state court] did not recognize the constitutional implications of such a claim." *Daye v. Attorney General of New York, supra*, 696 F.2d, at 197.

The Supreme Court within the past four months has addressed the *habeas corpus* "fairly presented" standard in an exhaustion case. In *Dye v. Hofbauer*, __US_, No 04-8384 (October 11, 2005), the petitioner's claim of prosecutorial misconduct had been analyzed and rejected by the Michigan state courts *solely* as a question of *state* law. On review of a *habeas corpus* petition, the Sixth Circuit found a *federal* misconduct claim to not have been "fairly presented." The Supreme

Court summarily granted *certiorari* and reversed in a *per curiam* opinion. The Supreme Court concluded that the Petitioner's failure to mention the Federal Constitution in his state court pleadings was not fatal to his argument that the claim had been exhausted because his fourth argument on direct appeal was that "the prosecutor denied defendant due process of law and a fair trial by numerous instances of misconduct."

A further principle applicable to "fair presentation" and exhaustion is that, provided a claim has in fact been fairly presented to the state courts, the exhaustion requirement is satisfied even if the state courts on appeal did not decide, consider, or even discuss the issues later presented in a *habeas corpus* petition. *Swanger v. Zimmerman*, 750 F.2d 291 (3rd Cir., 1984) at 295; or if the state court chose to ignore the Federal Constitutional claim. *Smith v. Digmon*, 434 US 332 (1978).

**B). Fair Presentation Of Petitioner's *Habeas Corpus* Claims**

**1). The *Schad* Due Process Claim**

Ground One in Petitioner's petition for *habeas corpus* in this Court is a 5th Amendment due process claim brought under *Schad v.*

8

*Arizona*, 501 US 624 (1991). This ground asserts that the trial court's failure to instruct the jury that their verdict had to be unanimous as to both Petitioner's state of mind and the means of commission of the offense of assault 2nd° of which Petitioner was found guilty constitutes a due process violation. This claim  is set forth in Petitioner's opening brief in this Court at pages 30-56 and on direct appeal to the Delaware Supreme Court at pages 19-20 of his opening brief (Appendix to opening *habeas corpus* brief, A208-A209) *and* pages 9-10 of his reply brief in that court (Appendix to Petitioner's reply *habeas corpus* brief, A19-A20).

On direct appeal, Petitioner framed this "specific unanimity" argument in terms of his right to a unanimous jury finding: "…because the trial evidence could have supported a verdict of assault second degree based on either of two acts – spraying Stacey Smith with pepper spray or causing a gunshot wound to his shoulder – the trial court's failure to specifically charge the jury as to the lesser included offense of assault second degree with respect to these two distinct acts deprived the [Petitioner] of the right to a unanimous jury

verdict." (Petitioner's brief on direct appeal, p.19, Appendix to Petitioner's opening brief on *habeas corpus*, A209).

This statement of the *Schad* issue – the necessity for a specific unanimity instruction as to the assault 2nd° offense – constitutes fair presentation under *Dye v. Hofbauer, supra*, a well as the c) and d) tests in *Evans/McCandleless* – assertion of a claim in terms so particular as to call to mind a specific right protected by the Constitution; and allegation of a pattern of facts well within the mainstream of constitutional litigation – i.e., the *Schad* precept in terms of the possibility of multiple and exclusive verdicts of guilty with respect to the charged offense of assault 2nd°.

Petitioner's citation in his brief in the Delaware Supreme Court to *Probst v. State*, 547 A.2d 114 (Del., 1998) also constituted fair presentation of Petitioner's ground one due process claim. *Probst* is a right to jury trial case based on *Schad*; Petitioner therefore relied on as state case employing constitutional analysis in a like fact situation thereby satisfying subpart b) of the *Evans/McCandleless* test.

In its brief on the direct appeal, the State conceded the federal constitutional nature of the issue raised by Petitioner under *Probst* by

acknowledging that the argument was one based upon an asserted

violation of the 6th Amendment.[1] To be precise, the State's brief on di-

rect appeal stated the *Probst* issue as follows:

> Defendant now argues that the language of the lesser in-
> cluded second degree assault instruction that "The
> [Defendant] caused physical injury to Edward S. Smith by
> means of a deadly weapon or a dangerous instru-
> ment."…violates the Sixth Amendment specific
> unanimity requirement as announced in *Probst v. State*,
> 547 A.2d 114, 120-24 (Del., 1988). (sic)

> State's answering brief on direct
> appeal, p. 23.

Petitioner's 5th Amendment *Schad* claim was  therefore pre-

sented to the Delaware Supreme Court in conformity to the b), c), and

d) tests in *Evans/McCandleless* as well as *Baldwin* and *Dye v. Hofbauer*.

## 2). The Erroneous "Dangerous Instrument" Instruction 5th Amendment Claim

Petitioner's *habeas corpus* petition Ground Two (*Habeas Corpus*

petition, pp. 7 – 9) is a 5th Amendment due process claim based upon

the contention that an erroneous and incomplete instruction had a

---

[1] As *Schad* itself observes, the constitutional basis of the need for a unanimous jury is often mis-
takenly identified as a 6th Amendment claim rather than a 5th Amendment due process issue.

substantial and injurious effect and influence on the jury's verdict (Petitioner's *habeas corpus* brief, pp. 57 – 63).

This ground was presented to the Delaware Supreme Court in Petitioner's brief on direct appeal as follows: "...because the lesser included offense of assault third degree was inadequately defined, the [Petitioner] was denied his right to a correct instruction." (Petitioner's opening brief on direct appeal, pp. 21–22), Appendix to Petitioner's opening *habeas corpus* brief A211 - 212).

This was repeated in Petitioner's reply brief on direct appeal – Petitioner argued that the State's suggestion that the erroneous instruction was not prejudicial "...contradicts the fundamental principle that jury instructions or offenses must be both correct and based on evidence presented at trial." (Reply brief on direct appeal, p.11, Appendix to reply *habeas corpus* brief A21).

Read fairly, Petitioner's argument on this issue on direct appeal challenged the fundamental fairness/ fair trial aspects of the lesser included offense instruction given by the trial court; that is, the incorrectness and incompleteness of that instruction was of such an impact as to substantially affect the outcome of the trial.  The argument was

therefore a due process argument. It went beyond a mere contention that the instruction misstated state substantive law. The erroneous instruction was so flawed as to mislead the jury as to the basis upon which they could have convicted Petitioner of assault third degree, a misdemeanor under Delaware law.

