### Illinois

*People v. Nitz*, __N.E.2d__, Ill. App., 5th Dist., No. 5-98-0657 (November 10, 2004); the sentencing judge determined an enhancement facts – pattern of criminal behavior, position of trust, effect of crime on the victim, and "undue depreciation of offense'" that had not been submitted to the jury; "The increase unquestionably violated the constitutional right to have a jury determine the facts that determine the maximum sentence the law will allow," citing *Apprendi/Ring/Blakely*

### Indiana

*Smylie v. State*, 823 N.E.2d 679 (2005); Indiana's presumptive sentencing system with enhancements based upon judicial findings of the presence of aggravating factors ruled unconstitutional as contrary to *Blakely*; the Indiana Attorney General argued that the Indiana sentencing scheme presumptive sentences were only a "guidepost" for the sentencing judge; the Indiana Supreme Court rejected the State's argument, noting that case law (*Trowbridge v. State*, 717 N.E.2d 138 (Ind., 1999) had established the rule that sentencing judges *must* specify findings of fact and reasons that lead to enhancement of a sentence; slip opinion, pp. 5-6.

### Kansas

*State v. Gould*, 23 P.3d 801 (Kan., 2001) applied *Apprendi* in a sentencing decision that anticipated *Blakely*.

### Louisiana

In *State v. Brown*, No. 03-K-2788 (July 6, 2004), a decision issued 10 working days after *Blakely*, the Louisiana Supreme Court relied upon *Apprendi* to invalidate a sentence that had been enhanced based upon a prior juvenile adjudication.

### Maine

*State v. Schofield*, 876 A.2d 43 (Me., 2005), 2005 ME LEXIS 86 invalidated Maine's presumptive sentencing scheme; the Maine could ruled that a sentencing judge could not apply a "among the most heinous crimes" aggravator without first making findings of fact; this violated the 6th Amendment.

### Minnesota

*Minnesota v. Shattuck*, 689 N.W.2d 785 (Minn., 2005); Minnesota's sentencing guidelines specified presumptive sentences; case law required sentencing judges to set forth reasons for the application of enhancing factors; the Minnesota court rejected the "voluntary guidelines" argument of the state and ruled that this system violated *Blakely* principles; the maximum sentence permitted by the jury verdict or guilty plea is the presumptive sentence.

### New Jersey

*New Jersey v. Natale*, 878 A.2d 724 (N.J., 2005) and *New Jersey v. Abdullah*, 878 A.2d 746 (N.J., 2005); the New Jersey court invalidated its presumptive sentencing system which had required judicial fact finding to impose enhanced sentences;

### North Carolina

*State v. Allen*, 615 S.E.2d 256 (N.C., 2005), overruled the post-*Apprendi* decision in *State v. Lucas*, 548 S.E.2d 712 (N.C., 2001) which had held, like the State of Washington holding in *Blakely*, that the maximum sentence was the statutory maximum; the North Carolina presumptive sentence system – which permitted departure upon a judicial finding of a aggravating factors ("especially heinous," "atrocious," "cruel") – violates *Blakely*; slip opinion at p. 10.

## Ohio

On February 27, 2006, the Ohio Supreme Court published its opinion (long awaited) in *State v. Foster*, __ N.W. 2d __, __ Ohio St.3d __, 2006 Ohio 856, No. OT-03-016 (Ohio, February 27, 2006) which followed a comprehensive review of the application of *Blakely* to the Ohio sentencing system. The Ohio court rejected the holdings of "most" of its intermediate courts of appeal (which had sustained the Ohio system against a *Blakely* challenges) and the argument of the Ohio Attorney General that Ohio's system differentiated between *Blakely* exempt "traditional sentencing factors" and elements of a crime for purposes of sentence enhancement, and found Ohio's system to violate the *Blakely* 6th Amendment principle.  Noting that the Ohio system was a "hybrid" one, the Ohio court nonetheless placed great significance on the Ohio General Assembly's use of the word "shall" at "crucial points in the legislative scheme. Unlimited judicial discretion to sentence within a range is not currently authorized by statute. *If required judicial facts are not found*, certain sentences *may not* be imposed." (slip opinion, p. 22, emphasis supplied). The fact that enhanced punishment under the Ohio statutes is contingent upon a judicial finding of fact – regardless of how that fact is labeled – was the critical finding in the Ohio court's application of *Blakely* to its sentencing system (slip opinion, p. 23)

