# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN H. BENGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 05-550-GMS |
| | ) | |
| MICHAEL DELOY, Warden, and | ) | |
| JOSEPH J. BIDEN, III, Attorney General | ) | |
| of the State of Delaware, | ) | |
| | ) | |
| Respondents.[1] | ) | |

———————————

John H. Benge. *Pro se* petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Attorney for respondents.

———————————

## MEMORANDUM OPINION

_J~~ 22_, 2007
Wilmington, Delaware



FILED

JUN 2 2 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

———————————

[1]Attorney General Joseph R. Biden, III assumed office in January, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).

Sleet, District Judge

## I. INTRODUCTION

Petitioner John H. Benge ("Benge") is an inmate at the Sussex Correctional Center in

Georgetown, Delaware.  Benge filed the pending petition for a writ of habeas corpus ("petition")

pursuant to 28 U.S.C. § 2254.  (D.I. 1)   For the reasons that follow, the court will dismiss his

petition.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

As reported by the Delaware Supreme Court in Benge's direct appeal, the facts of his case

are as follows:

> In response to a 911call, the Rehoboth Beach Police arrived at the Oak Grove Motor
> Court Inn to find Benge and Edward Stacey Smith involved in an altercation outside the
> motel.  Smith, who was on top of Benge at the time the police arrived, had sustained a
> gunshot wound to his chest.  At the scene, the police recovered two loaded handguns, two
> speed loaders, several live, loose .22 caliber rounds, and two holsters which were attached
> to Benge's belt.

> This incident was the result of the deterioration and later dissolution of the marriage
> between Benge, and his ex-wife, Donna Kay Lovett.  Lovett informed Benge that she
> wanted to separate and moved into her brother's North Wilmington home.  In fact, Benge
> had checked her phone records, and placed a recording device under Lovett's bed with a
> microphone attached to the mattress.  After some time, Lovett returned to the couple's
> home in Centreville.  From that point on, Benge continually sought reassurance from
> Lovett that she had not fallen in love with someone else.

> In October 2001, Lovett filed for divorce, left the Centreville home, and permanently
> moved to her brother's house in North Wilmington.  After Lovett left, Benge took a set of
> her new house keys and duplicated them.  He then used those duplicate keys to enter the
> North Wilmington home on several occasions, continuing to do so even after the divorce
> had become final.  On one of these occasions he placed a voice-activated tape recorder in
> the dresser located in Lovett's bedroom.  Furthermore, her brother, the owner of the
> North Wilmington home, saw Benge driving near the house around the time of the break-
> in.

> After the divorce was final, Lovett began a new relationship with Smith, a man whom she

1

had known for several years. Smith was an elementary school teacher and worked during the summer as a maintenance man at Oak Grove, which Lovett's family owned.

In October 2002, Benge drove to the motel and took with him two loaded handguns with holsters, extra ammunition in two speed-loaders, a pair of wirecutters, and a can of high-intensity pepper spray. When Benge reached the motel, he illegally entered room number five, using a duplicate set of keys. After consuming alcohol, he left the motel room and went in search of Lovett and Smith. Once outside the motel, Benge cut the telephone line that ran to the facility. He then entered the motel office, which has separate apartments on each side. Benge entered one of the apartment bedrooms where he found Lovett. He confronted her, demanding to know where Smith was. After apparently failing to get the answer he wanted, Benge sprayed Lovett in the face with pepper spray. Lovett ran from the bedroom to the living room and tried to unlock the door of the apartment. Benge then pulled her back and sprayed her again.

Smith heard Lovett screaming and entered the room from the other apartment. When Smith entered the room Benge released Lovett, whom he had been holding with a weapon at her face. Lovett then fled to the motel office and managed to call the police on her cell phone. Lovett observed Benge and Smith struggling in the apartment and heard two gunshots.

After Benge released Lovett, he sprayed Smith in the face and chest with the pepper spray. A struggle ensued and Benge drew one of his handguns. Smith heard gunshots and tried to push Benge out the door. As a result of the struggle, Smith sustained a gunshot wound to his chest, a punctured right eardrum, irritated eyes, a gouge in his left foot, and other less serious injuries.