On direct appeal, in contrast to this *habeas corpus* proceeding, the State recognized the fair trial/due process aspect of Petitioner's argument. In its brief to the Delaware Supreme Court, the State argued that the trial court's error was not of such a dimension as to affect the "outcome of the trial," (State's answering brief on direct appeal, p. 27) citing *United States v. Olano*, 507 US 725 (1993), *Wainwright v. State*, 504 A.2d 1096 (Del., 1986), and *Floray v. State*, 720 A.2d 1132 (Del., 1998), three due process cases. In its orders in the case, the Delaware Supreme Court also viewed the issue as directed to the outcome of the case. *Benge v. State, supra*, slip opinion, p. 9.

The parties and the Delaware Supreme Court thus focused on the impact of the erroneous instruction in terms of the jury's ability to properly perform its duty – a due process issue.

This 5th Amendment claim was therefore "fairly presented" under the c) and d) tests of Evans/*McCandleless* as well as *Dye v. Hofbauer, supra.*

Petitioner is acutely aware of the limits imposed on a federal *habeas corpus* court with respect to court instructions on state law.

> Normally jury instructions in State trials are matters of State law. *United States ex. rel. Stanbridge v. Selher,* 514 F. 2d 45,50 (2nd Cir., 1975) *cert. denied* 423 US 872 (1975). However, they are reviewable by a federal court on collateral attack where the instruction violates specific federal constitutional standards imposed on the States through the due process clause of the Fourteenth Amendment, *Cupp v. Haughten* 414 US 141 (1973).

> *Hollowell v.Keve* 555 F.2d 103 (3rd Cir.,.1977), at 106.

Notwithstanding that general rule, Petitioner's case is one such instance in which due process was violated by the erroneous instruction given to the jury.

### 3). The Prosecutorial Misconduct 5th Amendment Claim

Petitioner presented the prosecutorial misconduct claim (*habeas corpus* petition Ground Three, *habeas corpus* petition pp. 9-10; brief on *habeas corpus,* Argument III, pp. 64-72) in several ways that satisfy the criteria of both *Dye v. Hofbauer* and *Evans/McCandleless.*

Petitioner's prosecutorial misconduct 5th Amendment claim was made on direct appeal at pages 14-18 of the opening brief (appendix to Petitioner's opening *habeas corpus* brief, A204-A208) and pages 5-8 of Petitioner's reply brief to the Delaware Supreme Court (Appendix to Petitioner's reply *habeas corpus* brief, A15-A18).

Petitioner's argument, just as that made in *Dye v. Hofbauer,supra*, framed the issue as one of a fair trial. Petitioner's Argument III on direct appeal was headed as follows:

> The Prosecutor's Personally Sarcastic
> Remark To The [Petitioner] Before The
> Jury That He Was A "Real Humanitarian"
> Unfairly Deprived The Defendant Of A Fair Trial.

> (Petitioner's opening brief
> on direct appeal,p.14; Appendix to
> Petitioner's opening *habeas corpus*
> brief, A204).

Four more times in his opening brief to the Delaware Supreme Court, Petitioner stated the issue of prosecutorial misconduct as a due process issue: "The prosecutor's gratuitous, intentionally sarcastic comment...deprived the [Petitioner] of a fair trial... The prosecutor's gratuitous remark...had no place in a fair trial...[T]he

prosecutorial expression unfairly prejudiced the [Petitioner's] substantial right to a fair trial." ; and the same remark undermined the "fairness of the trial process." (Petitioner's opening brief on direct appeal, pp. 14-17; Appendix to Petitioner's opening *habeas corpus* brief, A204-A207).

Petitioner's prosecutorial misconduct due process claim was fairly presented under b) and c) of *Evans-McCandleless* as well as the standard of *Dye v. Hofbauer, supra.*

The Delaware Supreme Court has in a series of prosecutorial misconduct cases made plain that the standards under which it reviews a claim of misconduct by a prosecutor include *federal* constitutional principles. See *Daniels v. State,* 859 A2d 1008 (Del., 2004).

In *Hughes v. State*, 437A 2d 559 (Del., 1981), the Delaware Supreme Court adopted the precepts set forth in *Dyson v. United States,* 418 A2d 127 (D.C. App., 1980). *Dyson* is, after the publication of *Hughes,* frequently cited in prosecutorial misconduct cases under review by the Delaware Supreme Court.

*Dyson* is based on the due process principles *of Kotteakos v. United States*, 328 US 750 (1946). See 418 A2d, at 132. The Delaware Supreme

16

Court has therefore characterized the "ultimate issue in a prosecuto-rial misconduct case as a question of "constitutional error", *Hooks v. State*, 416 A 2d 189 (Del, 1980) that is, whether the misconduct alleged "deprived the defendant of a fair trial", *Boatson v. State*, 457 A2d. 738 (Del., 1983). See also *Brokenbrough v. State,* 522 A. 2d 851 (Del., 1987) citing *Donnelly v. DeChristoforo, supra, United States v. Young*, 470 US 1 (1985) and *United States v. Hastings*, 461 US (1983), and *Michael v. State*, 527 A.2d 752 (Del.1987) and *Clayton v. State* 765 A.2d 940 (Del.,2000) citing *United States v. Young, supra.*

By citing *Hughes* and *Brokenbrough* in his opening brief on direct appeal to the Delaware Supreme Court (see opening brief on direct appeal, pp.15-16, Appendix to opening *habeas corpus* brief, A205-A206), Petitioner fairly presented the 5th Amendment prosecutorial misconduct claim under b) of *Evans/McCandleless*- reliance on state cases employing constitutional analysis in like fact situations.

The identity of the standards employed by the Delaware supreme Court – whether a prosecutor's inexcusable misconduct "so compro-mise[ed] the integrity of the judicial process" as to deny the defendant a fair trial [see *Price v. State* _____ A. 2d____ ,No. 486, 2003

17

(Del., 2003)] and that employed by the United States *Donnelly v. DeChristoforo* Supreme Court [see, e.g., , *supra*] also compels the conclusion that Petitioner's claim was presented in due process terms. *Baldwin v. Reese*, *supra*, recognizes the notion that in cases where state law and federal constitutional law standards are co-extensive, the exhaustion requirement has been satisfied.

## 4). The Blakely 6th Amendment Sentencing Claim

*Blakely v. Washington, supra*, was cited in the supplemental memorandum (Appendix to opening *habeas corpus* brief, A214 – A221) submitted by Petitioner to the Delaware Supreme Court on his direct appeal. Both Petitioner and the State briefed the sentencing issue to the Delaware court as an issue of 6th Amendment law specific to the application of *Blakely* to the Delaware sentencing system.

The order issued by the Delaware Supreme Court affirming Petitioner's convictions and the sentence imposed by the Superior Court on October 10, 2003 did not contain an express ruling on the *Blakely* issue. See *Benge v. State,* Order, No. 544, 2003, November 15, 2004 (Del., 2004). This was because the Delaware court had previously held *Blakely* to be inapplicable to its system of enhancing sentences in

criminal cases.  See *Benge v. State*, Order, No. 137, 2004, November 12, 2004 (Del., 2004).