## Oregon

*State v. Dilts,* 103 P.2d 95 (Ore., 2004) ("*Dilts* II"); in *Dilts* II, the Oregon Supreme Court had a second opportunity to consider the impact of *Blakely* on Oregon's sentencing scheme after the United States Supreme Court remanded *State v. Dilts*, 82 P.2d 593 (Ore., 2003) ("*Dilts* I") for reconsideration ; see *Dilts v. Oregon*, 542 US__ (2004); in *Dilts* II, the Oregon Supreme Court reversed its holding in *Dilts* I and found that the defendant's enhanced sentence for assault 3rd° (15-18 months imprisonment enhanced to 36 months) based upon judicial fact finding could not be reconciled with *Blakely*; the Oregon sentenc-

> ing system was one in which the court was required to impose the presumptive sentence unless the sentencing judge found reasons for an enhancement; the Oregon court found this to be "precisely" the procedure held not to comply with the 6th Amendment in *Blakely*. (slip opinion, pp.5-6).

The *Blakely* decision is not a "state specific" ruling in the sense that the Respondents' Answer urges upon this Court.    Justice O'Connor's dissent in the *Blakely* ruling itself served to foretell of its impact in both the states and upon the Federal sentencing systems which in fact later came to pass in the nine post-*Blakely* state court decisions *supra* in which presumptive sentence systems – like that of Delaware – were held to be inconsistent with the 6th Amendment.

Under the rather curious theory advanced in the Answer, each of the state courts above could simply have declared its sentencing system to incorporate "voluntary" or "advisory" guidelines in a pre-*Blakely* sense *as a matter of state law* (as the courts of Indiana and Minnesota were urged to do) and avoid any review of *Blakely's* 6th Amendment application thereto by the federal judiciary. Indeed, the Washington Supreme Court had opined that as a matter of state law the maximum sentence that could be imposed upon Ralph Blakely was the statutory maximum, *not* the presumptive sentence under the

Washington "guidelines." In *Blakely*, the Supreme Court disagreed as a matter of 6th Amendment constitutional law.

Although several of the state courts above expressed disquietude in their decisions over the result required under *Blakely* (see, particularly, *e. g.*, the opinions of the Colorado, North Carolina, and Oregon courts), the "state law issue" theory advanced by the State in this proceeding was *not even discussed* in any opinion above or in an dissent thereto as a relevant consideration.

The Indiana Supreme Court was invited by the Attorney General of that state to adopt the same argument that was advanced on Petitioner's direct appeal to the Delaware high court – that is, that the governing sentencing system incorporated "voluntary" guidelines in a "simple range" sentencing system. However, the Indiana court recognized that its caselaw mandated requirement that sentencing judges state "reasons" for enhanced sentences precluded such a conclusion. See, *Smylie v. State, supra*, slip opinion, p. 5; it *could* have adopted its Attorney General's approach to *Blakely*; in fact, that court called that approach a "plausible contention." *Smylie v. State, supra*, slip opinion, p.5. The Indiana court could simply have held that the

judicially mandated rule announced in *Trowbridge v. State, supra* of the requirement of a statement of reasons to enhance a sentence was for purposes of appellate review only, *not* a substantive requirement for sentence enhancement thereby avoiding the *Blakely* controversy altogether. But the Indiana court took an intellectually honest approach to the application of *Blakely* and found that its system of enhancing sentences could not made to square with the 6th Amendment.