At trial, Benge testified that he had been so distraught over the divorce that he had decided to kill himself and claimed that he wanted to commit suicide in front of Lovett and Smith. Benge expressly denied any intention to harm anyone else. Benge further claimed that once inside the motel office, however, he decided against suicide, but panicked when he saw Lovett and as a result sprayed her with the pepper spray. When Smith charged him, he also sprayed Smith. Benge also testified that during the struggle, he could not see what was going on because his sweatshirt was pulled over his head. Although Benge acknowledged that his gun went off, he denied pulling the trigger. Benge did admit, however, that he had duplicated Lovett's keys and used those keys to enter the North Wilmington home where he had placed the tape recorder.

*Benge v. State*, 862 A.2d 385 (Table), 2004 WL 2742314 (Del. Nov. 15, 2004).

In August 2003, a Superior Court jury convicted Benge of second degree assault (Del.

Code Ann. tit. 11, 612(a)(2))(lesser included offense of attempted first degree murder), offensive

touching (Del. Code Ann. tit. 11, § 601(a))(lesser included offense of second degree assault), and

first degree criminal trespass (Del. Code Ann. tit. 11, § 823)(lesser included offense of second

degree burglary).  The jury acquitted Benge of two weapons' offenses.[2]  The Superior Court

sentenced Benge to a cumulative sentence of nine years and one month in prison followed by

probation.  On November 15, 2004, the Delaware Supreme Court affirmed Benge's conviction

and sentence on direct appeal.  *See generally Benge*, 2004 WL 2742314 .  Benge did not pursue

post-conviction review in the state courts.

Benge filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the

State filed an answer.  (D.I. 1; D.I. 29)  Benge filed a response as well as a motion for summary

judgment.  (D.I. 32; D.I. 34)

Benge's petition is ready for review.

## III.  GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of  1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism."  *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted).  Pursuant to AEDPA, a federal court may

---

[2]Other charges of possession of a weapon by a person prohibited and two counts of violation of a protection from abuse order were severed prior to trial.  Benge pled guilty to those charges and was sentenced in a separate court proceeding.  (D.I. 29, at 2)  Benge also pled guilty in the Superior Court on January 13, 2004 to two counts of third degree burglary (Del. Code Ann. tit. 11, § 824)), three counts of unlawful interception of oral communications (wiretapping)(Del. Code Ann., tit. 11, § 2402), and one count of attempted wiretapping.  Benge was sentenced on March 19, 2004 to five years in prison, suspended after three years for probation on the first wiretapping charge.  That conviction is the subject of a separate federal habeas proceeding.  *See Benge v. DeLoy*, Civ. A. No. 05-551-GMS.

3

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the
>      applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the

exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

4

state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner

5

demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

6

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Benge asserts the following five grounds for relief in his petition: (1) the trial court violated Benge's due process rights by failing to give a specific unanimity instruction on second degree assault; (2) the trial court violated Benge's right to due process by giving an incomplete instruction on lesser included offenses regarding the weapon used during the attack; (3) the prosecutor improperly impeached Benge's character during his testimony, which so infected the trial with unfairness as to deny Benge due process of law; (4) the trial court improperly admitted evidence of Benge's prior bad acts (the unlawful electronic interception charges), thereby rendering Benge's trial so unfair as to deny him due process of law; and (5) the sentences imposed exceed the sentence recommended under Delaware's sentencing guidelines in violation of the Sixth Amendment and the rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004).

The State contends that claims one, two, three are procedurally barred from federal habeas review, and that claims four and five do not warrant federal habeas relief.

The court will review the claims seriatim.

7

**A.  Claims one, two, and three are procedurally barred**

Claims one and two assert that the Superior Court erred in instructing the jury, and claim

three asserts prosecutorial misconduct.  Benge exhausted state remedies by presenting these

claims to the Delaware Supreme Court on direct appeal.  However, because Benge failed to

object to the jury instructions and prosecutorial misconduct during his trial, the Delaware

Supreme Court invoked Delaware Supreme Court Rule 8 and only reviewed the claims for plain

error.  *Benge*, 2004 WL 2742314, at *3-4.  By applying Rule 8 to deny Benge's first three claims,

the Delaware Supreme Court plainly stated that its decision rested on state law grounds.  *See*

*Harris v. Reed*, 489 U.S. 255, 261 (1989).  This court has consistently held that the unambiguous

application of Delaware Supreme Court Rule 8 constitutes an independent and adequate state

ground for procedural default purposes.[3]  *See Hubbard v. Carroll*, 2003 WL 277252, at *3 (D.