However, exhaustion is not contingent upon an express decision or ruling upon an issue presented on direct appeal. If a state appellate court chooses to ignore an issue, exhaustion may still be found to have occurred. *Smith v. Digmon, supra.*

### 5). The DRE 404(b) "Prior Bad Acts Evidence" 5th Amendment Due Process Claim

In their Answer in this action, Respondents expressly argue that Petitioner's 5th Amendment due process claim based upon the trial court's admission of "prior bad acts" evidence has not been exhausted. (Respondents' Answer, p 4). This claim is Ground Four of Petitioner's grounds for relief in his *habeas corpus* petition (*habeas corpus* petition, pp. 11-12) and is full set forth in Petitioner's opening brief in support of that petition at pages 69 – 71.

Contrary to the contention of Respondents, Petitioner submits that this ground for relief was in fact fairly presented to the Delaware Supreme Court in at least five separate ways that satisfy the *Dye v. Hofbauer* and *Evans/McCandleless* tests.

Prior to trial, Petitioner's counsel filed a motion *in limine* under both DRE 403 and DRE 404(b) seeking to exclude the evidence of "prior bad acts" that the prosecution identified before the trial as that which it would seek to have admitted under Rule 404(b) Delaware Rules of Evidence ("DRE"). It was the denial of that motion (Superior Court trial docket entry No. 56, Appendix to Petitioner's reply *habeas corpus* brief, A1 – A7) by the trial judge as to the contention that Petitioner had previously entered his former wife's residence to surreptitiously tape record conversations that was the basis of Petitioner's direct appeal to the Delaware Supreme Court and hence the true issue that the Delaware Court had before it.

Petitioner's motion *in limine* specifically cited the inflammatory nature of the prior bad acts evidence, contending that the evidence sought to be introduced by the State was both irrelevant *and* "unfairly prejudicial." (Motion *in limine*, p. 3, Appendix to reply *habeas corpus* brief, A 3). Petitioner's trial counsel objected to the "soap operatic flavor" of Petitioner's marital turmoil and stated that the evidence would distract the jury from the real issues and portray Petitioner as a "despicable, detestable person who deserves to be punished…The

portrait that is painted will so profoundly contaminate the jury by engendering such ill will toward the [Petitioner] on account of his many misdeeds that it seems to permeate his entire existence as a human being that his *right to a fair trial* will be undoubtedly compromised." (Motion *in limine*, p 4 - 5, Appendix to reply *habeas corpus* brief, A4 – A5, emphasis supplied).

In denying Petitioner's motion to exclude the evidence, the trial court *separately addressed* and *separately ruled upon* the issues of the relevancy of the disputed evidence and the prejudice that would follow from its inflammatory nature. See the text of the ruling of the trial court, Appendix to Petitioner's opening *habeas corpus* brief, A23 – A31. The trial court's ruling was thus in accord Delaware decisional law under DRE 403 and DRE 404(b) which requires the trial court to examine the inflammatory nature of evidence in addition to its relevancy. See the discussion of *Getz v. State*, 538 A.2d 726 (Del., 1988) and its progeny set forth below.

In the brief submitted on direct appeal to the Delaware Supreme Court, Petitioner's contention as to the disputed DRE 404(b) evidence centered on the *fair trial* aspects of the trial court's admis-

21

sion of the evidence that he had sought to exclude. Petitioner framed the evidence issue in due process terms: as in *Dye v. Hofbauer, supra,* the argument heading stated the due process nature of Petitioner's contention – "the prior bad conduct admitted against the [Petitioner] at trial was irrelevant and unduly prejudicial to the [Petitioner's] right to a fair trial under DRE 404(b)."[2] (Brief on direct appeal, p. 8, Appendix to opening *habeas corpus* brief, A198). The argument that followed under this heading then developed the point that the disputed evidence "had an unfair tendency to invite the [Petitioner's] conviction on an improper emotional basis. "(Petitioner's brief on direct appeal, p. 13, Appendix to opening *habeas corpus* brief, A203). Petitioner's brief on direct appeal expressly set forth the points that the evidence was *both* "irrelevant and unduly prejudicial to the [Petitioner's] right to a fair trial" (Petitioner's brief on direct appeal, p. 8, Appendix to opening *habeas corpus* brief, A198). In two additional passages, Petitioner's brief in the Delaware Supreme Court referred to the evidence as "unfairly prejudicial" and as creating "unfair

---

2 DRE 404(b) is of course, not the source of the right to a fair trial. Petitioner's brief therefore must have been referring to a due process claim.

prejudice" (Petitioner's brief on direct appeal, p. 10; 12, Appendix to opening *habeas corpus* brief, A200; A202).

In the reply brief on direct appeal, the words "unfair prejudice" and "unfairly prejudicial" are used in six separate passages with reference to the prior bad acts evidence. (Petitioner's reply brief on direct appeal, p. 1 – 4; Appendix to reply *habeas corpus* brief, A11 – A14). The same brief also repeated the "fair trial" argument heading set forth above.

The DRE 404(b) issue was therefore fairly presented as a federal constitutional due process claim under *Dye v. Hofbauer, supra*, and c) and d) of *Evans/McCandleless* as well as the two additional ways set out below.

In both his opening and reply brief on direct appeal (Appendix to opening *habeas corpus* brief, A198-A203 and Appendix to reply *habeas corpus* brief A11 - A14), Petitioner cites *Getz v. State*. 538 A 2d. 726 (Del., 1988) in connection with his claim that admission by the trial court of the disputed evidence denied Petitioner a fair trial.

*Getz* and its progeny [see, e.g., *Moorhead v. State*, 638 A 2d. 52 (Del., 1994); *DeShields v. State*, 706 A 2d 502 (Del., 1998); *Trump v.*

*State,* 753 A 2d 963 (Del., 2000); and *Milligan v. State* 761 A. 2d 6 (Del., 2000)] contain the precepts applied to DRE 404 (b) and 403 by the Delaware Supreme Court.

*Getz*, as originally decided, employs a six part test to determine admissibility under DRE 404 (b) the fifth part of which is: "(5) the Court must balance the *probative value* of such evidence against its *unfairly prejudicial effect* as required by DRE 403." 538 A. 2d, at 734 (emphasis supplied). This fifth part of the *Getz* test itself consists of a nine factor balancing test as set forth in *Trump v. State*, 753 A 2d, at 971. Parts 3), 5), and 6) of the *Trump* factors all deal with an analysis of the prejudice to introduced into the trial by admission of the disputed 404 (b) evidence; however, factor 6) separately and specifically deals with the inflammatory nature of that evidence. See *Deshields v. State, supra*, 706 A.2d, at 506.