Similarly, the Colorado Supreme Court found that the legislative mandate that "reasons" be stated by a sentencing judge in connection with a sentence enhancement to run afoul of *Blakely. Lopez v. People, supra*, slip opinion, p. 29-30. As in Indiana, the Colorado Attorney General argued that Colorado's system was one in which the sentencing judge was free to impose a sentence anywhere within the statutory range. *Id.*, slip opinion, p. 32. Yet, the Colorado court determined that *Apprendi* and *Blakely* required a "functional analysis." If sentence enhancement "requires judicial fact-finding to which the defendant has not stipulated, the rule of <u>Blakely</u> applies and any additional facts used to aggravate the sentence must be <u>Blakely-</u>

compliant or <u>Blakely</u>-exempt." *Id.*, slip opinion, p. 32-33. Without identification of aggravating reasons, a Colorado sentencing judge was limited to imposing the presumptive sentence applicable to the offense. *Id.*, slip opinion, p. 32. The Colorado court rejected the notion that it was free to label its sentencing system as a "simple range" system and therefore avoid entanglement with the 6th Amendment rule of *Blakely*. That court was acutely aware that the Colorado sentencing system was *functionally* similar to that of Arizona, Oregon, and Washington and commented upon the reasoning of the Indiana and Minnesota courts as persuasive. *Id.*, slip opinion, p. 40-43.

The Minnesota court also rejected the "voluntary guidelines" argument of its Attorney General and held that the "test of *Apprendi* is one of function rather than form." Because the Minnesota "Guideline regime permits the [court] to durationally depart upward from a presumptive sentence after finding aggravating factors not considered by a jury," that system was inconsistent with *Blakely*; *Minnesota v. Shattuck, supra,* slip opinion, p.2.

The above courts undertook the 6th Amendment analysis of their sentencing systems – a *functional* analysis - that the Delaware

62

Supreme Court avoided in the only opinion on *Blakely's* applicability to the Delaware system as a whole that it has issued: the opinion in Petitioner's case. In employing such an analysis, the courts of Arizona, Colorado, Illinois, Indiana, Kansas, Louisiana, Maine, Minnesota, New Jersey, North Carolina, and Oregon found it possible to reconcile a presumptive sentence scheme with *Blakely*.

The position of the Delaware Department of Justice in this *habeas corpus* proceeding goes one step beyond the labeling approach of the Delaware court. Despite the effort to frame the argument as one of federalism, Respondents seek, quite simply, to *nullify* the *Blakely* opinion in Delaware: Delaware's Department of Justice chooses to view sentencing law as strictly a matter of state law, so therefore *Blakely* cannot apply. This is an argument more suited to John C. Calhoun's South Carolina of 1832 than to a state attorney general's office in 2006. If the 6th Amendment means what *Blakely* says, Delaware cannot "opt out" of its impact simply by declaring its sentencing laws to be purely state law questions.

If Respondent's had indeed sought support in post-*Blakely* jurisprudence for the non-applicability of *Blakely* to Delaware, what might they have found?

In a widely criticized decision, the Tennessee Supreme Court upheld its sentencing system against a *Blakely* challenge even though the Tennessee Attorney General conceded that the system violated *Blakely*. In *Tennessee v. Lopez*, 163 S.W.3d. 658 (2005) the Tennessee court held that because that state's statutes did not "*mandate* an increased sentence upon a judge's finding of an enhancement factor," slip opinion, p. 26 (emphasis supplied), the sentencing system was consistent with *Blakely*. No other court has made this distinction and the Tennessee court did not attempt to square its holding with the language in *Blakely* noting that it is immaterial for 6th Amendment purposes "[w}hether the judicially determined facts require a sentence enhancement or merely allow it," *Blakely*, slip opinion, footnote 8.

The Tennessee court used a full page of its opinion in *Lopez* to explain its role in federal Constitutional law jurisprudence and the possibility of future federal court review of its holding "…this Court

is not the final arbiter of the United States Constitution…some defendants will chose to raise and pursue Sixth Amendment *Blakely*-type claims in the hope that the United States Supreme Court will ultimately disagree with the determination of the issue, and nothing in this decision precludes them from doing so." (ellipsis provided). *State v. Lopez, supra,* slip opinion p. 16 – 17.