---

[3]The court acknowledges that the Third Circuit Court of Appeals has recently issued a
certificate of appealability to determine if the Delaware Supreme Court's review for plain error
pursuant to Rule 8 constitutes the application of an independent and adequate state procedural
rule precluding habeas review under the procedural default doctrine.  *See Campbell v. Carroll*,
Civ. A. No. 05-5156, Order (3d Cir. Sept. 21, 2006).  The precise issue before the Third Circuit
is whether the Delaware Supreme Court consistently applies Rule 8 and whether the type of
review involved in determining "plain error" constitutes a review of the merits sufficient to
excuse any default of the claim that occurred during trial.
  Here, the court concludes that the Delaware Supreme Court has consistently applied Rule
8 to the types of claims represented by claims one, two, and three.  Claims one and two allege
that the Superior Court erred in instructing the jury, and a review of Delaware caselaw reveals
that the Delaware Supreme Court consistently and regularly applies its rule that, absent plain
error, "a defendant who neither objected to the instruction given or requested a different one,
cannot raise the issue for the first time on appeal." *Flamer  v. State*, 227 A.2d 123, 128 (Del.
1967).  Claim three asserts prosecutorial misconduct, and a review of Delaware caselaw reveals
that the Delaware courts consistently enforce the rule that objections to perceived prosecutorial
misconduct must be raised during trial or else limited to plain error review on appeal.  *See*
*Fetters v. State*, 436 A.2d 796, 799 (Del. 1981); *Mason v. State*, 658 A.2d 994, 999 (Del. 1995) .
  Further, other circuit courts addressing this issue have held that a state supreme court's
review for plain error does not indicate a waiver of the state's procedural default rules.  *See White*
*v. Mitchell*, 431 F.3d 517 (6th Cir. 2005);  *Mahaffey v. Schomig*, 294 F.3d 907, 919 (7th Cir.

Del. Feb. 5, 2003); *Maxion v. Snyder*, 2001 WL 848601, at *10 (D. Del. July 27, 2001). Thus, the court cannot review the merits of claims one, two, and three absent a showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the claims are not reviewed.

Benge does not assert any cause sufficient to excuse his procedural default.[4] In the absence of cause, the court will not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine does not excuse Benge's default, because he has not provided new reliable evidence of his actual innocence. Accordingly, the court will dismiss claims one, two, and three as procedurally barred.

**B.  Claim four is procedurally barred**

In his fourth claim, Benge contends that the Delaware Supreme Court violated Delaware Rule of Evidence 404(b) and his due process rights by admitting evidence of his prior bad acts during his trial. The State contends that claim four is unexhausted because Benge only presented the claim to the Delaware Supreme Court on direct appeal as a violation of state evidentiary law, and therefore, he did not "fairly present" the issue as a federal claim to the Delaware Supreme Court.

A petitioner satisfies the "fair presentation" requirement of the exhaustion doctrine by

---

2002); *Whiteman v. Friel*, 2006 WL 2441542 (10th Cir. Aug. 24, 2006)(unpublished opinion). The court finds the well-reasoned opinions of these other circuits persuasive. Therefore, unless and until otherwise directed by the Third Circuit Court Appeals, the court will continue to view the Delaware Supreme Court's application of Rule 8 as the Delaware Supreme Court's enforcement of a petitioner's procedural default.

[4]Instead, Benge contends that Rule 8 does not constitute an independent and adequate state procedural rule for procedural default purposes. The court rejects this argument for the reasons explained *supra*, note 3.

presenting the

> federal claim's factual and legal substance to the state courts in a manner that puts them
> on notice that a federal claim is being asserted.  It is not sufficient that a "somewhat
> similar state-law claim was made." Yet, the petitioner need not have cited "book and
> verse" of the federal constitution.

*McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  A federal claim brought in federal

court must be the "substantial equivalent" of that presented to the state courts, and the state court

must have had the same method of legal analysis available to it that is to be employed in the

federal court. *Lambert*, 134 F.3d at 513.

The state court pleadings and briefs in Benge's direct appeal demonstrate that Benge did

not fairly present claim four as a constitutional due process claim to the Delaware Supreme

Court.  Although Benge's state appellate brief did allege that "the prior bad conduct admitted

against the defendant at trial was irrelevant and unduly prejudicial to the defendant's right to a

fair trial under Delaware Rule of Evidence 404(b)," when viewed in context with Benge's entire

Rule 404(b) argument, the cursory reference to a "fair trial" was not sufficient to put the

Delaware Supreme Court on notice that Benge was asserting a federal due process claim.  (D.I.