*Moorhead v. State*, 638 A.2d 52 (Del., 1994), cited by Petitioner to the Delaware Supreme Court (Petitioner's opening brief on direct appeal, p. 13 Appendix to opening *habeas corpus* brief, A 203) notes that DRE 403 and 404 (b) track the Federal Rules of Evidence and cites with approval the 1972 note to Rule 403 of the Federal Rules of Evi-

dence – "the admission of evidence becomes unfairly prejudicial when the evidence has an undue tendency to suggest decision on an improper basis, commonly, although not necessarily, an emotional one."

The test employed by the Delaware Supreme Court to determine whether the admission of evidence under DRE 403 affects the right to a fair trial is the same "fair trial" test as is employed under 5th Amendment due process. Cf., *Sawyer v. State*, 634 A.2d 377 (Del., 1993) at p. 380 with *Lesko v. Owens,* 881 F. 2d 44 (3rd Dir., 1989) and *Marshall v. Hendricks*, 307 F 3d. 36 (3rd Cir., 2002).

The Delaware Court has thus held that "relevant evidence is admissible unless barred by constitutional restraint, statutory law, decisional law or court rules." *Capano v. State*, 781 A 2d 556 (Del., 2001), at 586. Therefore, a ruling by a Delaware Court that evidence is admissible under DRE 403 and 404 (b) includes a necessary, if not expressly stated, ruling on the 5th Amendment due process aspects of admitting the evidence: "Because we have concluded that the contested was admissible and relevant does under Rule 404, *the admission of the evidence not constitute a violation of the Due Process Clause. Capano*

25

*v. State*, *supra*, 781 A. 2d at 639 citing *Dowling v. United States*, 493 US 342 (1990). (emphasis supplied).

Petitioner's *habeas corpus* DRE 404 (b) claim was both fairly presented and *actually decided* as a 5th Amendment claim by the Delaware Supreme Court.

## 6). The Scope Of Review

The Delaware Supreme Court reviewed Petitioner's *Schad* 5th Amendment erroneous instruction claim (*habeas corpus* claims grounds one, three, and two) under the "plain error" standard of review.

Under "plain error" review, the Delaware Supreme Court, *regardless of the contentions of the parties*, examines the entire trial record to determine if there has been a legal error affecting the defendant's substantial rights. *Walls v. State*, 560 A. 2d 1038 (Del., 1989). See the enlightening concurring opinion of former Chief Justice Veasey in *Bullock v. State,* 775 A.2d. 1043 (Del., 2001). The scope of review actually employed in the Delaware Supreme Court with respect to *habeas corpus* grounds in Petitioner's petition constitutes exhaustion of these grounds.

## 7). Futility Of Further Review

Finally, there is the issue of futility. Futility of further proceedings in state court excuses exhaustion.   Exhaustion in not an absolute bar to *habeas corpus* relief, *Granberry v. Green,* 481 US 129 (1987), even under the provisions of the Anti-Terrorism And Effective Death Penalty Act. See, *Baldwin v. Reeves, supra.*   Exhaustion is therefore not mandated in cases such as Petitioner's as the Third Circuit has noted:

> 'Futility' exists where: a state's highest court has ruled
> unfavorably on a claim involving facts and issues materi-
> ally identical to those undergirding a federal habeas
> petition and there is no plausible reason to believe
> that a replay will persuade the court to reverse its
> field…
>
> *Whitney v. Horn,* 280 F3d 240
> (3rd Cir., 2002), at 250, quoting
> *Lines v. Larkin, supra.*

The Delaware Supreme Court has once considered all conceivable attacks upon the constitutionality of Petitioner's convictions and sentence under the plain error scope of review and has found no reason to set the same aside.  There is now no plausible reason to believe that a replay, even an instant one, will persuade the court to reverse its field, "pick up the penalty flag", take the points off the scoreboard,

or otherwise alter its previous judgment. That fact excuses the rationale for Petitioner to be directed to return to state court.

## II. Petitioner's Claims Are Not Procedurally Barred

### A). The Procedural Bar Rule

A federal *habeas corpus* court is precluded from reviewing those federal claims for relief that have been defaulted in state court pursuant to an independent and adequate state procedural rule, absent a showing of cause and prejudice or miscarriage of justice. *Coleman v. Thompson*, 501 US 722 (1991), at 758; *Cristin v. Brennan*, 281 F.3d 404 (3rd Cir., 2002); *Bronshtein v. Horn*, 404 F.3d 700 (3rd Cir., 2005).

Contrary to the impression that one might readily glean from a reading of the Answer filed by Respondents in this case, it is in fact "...not always easy for a federal court to apply the independent and adequate state ground doctrine." *Coleman v. Thompson, supra*, 501 US, at 732. In addressing the issue, federal *habeas corpus* courts "...will presume that there is no independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy or independence of any possible state law

ground is not clear from the face of the opinion." Id., 501 US, at 734 –
735.

Before a court reaches the questions of cause and prejudice or
miscarriage of justice, there are two issues that must be determined
when *habeas corpus* relief is opposed on the basis of an alleged proce-
dural bar. The first of those threshold issues is whether the state
court judgment can indeed be held to have rested upon a procedural
default or whether any such default was in fact *not* relied upon by the
state court in reaching its decision – in other words, was the alleged
procedural default the actual basis upon which the state court de-
cided the case or did that court in fact reach the merits and decide the
case on the basis of federal substantive constitutional law? *Ylst v.
Nunnemaker*, 501 US 797 (1991); *Coleman v. Thompson, supra.* The next
issue, which arises only if the state ground was indeed the basis of
the state court's decision, is whether the state procedural rule is
"firmly established and regularly followed." *Ford v. Georgia*, 498 US
411 (1991). To determine these issues, a federal *habeas corpus* court
applies *federal* law; that is, the issue of whether or not a state proce-
dural rule is an "adequate and independent" ground for a state court

30

ruling or whether a state rule is firmly established and regularly followed are questions of federal law; *Lee v. Kemna*, 534 US 362 (2002); *Reynolds v. Ellingsworth*, 843 F.2d. 712 (3rd Cir., 1988), at 717. Nonetheless, the rules and practices of the state court present a relevant inquiry in that regard and are therefore examined in the next sections of this brief.

Only after the above issues are resolved does a federal *habeas corpus* court reach the issues of cause and prejudice and miscarriage of justice.

## B). Delaware Supreme Court Rule 8

Respondents' Answer sets up Delaware Supreme Court Rule 8 as a procedural bar to Petitioner's 5th Amendment due process claims. An overview of the history and operation of Rule 8 is instructive in determining whether or not the Respondents' argument has validity.

### 1). The Text And History Of Rule 8

Delaware Supreme Court Rule 8 provides as follows:

Questions Which May Be Raised On Appeal

Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.