In *People v. Black*, 35 Cal. Rpt. 4th 1238 (June 20, 2005), the California Supreme Court (over the strong dissent of Justice Kennard) held that California's sentencing system complies with *Blakely* because that system authorizes only the kind of "traditional fact finding engaged in by judges" in sentencing which the court found to be permissible under the *Blakely* decision. California's system mandates a sentence in the middle tier of a three tier system absent further fact finding by the sentencing judge. In the *Black* case, because the defendant had "abused a position of trust'" his sentence was enhanced. Justice Kennard's dissent points out that sentences above the middle tier may be imposed only upon a judicial finding as to the "seriousness" of an offense. (In *New Jersey v. Natale, supra*, the New Jersey Supreme Court expressly disagreed with the holding in *Black.)*

65

In Michigan's sentencing scheme, a defendant is sentenced to a minimum and a maximum term. The maximum is not determined by the sentencing judge but is fixed by statute. The minimum is based on guideline ranges. A footnote in *Michigan v. Claypool*, 684 N.W.2d 278 (Mich., July 22, 2004) suggest that this system does not violate the *Blakely* principle. In a concurring opinion, Chief Judge Corrigan disagreed as has a subsequent decision in an intermediate appellate court. *People v. Holtschlag*, 2004 Mich. LEXIS 2751 (Mich. App., October 19, 2004) (the Michigan statute "appears on its face" to be inconsistent with *Blakely).*

The sentencing system in Hawaii involves the sentencing judge fixing a "floor and a ceiling" with the parole board determining the actual date of release of a prisoner. The Supreme Court of Hawaii found that the lack of presumptive sentences in the Hawaii system made its scheme an "indeterminate" one to which *Blakely* did not apply. *State v. Rivera,* 102 P.3d 1044 (Ha., 2004).

Finally, the Supreme Court of Idaho found itself confronted with applying *Blakely* to a sentencing system in which the governing statute provided that probation was to be the presumptive sentence

66

for all offenses unless the sentencing judge found that "imprisonment is appropriate for protection of the public." The Idaho court found that the fact that the legislative history of that enactment evidenced the intent of the legislature to give sentencing judges "full discretion" in imposing sentence saved its system from the reach of *Blakely*. *Idaho v. Stover*, No. 30313 (Id., January 6, 2005), slip opinion, pp. 5,6; 8.

The position of Respondents that this Court may not review Delaware's sentencing system as a matter of federalism finds no support in cases from other states. That position is also undermined by a decision of the Delaware Supreme Court issued after the filing of Respondents' Answer.

In *Capano v. State*, __A,2d__, No. 131, 2005 (Del., January 10, 2005), the Delaware Supreme Court reversed its finding as to the death penalty previously affirmed in *Capano v. State*, 781 A.2d 556 (Del., 2001) ("*Capano I*"). In *Capano* I, a post-*Apprendi* decision, the Delaware Court held that a conviction without more exposes a defendant to the death penalty in a capital case and rejected as "too formalistic" the notion that *Apprendi* required aggravating factors to be found by a unanimous jury. Following *Ring v. Arizona*, 536 US 584

(2002), the second *Capano* decision found that the 6th Amendment principle of *Ring* invalidated an 11 - 1 jury finding of an aggravating factor. The dynamic of the 6th Amendment in sentencing was recognized by the Delaware court as it did not hold that its sentencing system was purely a question of state law nor somehow exempt from *Apprendi* or *Ring.*

The real argument to be made against Petitioner's 6th Amendment claim, if indeed there is one, is that the Delaware sentencing system is like those systems where a judge is afforded complete discretion to impose a sentence anywhere within the permitted statutory range. However, that is in fact *not* Delaware's system; Delaware employs presumptive sentences beyond which Petitioner's sentencing judge could venture only after finding "reasons" - making findings of fact that are legislatively required for upward departures *but not all* sentences - of matters not submitted to a jury.

With the exception of Tennessee and California, no state with a presumptive sentence system has found its system to be compatible with *Blakely.* No state has held that *Blakely* does not reach its presumptive sentence system because sentencing is strictly a "matter of

state law." In circumstances where many of the courts confronted with *Blakely* have looked to the jurisprudence of other states as they grapple with the meaning of *Blakely*, *none* of the state court decisions decided after the November 12, 2004 date of the Delaware opinion in *Benge v. State, supra* has even *cited* that case, let alone discussed it. The 2005 decisions above of the Indiana and Minnesota courts were rendered in proceedings in which the prosecution asked those courts to declare the governing guidelines to be "voluntary," as Delaware's court had done; still, the Delaware court's opinion in *Benge v. State* was not used as a beacon from a safe harbor in a stormy sea.