39)  Additionally, the State did not interpret the argument to allege a due process claim, and the

Delaware Supreme Court decided the issue solely on state evidentiary precedent.  Therefore, the

court concludes that Benge did not exhaust state remedies for claim four.

At this juncture, claim four is procedurally defaulted because Benge is precluded from

obtaining further state court review of his Rule 404(b)/due process claim.[5]  Benge does not assert

---

[5]Delaware Superior Court Criminal Rule 61(i)(3) would bar any attempt to raise this
claim in a motion for post-conviction relief. *See McLaughlin v. Carroll,* 270 F. Supp. 2d 490,
512-13 (D. Del. 2003).

10

any cause for his failure to present claim four as a federal due process claim on direct appeal,[6]

and therefore, the court will not address the issue of prejudice.  Benge also does not demonstrate

that a fundamental miscarriage of justice will result from failure to review this claim.

Accordingly, the court will deny claim four as procedurally barred.

### C.  Claim five does not warrant relief under *Blakely*

In his final claim, Benge contends that his sentences were enhanced above the maximum

sentences recommended by Delaware's Sentencing Guidelines ("SENTAC") in violation of the

Sixth Amendment and the rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004).  The

sentence recommended by SENTAC for a second degree assault conviction is 0-2 years of

incarceration at Level V, and the maximum statutory penalty is 8 years of incarceration at Level

V.  Del. Code Ann. tit. 11, § 4205(b); Delaware SENTAC Benchbook 2006, at p.39.  The

Superior Court judge sentenced Benge to 8 years of incarceration because he viewed the fact that

Benge committed the assault while he was subject to a Protection From Abuse Order ("PFA

Order") as an aggravator for sentencing purposes.  (D.I. 39, Defendant's Supp. Memorandum in

*Benge v. State*, No.544,2004, attached Sentencing Transcript at 29-30).  The sentence

recommended by SENTAC for first degree criminal trespass is up to 1 year of probation, but

Benge was sentenced to the statutory maximum of 1 year of incarceration, (Del. Code Ann. tit.

11, § 4206(a)), once again due to the use of the PFA Order as an aggravator.  Benge argues that

these sentences violate *Blakely* because the jury did not find that he had violated the protective

order, and he did not admit to violating the PFA until several months after his sentencing.  (D.I.

---

[6]Rather, as previously explained, and rejected, Benge has chosen to argue that he "fairly
presented" this claim as a federal claim on direct appeal, and therefore, claim four is not
procedurally defaulted.

3)

The record reveals that Benge exhausted state remedies for this claim, but the Delaware

Supreme Court did not address the issue on the merits in its written decision. *See Benge v. State*,

862 A.2d 385 (Table), 2004 WL 2742314 (Del. Nov. 15, 2004).  Therefore, the court will review

the issue de novo, under pre-AEDPA standards.[7]  *See Holloway v. Horn*, 355 F.3d 707, 718-19

(3d Cir. 2004)(explaining that de novo review is appropriate where the state supreme court did

not address the merits of a claim).

In *Blakely*, the Supreme Court reiterated its prior holding in *Apprendi v. New Jersey* that

"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond

the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt."  *Blakely*, 542 U.S. at 303 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

The Supreme Court in *Blakely* clarified that the "statutory maximum" for *Apprendi* purposes is

the maximum sentence a judge may impose "solely on the basis of the facts reflected in the jury

verdict or admitted by the defendant."  *Blakely*, 542 U.S. at 303.

The State argues that claim five is meritless because *Blakely* does not invalidate

Delaware's sentencing scheme.  The court concurs with the State's conclusion.  *Blakely* involved

the determinate sentencing scheme of the State of Washington, where the sentencing guidelines

required a trial judge to impose the recommended or presumptive sentence unless he provided a

reason for imposing a different sentence.  *Blakely*, 542 U.S. at 308-09.  In contrast to

Washington's sentencing scheme, Delaware's sentencing scheme ("SENTAC") is voluntary and

_____

[7]De novo review means that the court "must exercise its independent judgment when
deciding both questions of constitutional law and mixed constitutional questions."  *Williams v.
Taylor*, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