Rule 8 was adopted with an effective date of March 31, 1978; its predecessor was Delaware Supreme Court Rule 5(7) of that court's 1952 rules which had a life span of 26 years:

Rule 5 (7)

On appeal, any question may be raised which has been fairly presented to the court below for decision, and it shall not be necessary again to raise any such question raised in the cause by way of motion for a new trial.

In applying Rule 5(7), the Delaware Supreme Court generally refused to hear any question not presented to the trial court. See, *Wilmington Memorial Co. v. Silverbrook Cemetery Company*, 297 A.2d 378 (Del., 1972). This policy extended to cases in which the issue raised for the first time on appeal was a constitutional question. See, e.g., *Pierson v. DeLaWarr School District Board Of Education*, 300 A.2d 3 (Del., 1972); *Wilmington Trust Company v. Barry*, 359 A.2d 664 (Del., 1979). There were, on rare occasions, exceptions for constitutional questions. See, e.g., *Fountain v. State*, 275 A.2d 251 (Del., 1971). The standard of review under Rule 5(7) was "plain error" when first time

32

issues were in fact considered. See, e.g., *Jenkins v. State*, 305 A.2d 610

(Del., 1973); *Kominski v. State*, 154 A.2d 691 (Del., 1959).

## 2). The Operation Of Rule 8

As noted above, the operation of Rule 8 as a state court proce-

dural rule is a matter of state law; *Ford v. Georgia*, 498 US 411 (1991),

at 423. The pronouncements of the Delaware Supreme Court as to the

operation of Rule 8 are therefore binding upon this Court, no matter

what conclusion this Court might independently reach about the op-

eration of that rule. The United States Supreme Court has recently

made that proposition more than abundantly clear in a *per curiam* de-

cision:

> We have repeatedly held that a state court's
> interpretation of state law, including one announced on
> direct appeal of the challenged conviction, binds
> a federal court sitting in habeas corpus. *Estelle v. McGuire*,
> 502 US 62 (1991); *Mullaney v. Wilbur*, 421 US 684 (1975).

> *Bradshaw v. Richey*, 546 US __,
> No. 05-101, Nov. 28, 2005

In the period initially following the adoption of Rule 8, the

Delaware Supreme Court continued the general practice under its

former Rule 5(7) and for the most part refused to hear issues raised

for the first time on appeal even if those issues were of constitutional

dimension. See, e.g., *Peterson v. Hall*, 421 A.2d 1350 (Del., 1980). How-

ever, as practice under Rule 8 matured after 1978, the Delaware court

*by its own account* relaxed the standard for review under that rule:

> …recently, claims of error implicating basic
> constitutional rights of a defendant have been
> accorded review by this Court notwithstanding
> their non-assertion at trial. [citing *Deputy v. State*,
> 500 A.2d 581 (Del., 1985) and *Flamer v. State*,
> 490 A.2d 104 (Del., 1983)]

> *Wainwright v. State*,   504 A.2d 1096 (Del., 1986)

In *McBride v. State*, 477 A.2d 174 (Del., 1984), the Delaware high

court, in an early example of the application of the relaxed standard

of review under Rule 8 to a non-constitutional question of change of

venue in a criminal case, held as follows:

> At the outset, we note that defendant's legal error argu-
> ment was not raised before the Trial Court and, hence, is
> barred from appellate review by Supreme Court Rule 8.
> However, as the question of the effect of the 1977
> amendment is one of first impression, *we will waive Rule 8*
> in the interests of justice to provide guidance to the trial
> courts and future litigants concerning the burden and de-
> gree of proof necessary to secure a change of venue.

> *McBride v. State, supra*, at 184.
> (emphasis supplied and footnote
> deleted)

34

The change of venue issue in *McBride* was thus decided by the Delaware Court on its merits *despite* the procedural default of the issue by the defendant in the trial court and the court issued a ruling on the substantive law in the case.

In the cases that followed *McBride v. State, supra,* the Delaware Supreme Court explained the operations of Rule 8 as follows:

- *White v. State,* 576 A 2d. .1322 (Del., 1990): the Court will *generally decline* review of a question not raised to the trial court but will consider such a question *even though not raised* below when the alleged error "plainly prejudices substantial rights and jeopardizes the fairness and integrity of the trial process." 576 A.2d, at 1324. (emphasis supplied).

- *Moore v. State,* 652 A. 2d. 560 (Del., 1995): Rule 8 requires only that a question be "fairly presented "to the trial court; but this requirement is *excused* if "the interests of justice requires review." The appellant's procedural default below - waiver of a legal argument – was expressly *excused* by the Delaware Supreme Court. 652 A 2d, at 563; 568.

- *Duphily v. Delaware Electric Cooperative, Inc.*, 662 A. 2d. 821 (Del., 1995) stated the import of Rule 8 as follows:

  > As a general matter, this Court will review only those questions fairly presented to the trial court in the first instance. Supr. Ct. R. 8; …The failure to object at trial ordinarily constitutes waiver of the right to raise the issue on appeal unless the error is "plain." In other words, "where substantial rights are jeopardized and the fairness of the trial imperiled, this Court will apply a plain error standard of review …"

  662 A.2d, at 832

- *In Shelton v. State*, 744 A 2d. 465 (Del., 1999), the Delaware court held that notwithstanding its "well-settled waiver rule" arising by the failure to make a contemporaneous objection, "…where the trial court commits plain error, a failure to object does not constitute a waiver of the right to raise the issue on appeal." The plain error "entitles [the defendant] to this Court's review…" 744 A 2d, at 497, note 142.

- In a case where the "interests of justice " require review, the failure of a defendant to present a claim to the trial court will

not procedurally bar that claim under Rule 8. *Lewis v. State*, 757

A 2d 712 (Del., 2000)

Each of the cases abstracted above demonstrates that Delaware

Supreme Court Rule 8 provides a procedural means by which re-

view *on the merits* may be obtained in that court despite the failure of

a defendant to object in the trial court. The Delaware Supreme Court

waives Rule 8 to conduct plain error review.

### 3). Procedural Bar In The Third Circuit

The Third Circuit has recently reviewed procedural default cases

from both Pennsylvania and New Jersey. The holdings of those cases

stand in marked contrast to the contention of Respondents in their

Answer as to procedural default.

In *Villot v. Varner*, 373 F.3d. 327 (3rd Cir., 2004), the Third Cir-

cuit was confronted with a case in which the Pennsylvania Superior

Court *could have* – but did not - deny a claim on procedural grounds.

373 F. 3d, at 335. The Circuit Court rejected a procedural default bar

because the Superior Court did not articulate the procedural default

as the basis of its decision. *Id.* The Court held as follows: "… a fed-

eral claimant's procedural default precludes federal *habeas corpus* review… only if the last state court rendering a judgment in the case rests its judgment on the procedural default. *Harris v. Reed,* 489 US 255 (1989). *If the state court does not actually enforce the procedural rule in question,* the federal court implies no disrespect for the state by entertaining the claim." *Id.,* at 336, (emphasis supplied). The Court expressly contrasted *Villot* to *Cabrera v. Barbo,* 175 F. 3d. 307 (3rd Cir., 1999) where the New Jersey state courts relied *explicitly* upon a procedural default.

In *Johnson v. Pinchak,,* 392 F. 3d. 551 (3rd Cir., 2004), the Court held a claim to be procedurally barred where the New Jersey Appellate Division clearly rested its decision on procedural grounds – the bar of the applicable limitations statute – as had the trial court. The limitations bar was "explicitly invoked "to deny relief. *Id.,* 392 F.3rd, at 557-558.

The Third Circuit has consistently held in its recent rulings that in cases where the Delaware Supreme Court rejects a direct appeal on the merits, no procedural bar to *habeas corpus* relief exists *despite* the presence of a procedural default.

38

In *Riley v. Taylor,* 277 F.3d 261 (3rd Cir., 2001) , the Third Circuit reversed the District Court's dismissal of a *habeas corpus* petition because of a procedural bar.   The Third Circuit held that *Ylst v. Nunnemaker,* 501 US 797 (1991) was controlling: " if the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise be available." *Riley v. Taylor, 777* F.3d, at 274 citing *Ylst v. Nunnemaker,* 501 US at 801. The Court noted that if the Delaware Supreme Court intended to foreclose a claim because of the failure to object at trial, "… it seems likely that the [Delaware court ] would have made that point expressly, instead of affirming …on the merits. 277 F. 3d., at 274.

The Third Circuit's holding in *Reynolds v. Taylor, supra,* is in full accord with the practice of the Delaware Supreme Court under Rule 8.

### 4.) The Order of The Delaware Supreme Court Was A Ruling Affirming The Convictions On The Merits.

A fair reading of the Delaware Supreme Court's order of November 15, 2004 in *Benge v. State, supra* leads inescapably to the

conclusion that the basis of that decision was a ruling on the merits on each of the claims asserted by Petitioner's direct appeal. Although the Delaware court noted that certain claims had not been raised in the trial court (see November 15, 2004 order ¶ 13; 15; and 16), the Delaware Supreme Court did not rest its decision primarily on any procedural default. As stated in *Stewart v. Smith*, 536 US 856 (2002), at 860, if a state court decision rested primarily on a ruling on the merits, its decision would not be independent of federal law and therefore would not procedurally bar federal *habeas corpus* review. In contrast to the state court in *Stewart v. Smith, the* Delaware Supreme Court in fact reached the merits of each of Petitioner's claims. While it is the  case that the Delaware court made a passing reference to Rule 8,  this was not for the   purpose of raising  Rule 8 to bar review of Petitioner's claims; rather, as citation to *Capano v. State* , 781 A 2d. 556 (Del., 2001) makes clear,  Rule 8 was cited by the Delaware  Court solely for the purpose of establishing the standard of review it sought to apply. See *Benge v. State, supra,* slip opinion, p. 7, note 7; p. 8, note 10; at p. 9 note 13.  At no point in its decision did the Delaware court "make the point expressly" that Rule 8 or any other procedural de-

40

fault barred appellate review of Petitioner's claim. Cf., *Riley v. Taylor, supra,* 277 F. 3d, at 274.

As the Delaware court in fact reached the merits of petitioner's claims the rule of *Ylst v. Nunnemaker, supra,* is controlling in this case.

## 5). <u>The Inadequacy of Rule 8 As A Procedural Bar</u>

Review of a state court's jurisprudence in terms of its actual application of a state procedural bar as well as its pronouncements as to the operation of that procedural bar is the methodology by which the Third Circuit has determined whether a procedural bar is "firmly established and regularly followed." See e.g. *Bronstein v. Horn,* 404 F 3d 700 (3rd Cir., 2005); *Reynolds v. Ellingsworth,* 843 F. 2d 712 (3rd Cir., 1988) - holding former Delaware Superior Court Rule 35 *not* to be an independent and adequate state procedural bar; accord, *Reynolds v. Ellingsworth,* 23 F. 3d 756 (3rd Cir., 1994).

Petitioner has attached three tables to this brief summarizing the Delaware Supreme Court reported decisions in:

- Table 1 post-1988 specific unanimity jury instruction reported cases;

- Table 2 post-1974 prosecutorial misconduct reported cases; and

- Table 3 post-1982 reported cases involving incomplete or erroneous jury instructions issues.

Table 1 demonstrates that 100 % of the eight specific unanimity instruction cases were decided on the merits; 88% of those cases involved no objection at trial; 5 of such cases involved *no* reference by the Delaware court to Rule 8; and two of the five cases making no reference to Rule 8 were reversed on the merits.

Table 2 reflects that 32 of 33   (96%) of cases involving claims of prosecutorial misconduct were decided on their merits; 66% of such cases involved no objections having been made at trial ;and that all 43% of the opinions making *no* reference to Rule 8 resulted in reversals of the convictions.

Table 3 contains similar data – 100% of the erroneous/incomplete instruction cases were decided on the merits of the cases; 92% involved no objection at trial; and 63% of cases where no objection was made at trial contained no reference to Rule 8.

This record more than amply demonstrates that Rule 8 is *not* in fact "regularly followed" by the Delaware Supreme Court. In each category of cases involving the type if due process claims raised by

42

Petitioner, the Delaware Supreme Court did not so much as mention Rule 8 in a majority of the cases where no objection was made at trial – 55% of the specific unanimity cases; 57% of the prosecutorial misconduct cases; and 63% of the erroneous/incomplete cases. This is much more than a "sporadic application" of a procedural rule, Cf., *Reynolds v. Ellingsworth, supra,* 843 F. 2d, at 725. It affirmatively demonstrates that Rule 8 is not regularly followed as a procedural bar and that fact prevents Respondents from relying upon Rule 8 as a procedural bar in this case.

The "plain error review as procedural bar" contention argued by Respondents is a *per se* rule that would appear completely at odds with the "not always easy to apply" language of *Coleman v. Thompson, supra.*

Not surprisingly, the United States Supreme Court has not endorsed *any per se* rule approach to procedural bar. Specifically, that court has avoided the suggestion that the scope of review applied by a state appellate court – as opposed to a determination as the actual basis of such a court's decision, whether procedural or substantive – is determined as to procedural bar.

43

What the Supreme Court has said about plain error review does not support Respondent's position. In *Engle v. Isaac,* 456 US 107 (1982) the Court noted (at 135, note 4) that Ohio law permits an appellate court to "overlook a procedural default if the trial defect constituted plain error."

This language has been held by at least one federal court of appeals to be a "clear statement that plain error review by state appellate court *negates* the defendant's procedural default. *Walker v. Endell,* 850 F.2. 2d 470 (9th Cir., 1987).

The Third Circuit has not held that plain review under Delaware Supreme Court Rule 8 constitutes procedural default. The opinion issued by that court in the appeal of *Johnson v. Carroll*, 157 Fed. Appx. 472 (3rd Cir., 2005) does not reach the District Court's holding of procedural bar; rather, the Third Circuit expressly found that issue to be "not before us." 157 Fed. Appx., at 474.

The Third Circuit has found no procedural bar to be present in *habeas corpus* cases where the Delaware Supreme Court did not clearly and expressly rely upon a procedural default under Rule 8 but, rather, "affirm[ed] the [trial] judge's findings on the merits." See *Riley*

44

*v. Taylor* ,277 F. 3d 261 (3rd Cir., 2001), at 274. In *Riley*, the Court had

in fact held that if the Delaware Supreme Court had meant to "fore-

close" a claim "for failure to make a proper objection at the time of

trial, it seems likely that the Court would have made that point ex-

pressly instead of affirming" on the merits; 277 F.3d, at 274. Yet, in

*Riley v. State* 495 A 2d 997 (Del., 1985),  the Delaware Court had noted

that the *habeas corpus* claim had not been presented at trial. See 496 A

2d, at 1010.  The Third Circuit adopted the view that "procedural de-

faults are not immortal." *Coleman v. Thompson, supra.*

This was also the case in *Gattis v. Snyder*, 278 F. 3d 222 (3rd Cir.,

2002). Despite a finding of procedural default by the Delaware Supe-

rior Court, the Third Circuit found the default to be waived by the

Delaware Supreme Court's review on the merits. See 278 F. 3d, at 229.

This was so even though the Delaware Supreme Court had noted in

its opinion that "Several of Gattis' claims *were not raised below or on di-*

*rect appeal…."Gattis v. State,* 697 A.2d 1174, (Del., 1997), and thus were

potentially subject to the double bar of Supreme Court Rule 61 (i) (13)

and Rule 8. The Third Circuit found that they operative ruling of the

Delaware Supreme Court was on the merits of the claims. 278 F. 2d, at 222.

The Third Circuit's approach is in accord with other circuits that have analyzed "plain error" review.

In *Walker v. Endell, supra*, the Ninth Circuit held as follows:

> We must determine whether the fact that the state appellate court reviewed the merits [under a "miscarriage of justice" plain error standard] vitiates the cause and prejudice requirement of *Wainwright v. Sykes.* We conclude that it does.

> 850 F. 2d, at 474

This holding was found to be in accord with *Huffman v Ricketts*, 750 F. 2d 798 (9th Cir., 1984) and permitted a federal *habeas corpus* court to consider a claim that had been reviewed by a state court for plain error. See also *Peoples v Campbell*, 377 F. 3d 1208 (11th Cir., 2004).

As noted above, Petitioner asserts in this Court that a "fair reading" of *Benge v. State, supra* reveals that the due process claims in that case where decided primarily on the merits. However, if this Court has doubt on that issue, it may be best resolved by resort to the approach of the Sixth Circuit as reflected in *Bowling v. Parker*, 344 F.3d

46

487 (6th Cir., 2003). In that case, the court held that when two readings of a state court appellate decision are plausible – one suggesting waiver of a procedural default and another non-waiver – in order for a federal *habeas corpus* court to find an issue to be procedurally barred, "there must be *unambiguous* state - court reliance on a procedural default for it to block our review." 344 F.3d, at 499. *Frazier v. Huffman,* 348 F 3d 174 (6th Cir., 2003), *Farmer v. Litscher*, 303 F. 3d. 840 (7th Cir., 2002).

The approach taken by the Sixth Circuit is more in accord with the reasoning of the Third Circuit in *Villot v. Varner* and *Johnson v. Pinkak, supra,* than that of the *per se* rule argued by Respondents in their Answer in this case.

Review of a state court's jurisprudence in terms of its actual application of a state procedural bar as well as its pronouncements as to the operation of that procedural bar, is the methodology by which the Third Circuit has determined whether a procedural bar is "firmly established and regularly followed." See e.g. *Bronstein v. Horn,* 404 F 3d 700 (3rd Cir., 2005); *Reynolds v. Ellingsworth,* 843 F. 2d 712 (3rd Cir., 1988) - holding former Delaware Superior Court Rule 35 *not* to be an

47

independent and adequate state procedural bar; accord, *Reynolds v. Ellingsworth,* 23 F. 3d 756 (3rd Cir., 1994).

### 6). Respondents Assert A Previously Unrecognized Procedural Bar As To The Prosecutorial Misconduct Claim

At trial, Petitioner timely objected to the prosecutor's unwarranted attack on his credibility (see Petitioner's opening *habeas corpus* brief, pp. ) However, while recognizing the fact that the objection was made, the Delaware Supreme Court reviewed Petitioner's prosecutorial misconduct claim on direct appeal under the plain error standard because , it held, Petitioner had not objected to the *curative instruction* given by the trial court; see *Benge v. State, supra,* slip order p. 7, ¶ 13.

No previously decided Delaware case imposes the burden on a criminal defendant of either objecting to a curative instruction *or* moving for a mistrial – an *objection* alone has always been held to be adequate. See the cases collected in Table 2 to this brief.

No procedural bar arises as a result of a newly adopted procedural default rule. See the *Reynolds v. Ellingsworth , supra.*

Petitioner's prosecutorial misconduct claim was preserved solely by a contemporaneous trial objection.

## 7). Cause And Prejudice

The existence of cause and prejudice permits a federal *habeas corpus* court to adjudicate for the first time a federal constitutional claim in a case where but for such adjudication there will be a miscarriage of justice. *Wainright v. Sykes,* 433 US (1977).

To establish "cause," a *habeas corpus* petitioner must demonstrate "that some objective factor external to the defense impeded counsel's efforts to comply with a state procedural rule. *Murray v. Carrier* 477 US 478 (1986), at 488. Once "cause" is established, a petitioner can demonstrate "prejudice " by a showing that "errors at trial...worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.,* at 494.

A *habeas corpus* petitioner may satisfy the "cause" requirement by showing that governmental interference rendered procedural compliance "impracticable." *Murray v. Carrier, supra,* 477 US, at 488; *Amadeo v. Zant,* 486 US 214, at 224-227; *Cristin v. Brennan,* 281 F. 3d 404 (3rd Cir., 2002), at 420. "Interference" in this context includes both

49

action, *Banks v. Dretke,* 540 US 668 (2004) and inaction. *Ivy v. Caspari,* 173 F. 3d 1136 (8th Cir., 1999).

"Prejudice, "an admittedly difficult issue to resolve at times, can be established by a showing that there is a "reasonable probability" that the result of the trial would have been different without the governmental interference. *Strickler v. Greene*, 527 US 263 (1999), at 289. Generally, prejudice is a denial of fundamental fairness. *Murray v. Carrier, supra*, at 494 .

"Cause" in Petitioner's case with respect to the *Schad* claim is established in this case by the deliberate strategic trial decision of the prosecutor to *not* present any theory of guilt other than as to attempted murder first degree. In Petitioner's opening *habeas corpus* brief, pages 20-21 and 30-32, the prosecutor's theory of the case and closing argument is summarized. Despite the trial judge's unambiguous ruling that the evidence warranted instructions on both assault 2nd degree and assault 3rd degree; despite the evidence of two gunshots and pepper spray introduced by the prosecutor; and despite extensive discussion between the trial judge and counsel as to lesser

included offenses, the prosecutor failed to articulate to the jury any theory supporting a conviction for assault second or third degree.

In point of fact, the State's contention as to precisely what Petitioner had been convicted of remained open at sentencing on October 10, 2003 – 1 ½ months after trial. Prior to the trial judge imposing sentence, the prosecutor did *not* recite what the jury verdict of guilty of assault second degree meant in the State's view and defense counsel argued that the verdict was based on pepper spray – not a gunshot. Not until the State's answering brief on direct appeal did the State *initially* advance the contentions that the verdict was based upon use of a gun.

At trial, Petitioner's counsel was not obligated to fill in the gaps in the prosecutor's theory of the case. Although the prosecutor had presented evidence potentially supporting conviction of many offenses – including the misdemeanor of assault third degree – and had emphasized the pepper spraying of Smith in the State's closing argument – no effort was made by the prosecutor to tie the evidence to the State's theory on *any* lesser included offense.

The State's confusing case – emphasizing the pepper spraying but failing to argue that it supported a conviction of a lesser degree of assault – placed Petitioner's counsel in a wholly untenable position of having to fill in the gaps in the State's case by arguing for a specific unanimity jury instruction. "Cause" is therefore present in this case in the prosecutor's erratic trial strategy which presented an "objective impediment" to Petitioner's counsel complying with the procedural rule. See *Slutzker v. Johnson*, 393 F. 3 d 373 (3rd Cir., 2004). Petitioner's counsel was in jeopardy of being "sandbagged" and having once been so abused, see *Bailey v. State*, 440 A. 2d 997 (Del., 1982), was acutely aware of the perils of having the State reserve its case in chief for its second closing argument. Had the State "laid its cards upon the table" with respect to the lesser included offenses, Petitioner's counsel would have more readily been able to perceive the need for specific jury unanimity. The failure of the State to present its lesser included offense theory prejudiced Petitioner as it prevented the jury verdict from reflecting the precise conduct it found to constitute the offense of assault second degree – a fundamental fairness requirement.

## III. Delaware's Sentencing Scheme Violates The 6th Amendment

### A). *Blakely* Issues Do Not Present Questions Of State Law[3]

Petitioner's brief in support of his *habeas corpus* petition in companion Case No. 05-055 (GMS) in this Court demonstrates the lack of viability in the State's "state law question" argument on the *Blakely* issue in Petitioner's sentencings. Nonetheless, Respondents have pertenaciously clung to that position in the Answer despite the absence of any supporting authority for the State's proposition in the deluge of decisional law that has been forthcoming in the wake of *Blakely*. Other than *Apprendi/Ring/Blakely/Booker/Fanfan*, the most recent decision cited in the Respondents' Answer carries a date of October 10, 2003 – post-*Apprendi*, but fully eight months before the Supreme Court's decision in *Blakely*.

The Delaware Supreme Court, the Delaware Department of Justice

---

[3] This argument repeats in large part the *Blakely* -based argument appearing in the reply brief submitted to this Court in Petitioner's *habeas corpus* petition in No. 05-0551; however, it has been revised and updated – see the abstract of the Ohio Supreme Court decision, *infra.*

advises this Court (Respondents' Answer, pp. 6-9), has declared that the SENTAC sentencing guidelines are "advisory" and "non-binding" as a matter of state law. Respondents thus tell this Court that a federal *habeas corpus* court is *ipso facto* precluded from any inquiry into the applicability of *Blakely* to Delaware sentencing law by the "question of state substantive law  doctrine."

*Blakely* decided a 6th Amendment right to jury trial issue. *Brown v. Allen*, 344 US 443 (1953) settled the question of the deference to be accorded to state court rulings on *federal law questions* in *habeas corpus* proceedings.  State court rulings in this regard are *not* conclusive. The issue for federal *habeas corpus* courts is whether the state court ruling represents a decision contrary to or an unreasonable application of federal law as determined by the Supreme Court. See, e.g., *Brown v. Payton*, __US__ No 03-1039 (March 22, 2005).

If the curious position asserted by the Respondents represented a correct statement of law, the on-going national post-*Blakely* paroxysm in state sentencing law would not be occurring; however, state courts other than Washington (the *Blakely* state) have struggled with and found the *Blakely* principle to invalidate as contrary to the 6th

Amendment sentences imposed *or* their *entire* sentencing systems;

see, e.g.:

| Arizona |
|---|

*State v. Brown*, 99 P.3d 15, (Ariz., 2004); Arizona employs a sentencing system of presumptive sentences with enhancement upon a judicial finding of aggravating circumstance; the Arizona Supreme Court reversed its own court of appeals which had reached an identical conclusion to that of the Washington court in *Blakely* with respect to possession of a weapon, accomplice, and "lying in wait" aggravators. The state Attorney General conceded that Arizona's sentencing law could not withstand *Blakely* because an enhanced sentence could be imposed only after a further judicial finding of fact; slip opinion, pp. 7-9.

| Colorado |
|---|

*Lopez v. State*, Case No. 04SC150, (Corrected Opinion of May 24, 2005); Colorado's presumptive sentencing system was declared contrary to *Blakely* except where enhancements were based upon the four permissible factors perceived by the Colorado court as allowable under *Apprendi/Blakely*; such as the prior conviction aggravator in this case; the court rejected the prosecution's view that the Colorado system presented a simple "range system" in which a guilty plea or verdict "would immediately authorize the entire range of sentencing."; slip opinion, page 32; the Colorado court stated that under *Blakely*, the "necessary inquiry into the sentencing system is one of functionality, not labeling.'; slip opinion, p. 36; in instances where the application of aggravating factors involves "additional fact-finding" by the trial judge, *Blakely* applies. "Labeling Colorado's system as a "simple range" system ignores this critical point;" slip opinion, page 37.