*Blakely* sets out a fundamental, bright line rule as to the scope and operation of the 6th Amendment right to jury trial in a sentencing context. Its application does not hinge upon the label applied to any given sentencing scheme by a state supreme court. *Function* is the *Blakely* point of departure. The position of the State in this case reflects a fundamental misunderstanding of both the impact of the *Blakely* decision and the operation of the "state question" bar in *habeas corpus.*

The Delaware Supreme Court has ruled in this case that the maximum sentence under a Delaware sentencing statute is the maximum penalty that may be imposed for an offense. That same court has also ruled that a Delaware sentencing judge must comply with the legislative mandate to state "reasons" before that judge may impose an enhanced penalty. *Benge v. State, supra.* This is precisely the *Blakely* problem.

In its analysis of *Blakely*, the Delaware Supreme Court reasoned that the Supreme Court had found Washington's sentencing scheme to require trial courts "…to find 'substantial and compelling reasons' before imposing an 'exceptional sentence' (one that exceeds the standard range), and provided appellate review of the record in support of the trial court's findings." *Benge v. State*, supra, slip opinion p.2.

The Delaware court then held that given the "voluntary" and "non-binding" nature of Delaware's SENTAC guidelines, "…the trial court must explain its reasons for doing so, but it is authorized to exceed the SENTAC guidelines without making any factual findings beyond those reflected in the jury verdict." *Id.*

The Delaware court's holding that the SENTAC guidelines are "voluntary" and "non-binding" as a matter of state law is *not* fatal Petitioner's *Blakely* claim because that claim is grounded on the operation of 11 Del. C. §4204(m) – the Delaware statute requiring that reasons be stated for sentences departing from  presumptive sentences. Nor is the limited scope of appellate review afforded in Delaware to sentences in criminal cases dispositive of the *Blakely* claim, as *Blakely* is a 6th Amendment jury trial case.

However, the Delaware's court's holding that under 11 Del. C. §4204(m), a trial court must explain its reasons for departure from the SENTAC presumptive sentences (but *not* for sentences within the presumptive range) is fatal in a *Blakely* sense to a sentence where, as in Petitioner's case, the "reasons" for an enhanced sentence consist of facts not tried to a jury.  The fact that Delaware's high court has, like that of California, declared that "we have always done it this way " does not alter the outcome mandated by *Blakely* in this case.

Petitioner anticipates that this Court will give due deference to the holding applying *Blakely* of the Delaware Supreme Court in *Benge v. State, supra*. Each of the 82 words employed by that court in its

71

analysis of *Blakely* and each of the 53 words expended in its determination that *Blakely* "does not impact" Delaware should be afforded by this Court the weight properly due the same.[3] However, the ultimate conclusion remains inescapable post-*Blakely*: the Delaware Supreme Court's ruling as to the functioning of its sentencing system is indistinguishable from made by the Washington court prior to review by the Supreme Court of the "state law" rulings in *Blakely*. If the application of Washington sentencing laws presented a 6th Amendment issue in *Blakely*, so do those of Delaware in this case.

The State's position as articulated in this case comes down to *Schmitz v. Carroll*, No. 02-1527(GMS) (D. Del., October 7, 2003). This Court is in a unique position to declare whether *Schmitz* reflected prescience of the application of the 6th Amendment to Delaware's sentencing system.

Does the author of *Schmitz* agree with the State that the *Schmitz* decision determined (or, more properly *predetermined*) that as a mat-

---

[3] The Delaware Supreme Court issued its opinion in *Benge v. State, supra*, the initial Blakely ruling in Delaware, without the benefit of oral argument in that case.

ter of constitutional law, the 6th Amendment right to jury trial has no place in Delaware's sentencing system?  Petitioner finds no reference to *Apprendi* in the *Schmitz* opinion; given that fact, Petitioner believes that it is unlikely that the petitioner in *Schmitz* raised an *Apprendi*-like claim.  Did *Schmitz* in 2003 foreclose application of 2004's *Blakely* to Delaware? Perhaps the State has read too much into *Schmitz*.

## B. The Enhancement Of Petitioner's Sentence Was Impermissible Under The 6th Amendment

It is undisputed in this case that Petitioner's sentences were enhanced above the SENTAC presumptive factors based upon two aggravating factors that were not presented to the jury: whether Petitioner was subject to a protection from abuse order at the time of the October 20, 2002 events and whether a sentence less than that in fact imposed have would constituted "undue depreciation of the offense." (October 10, 2003 sentencing proceeding transcript p. 30, Appendix to Petitioner's opening *habeas corpus* brief, A156).  The Superior Court sentencing order of October 10, 2003 (Appendix to Petitioner's opening *habeas corpus* brief, A160-A167) also cited the aggravating factor of the "need for correctional treatment."

It is also undisputed that the facts found by the sentencing judge were not charged in the indictment, admitted by the Petitioner at sentencing, nor were such facts tried to a jury.

As is set forth in the opening brief in this *habeas corpus* case, the Delaware sentencing scheme, as applied to Petitioner, presents the same structural problem present in *Blakely* : facts – labeled "reasons" in the Delaware sentencing scheme – in addition to those inherent in the jury's verdict were necessary to the enhancement of the sentence imposed on Petitioner in Superior Court. *Benge v. State, supra.* The sentence imposed violated the 6th Amendment right to trial by jury.

## CONCLUSION

### A). Petitioner Is Entitled To Relief Under 28 U.S.C. §2254

In cases where, as here, a claim of denial of a constitutional right has been exhausted and is not procedurally barred, a federal court may grant *habeas corpus* relief on the merits of the claim when the state court's adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in  light of the evidence presented in the State court proceeding. 28 U.S.C.§ 2254 (d)(1) and (2); see, *Jacobs v. Horn*, 395 F.3d 92 (3rd Cir., 2005);   *Marshall v, Hendricks*, 307 F.2d 36 (3rd Cir., 2002); *Everett v. Beard*, 290 F.3d 500 (3rd Cir., 2002); *Gattis v. Snyder*, 278 F.3d 222 (3rd Cir., 2002); *Appel v. Horn*, 250 F.3d 203 (3rd Cir., 2001); *Williams v. Taylor*, 529 US 362 (2000).

In this case, the record demonstrates that Petitioner's convictions in Superior Court were based upon rulings by the Delaware courts as to the due process precepts set forth in such cases as *Schad v. Arizona,*

supra, *Kotteakos v. United States, Darden v. Waiinwright* and *Donnelly v. DeChristoforo,* and *Lisenba v. California* that are both contrary to those cases and unreasonable applications of the holdings thereof. The record also reflects that the sentences imposed upon Petitioner violated Petitioner's 6th Amendment right to trial by jury as explicated in *Blakely.*

Accordingly, this Court should grant Petitioner's petition for *habeas corpus* relief under 28 U.S.C. §2254 conditioned upon a new trial and/or resentencing by the Superior Court of the State of Delaware within such time and subject to such conditions as this Court shall fix.

## B). Amendment Of Petition / Stay And Abeyance

If this Court is constrained to dismiss Petitioner's §2254 petition because of lack of exhaustion of the any claim, Petitioner may of right amend the petition to present only the exhausted *Blakely* claim and the exhausted due process claims. *Rose v. Lundy,* 455 US 509 (1982); *Ross v. Petsock,* 868 F.2d 639 (3rd Cir., 1989); *Swanger v. Zimmerman,* 750 F.2d 291 (3rd Cir., 1984).

It is also the case that if any of Petitioner's 5th Amendment due process claims for relief are found by the Court to consist solely of state law claims, such claims are *non-cognizable* in a federal *habeas corpus* proceeding and do not pose a bar to relief on other claims in the present posture of this case, i.e., without the necessity for amendment of the petition. *Tillett v. Freeman*, 868 F.2d 106 (3rd Cir., 1989).

In addition, stay and abeyance of a *habeas corpus* is appropriate where there is "good cause" for failure to exhaust a claim: where, for example the claim is potentially meritorious and there is no indication of dilatory tactics. *Rhines v. Weber*, 544 US __ (2005). Petitioner's 5th and 6th Amendment claims cannot be dismissed as completely without merit and Petitioner has nothing to gain and much to lose by any delay and the docket of this case has reflected that fact.

Petitioner expressly requests that the Court condition any dismissal of Petitioner's petition on procedural grounds upon providing Petitioner with the option to be exercised within thirty days to either amend the petition to delete the unexhausted claim or to move for a stay and abeyance of this action pending exhaustion of the claim in state court.

## C). Certificate Of Appealibility

Should this Court rule that Petitioner's §2254 petition must be dismissed in its entirety, Petitioner requests that the Court issue a certificate of appealibility. Petitioner has made the requisite showing under *Slack v. McDaniel*, 529 US 473 (2000): that "reasonable jurists" could *debate* whether the claims in the petition should have been resolved in a different manner *or* that the issues presented in the petition were "adequate to deserve encouragement to proceed further." Dismissal of a *habeas corpus* petition on procedural grounds does not preclude the issuance of a certificate of appealibility, *Id.*, 529 US, at 484-485. *United States v. Cepero,* 224 F2d 256 (3rd Cir., 2000).

Date: November 2, 2006

John H. Benge, Jr.
P.O. Box 500
Georgetown, DE 19947

*Table 1*

Delaware Supreme Court Reported Appeals Post-*Probst*
(1988-2004) Deciding Specific Unanimity Jury Instruction Issue

| Case Citation And Result | Objection Or Mistrial Motion At Trial? | Did Court Make Reference To Rule 8? | Decided On Merits Or Bar Of Rule 8? |
|---|---|---|---|
| *Probst* 547 A.2d 114(1988) reversed | No p. 119 | Yes p. 119 | Merits p. 119 |
| *Zimmerman* 565 A.2d 887(1989) affirmed | No p. 890 | No p. 890 | Merits p. 890 |
| *Liu* 628 A.2d 1376(1993) affirmed | No p. 1382 | Yes p. 1382 | Merits p. 1382 |
| *Pope* 632 A.2d 73(1993) affirmed | No | No p. 79 | Merits p. 79 |
| *Dixon* 673A.2d 1220 (1996) reversed in part | No p. 1228 | No p. 1228 | Merits p. 1228 |
| *Stevenson* 709 A.2d 619(1989) affirmed | No p. 634 | No p. 634 | Merits p. 634 |
| *Brown* 729 A.2d 259(1999) affirmed | No p. 265 | No p. 265 | Merits p. 634 |
| *Ayers* 844 A.2d 304(2004) affirmed | instruction requested at trial p. 308 | | Merits |

*Table 2*

Delaware Supreme Court Reported Appeals
1974-2005 Deciding Prosecutorial Misconduct Issue

| Case Citation | Objection / Mistrial Motion At Trial? | Did Court Make Reference To Rule 8? | Decided On Merits Or Bar Of Rule 8? |
|---|---|---|---|
| *Edwards* 320 A.2d 701(1974) | No/No | No | Merits affirmed |
| *Sexton* 397 A.2d 540(1979) | No/No | No | Merits reversed in part |
| *Hooks* 416 A.2d 189(1980) | Yes/Yes | | Merits affirmed |
| *Hughes* 437 A.2d 559(1981) | No/No | No | Merits reversed |
| *Bailey* 440 A.2d 997(1982) | Yes/Yes | | Merits reversed |
| *Boatson* 457 A.2d 738(1983) | Yes/Yes | | Merits affirmed |
| *Ross* 482 A.2d 727(1984) | No/No | No | Merits affirmed |
| *Whalen* 492 A.2d 552(1985) | No/No | No | Merits reversed |
| *Riley* 496 A.2d 997(1985) | No/No | No | Merits affirmed |
| *Diaz* 508 A.2d 861(1986) | Yes/Yes | | Merits affirmed |
| *Fensterer* 509 A.2d 1106(1986) | No/No | No | Merits reversed |
| *Bowe* 514 A.2d 408(1986) | Yes/Yes | | Merits reversed |
| *Brokenbrough* 522 A.2d 851(1987) | Yes/Yes | | Merits affirmed |
| *Michaels* 529 A.2d752(1987) | No/No | No | Merits affirmed |
| *Weber* 547 A.2d 948(1988) | No/No | Yes | Merits reversed in part |
| *Walls* 560 A.2d 1038(1989) | No/No | Yes | Merits reversed in part |

*Table 2*, continued

| Case Citation | Objection Or Mistrial Motion At Trial? | Did Court Make Reference To Rule 8? | Decided On Merits Or Bar Of Rule 8? |
|---|---|---|---|
| *Pennell*<br>602 A.2d 48(1991) | Yes/Yes | | Merits<br>affirmed |
| Saunders<br>602 A.2d 623(1991) | No/No | | Defaulted under<br>cause/prejudice |
| *Mason*<br>658 A.2d 994(1994) | No/No | Yes | Merits<br>affirmed |
| *Clayton*<br>765 A.2d 940(2000) | No/No | Yes | Merits<br>affirmed |
| *Warren*<br>774 A.2d 246(2001) | No/No | Yes | Merits<br>affirmed |
| *Walker*<br>709 A.2d 1214(2002) | No/No | No | Merits<br>affirmed |
| *Trump*<br>753 A.2d 963(2000) | No/No | No | Merits<br>affirmed |
| *Caldwell*<br>770 A.2d 522(2001) | Yes/Yes | | Merits<br>reversed |
| *Warren*<br>774 A.2d 246(2001) | No/No | Yes | Merits<br>affirmed |
| *Bruce*<br>781 A.2d 544(2001) | No/No | Yes | Merits<br>affirmed |
| *Morris*<br>795 A.2d 653(2002) | No/No | Yes | Merits<br>reversed |
| *Williams*<br>796 A.2d 1281(2002) | No/No | Yes | Merits<br>reversed in part |
| *Williams*<br>803 A.2d 927(2002) | No/No | No | Merits<br>reversed |
| *Hunter*<br>815 A.2d 730(2002) | Yes/No | No | Merits<br>reversed |
| *Derose*<br>840 A.2d 615 | No/No | No | Merits<br>affirmed |
| *Daniels*<br>859 A.2d 1008(2004) | Yes/No | No | Merits<br>affirmed |
| *Price*<br>__A.2d__(2004) | Yes/Yes | | Merits<br>affirmed |

*Table 3*

Delaware Supreme Court Reported Appeals 1982-2005
Deciding Incomplete/Erroneous Jury Instruction Issue

| Case Citation | Objection/Mistrial Motion At Trial? | Did Court Make Reference to Rule 8? | Decided On Merits Or Bar Of Rule 8? |
|---|---|---|---|
| *Waters* 443 A.2d 500(1982) | No/No | No | Merits reversed |
| *Flamer* 490 A.2d 104(1983) *cert. denied* 464 US 865(1983) | No/No | No | Merits affirmed |
| *Taylor* 464 A.2d 897(1983) | No/No | No | Merits reversed |
| *Scott* 521 A.2d 235(1987) | No/No | No | Merits reversed in part |
| *Probst* 547 A.2d 114(1988) | No/No | Yes | Merits reversed |
| *Walls* 560 A.2d 1038(1989) | No/No | Yes | Merits reversed in part |
| *Zimmerman* 565 A.2d 887(1989) | No/No | Yes | Merits reversed in part |
| *Culver v. Bennett* 588 A.2d 1094(1991) | No/No | Yes | Merits reversed |
| *Stansbury* 591 A.2d 188(1991) | No/No | Yes | Merits reversed in part |
| *Grace* 658 A.2d 1011(1995) | No/No | No | Merits affirmed |
| *Floray* 720 A.2d 1132(1998) | Yes/No | No | Merits affimred |
| *Bullock* 775 A.2d 1043(2001) | No/No | No (majority opinion) | Merits reversed |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two copies of the attached brief and appendix thereto were served on November 2 , 2006 by depositing the same in the prisoner mail dropbox at Sussex Correctional Institution, Georgetown, Delaware, first class mail, postage prepaid, and addressed to:

Thomas E. Brown, Esq.
Deputy Attorney General
Department of Justice
820 North French Street
Wilmington, DE 19801

I hereby certify under penalty of the laws of the United States of America that the foregoing is true and correct.

Executed on November 2 , 2006