12

non-binding, and although a sentencing judge *should* articulate its reasons for departing from the

sentence recommended under SENTAC, the Delaware Supreme Court has consistently held that

a sentencing court is not required to do so, and, in turn, a sentencing court's failure to do so is not

reversible error. *See Mayes v. State*, 604 A.2d 839, 845-46 (Del. 1992); *Via v. State*, 782 A.2d

267 (Table), 2001 WL 1142304, at **2 (Del. Sept. 19, 2001); *Fuller v. State*, 860 A.2d 324,

332-33 (Del. 2004). In fact, pursuant to well-settled Delaware law, a defendant does not have a

right to appeal a statutorily authorized sentence merely because it does not conform with

Delaware's sentencing guidelines. *Ward v. State*, 567 A.2d 1296, 1297 (Del. 1989).

Accordingly, Delaware's indeterminate and voluntary sentencing scheme is not implicated by

*Blakely*.

However, even if *Blakely* applies to SENTAC, there simply is no *Blakely* error in Benge's

case. *Blakely* only guarantees the right to a jury trial with regard to any *disputed* factual issue not

found by a jury, other than a prior conviction, which increases the defendant's maximum

sentence. *Blakely*, 542 U.S. at 313. Here, in order to convict Benge on the second degree assault

charge, the jury had to find that Benge intentionally or recklessly injured his ex-wife's boyfriend

with a deadly weapon or dangerous instrument. See Benge, 2004 WL 2742314, at *3-4. The

jury was instructed that the term "deadly weapon" includes a firearm. (D.I. 39, Appendix to

Appellant's Op. Br. in *Benge v. State*, No.544,2003, at A-245) In order to convict Benge on the

first degree criminal trespass charge, the jury had to find that Benge knowingly entered or

remained unlawfully on the motel property owned by his ex-wife's family. Benge concedes that

the PFA order was in effect at the time he committed the offenses and at the time of sentencing,

and the record reveals that the PFA order prohibited Benge from possessing guns, contacting his

13

ex-wife, and entering her property.  (D.I. 39, Defendant's Supp. Memorandum in *Benge v. State*,

No.544,2004, attached Sentencing Transcript at 29-30).  Clearly, then, the Superior Court judge

sentenced Benge on the basis of facts found by the jury and reflected in the jury verdict, and the

judge's recognition that the facts found by the jury also indicated a violation of the PFA order did

not constitute additional factfinding.   Accordingly, the court will deny claim five as meritless.

### D.  Motion for a determination under Rule 8, foll. 28 U.S.C. § 2254 and for summary judgment

During the pendency of this proceeding, Benge filed a motion for the court to determine

that no evidentiary is required under Rule 8(a) of the Rules Governing Habeas Corpus Cases

Under Section 2254, 28 U.S.C. *foll.* § 2254.  (D.I. 34)  Considering Benge's concession that there

is no genuine factual issue with respect to his habeas claims, the court agrees that an evidentiary

hearing is not warranted in this proceeding.  *See Campbell v. Vaughn,* 209 F.3d 280,  287 (3d

Cir. 2000)(explaining that a  request for an evidentiary hearing should be denied where the

petitioner fails "'to forecast any evidence beyond that already contained in the record' that would

otherwise help his cause.")

Benge also moves the court for summary judgment.  However, given the court's

foregoing conclusion that Benge is not entitled to federal habeas relief, the court will deny

Benge's motion for summary judgment as moot.  (D.I. 34.)

## V.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also

decide whether to issue a certificate of appealability.  *See* Third Circuit Local Appellate Rule

22.2.  A certificate of appealability is appropriate when a petitioner makes a "substantial showing

of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2);  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Benge's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable.  Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Benge's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied.  An appropriate order shall issue.

15

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

JOHN H. BENGE,                              )
                                            )
         Petitioner,                      )
                                            )
   v.                                       )     Civ. A. No. 05-550-GMS
                                            )
MICHAEL DELOY, Warden, and                  )
JOSEPH J. BIDEN, III, Attorney General      )
of the State of Delaware,                   )
                                            )
         Respondents.                     )

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

    1. John H. Benge's petition for the writ of habeas corpus filed pursuant to 28 U.S.C

§ 2254 is DISMISSED, and the relief requested therein is DENIED.  (D.I. 1)

    2.  Benge's motion for summary judgment is DENIED as moot.  (D.I. 34)

    3.  The court declines to issue a certificate of appealability.

Dated: ___June 22__, 2007

UNITED STATES DISTRICT JUDGE



FILED

JUN 2 2 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE