IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| John H. Benge, Jr., | ) | |
| | ) | |
| Petitioner Below | ) | No. 05-550 |
| | ) | |
| v. | ) | |
| | ) | |
| Michael DeLoy, Warden, | ) | Appeal Sought From |
| Sussex Correctional | ) | Civil Action No. 05-0550(GMS) |
| Institution; and | ) | In The United States |
| Joseph R. Biden, III, | ) | District Court For The |
| Attorney General Of The | ) | District Of Delaware |
| State Of Delaware, | ) | From The Final Order |
| | ) | Of June 22, 2007 |
| Respondents Below | ) | Dismissing Petitioner's |
| | ) | *Habeas Corpus* Petition |

## Application For A Certificate Of Appealability

\

FILED
JUL 20 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE
BD scanned

Date: July 19, 2007

John H. Benge, Jr.
Sussex Correctional
Institution
P.O. Box 500
Georgetown, DE 19947

## CONTENTS

**Page**

| | |
|---|---|
| Statement Of Jurisdiction……………………………….......... | 1 |
| Timeliness Of Application……………………………………………….. | 1 |
| Issues Of Law Sought To Be Reviewed…………………………. | 1 |
| Standard For Issuance Of Certificate Of Appealability…………………………………………………….…..……. | 2 |
| Statement Of The Case………………………………………………….…..…………. | 3 |
| Relevant Facts……………………………………………………………….…..…………. | 3 |
| Statement Of Reasons Why A CAPP Should Issue………………………………………………….…..…………. | 7 |
| Delaware Supreme Court Rule 8 Is Not An "Adequate And Independent" State Ground….. | 10 |
| The Delaware Supreme Court Applied A New Procedural Bar On Direct Appeal…………………………. | 16 |
| Cause And Prejudice Are Present………………………………………. | 16 |
| Delaware's Presumptive Sentencing System Violates The 6th Amendment……………………………….. | 19 |

## Attachments To This Application

Table 1: Delaware Supreme Court Rule 8 as applied in specific unanimity instruction cases 1988 - 2004

Table 2: Delaware Supreme Court Rule 8 as applied in Prosecutorial misconduct cases 1974 - 2004

Table 3: Delaware Supreme Court Rule 8 as applied in Erroneous instruction cases 1982 - 2004

Opinion On Direct Appeal: *Benge v. State,* Del. Supr. No.137, 2004, order,(November 12, 2005)

Opinion Rejecting *Blakely*: *Benge v. State,* Del. Supr., No.544, 2003, order,(November 15, 2005)

Opinion Of The District Court: *Benge v. DeLoy,* C.A. No. 05-0550(GMS), Sleet, D.J. (June 22, 2007)

# Application For Issuance Of a Certificate Of Appealability From Order Of Dismissal Of June 22, 2007

**Comes Now,** John H. Benge, Jr. ("Petitioner"), *pro se*, a prisoner in the custody of the State of Delaware, and pursuant to 28 U.S.C. §2253(c), Rule 22 of the Federal Rules of Appellate Procedure ("FRAP"), and Rule 22.1 of the Local Appellate Rules ("LAR") moves this Honorable Court for issuance of a certificate of appealability ("CAPP") from the order of the United States District Court For The District Of Delaware of June 22, 2007 in Civil Action No. 05-0550(GMS) dismissing Petitioner's *habeas corpus* petition. Review is sought on the issues of law specified herein each of which were raised and fully briefed in the court below. The grounds for this motion are as follows:

**Statement Of Jurisdiction Over This Application:** This Court has jurisdiction to entertain an application for and issue a CAPP pursuant to 28 U.S.C. §2253(c). A timely filed motion under Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure is currently pending in the court below.

**Timeliness Of This Application:** This application for a CAPP is timely as it has been filed within the time fixed by FRAP 4 and LAR 22.1.

## Issues of Law Sought To Be Reviewed On Appeal

1. Whether Rule 8 of the Rules of the Supreme Court of the State of Delaware, as applied by that court, is an "independent and

adequate state rule of decision" constituting a procedural bar
to federal *habeas corpus* relief.

> [As to issue No. 1, Petitioner understands that this Court
> has previously issued a CAPP in *Campbell v. Carroll,* U. S.
> District Court, Delaware C.A. No. 05-5156, order, September
> 21, 2006 on that same issue].

2. Independently of Issue No. 1, whether the procedural bar
applied by the Delaware Supreme Court in this case requiring not
only a contemporaneous objection to prosecutorial misconduct *but
also* an objection to a curative instruction *and* a motion for a
mistrial was a procedural bar applied in the first instance in
state court in this case and is therefore not a bar to federal
*habeas corpus* relief pursuant to this Court's decision in
*Reynolds v. Ellingsworth,* 843 F.2d 712 (3rd Cir., 2001).

3. Whether "cause" and "prejudice" excusing any procedural
default were present in the circumstances of this case because
of the prosecution's erratic trial strategy with respect to
lesser included offenses which obscured the need for a specific
unanimity instruction to the jury and the futility of further
state court review.

4. Whether Delaware's presumptive sentencing system violates the
Sixth and Fourteenth Amendments by permitting a judge to enhance
a sentence based upon facts not found by a jury or admitted by a
defendant.

2

**Standard For Issuance Of A CAPP:** When a *habeas corpus* petition is dismissed on procedural grounds, a CAPP should issue when reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right and would further find it debatable whether the district court was correct in its ruling dismissing the petition. *Slack v. McDaniel*, 529 U.S. 473 (2000).

In a case where *habeas corpus* relief is denied by the district court on the merits, such a certificate should issue when reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. This standard requires review of the substance of the claims for relief in a petition and a general assessment of the merits of such claims – but it does *not* require a showing by the petitioner that an appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322 (2003).

**Statement of the Case:** By order dated June 2, 2007, the United States District Court for the District of Delaware denied Petitioner's 28 U.S.C. §2254 *habeas corpus* petition. That petition presented five claims for relief; the District Court denied relief on four of those grounds as being procedurally barred under what the court found to be the "independent and adequate" state court procedural grounds of Rule 8 of the Supreme Court of the State of Delaware and that Petitioner had

3

established neither "cause" nor "prejudice" to excuse such procedural default. The remaining ground presented a 6th Amendment claim under *Blakely v. Washington* 538 U.S. (2004) and was rejected by the court below on the merits.

**The Relevant Facts:** Following an October, 2002 confrontation in Rehoboth Beach, Delaware with the paramour of his former wife, Petitioner was charged with attempted first degree murder and 9 other felonies as well as 2 misdemeanors. The statutory maximum sentences for those charges exposed Petitioner to life plus 144 years in prison.

Two first degree kidnapping and two possession of firearms charges were dismissed on a pretrial motion. After a two week jury trial in August, 2003, Petitioner was acquitted of attempted first degree murder, assault first degree, burglary, assault second degree (chemical spray), and two firearms charges. Under Delaware's sentencing commission based presumptive sentencing system, the presumptive sentences for those offenses were 0-2 years incarceration, a fine and/or probation. Despite the jury's rejection after deliberations of just two hours of the prosecution's attempted 1st° murder theory (the only offense argued to the jury by the prosecution), Petitioner was sentenced to a historically long prison term of 8 years on the felony second degree assault (an offense defined exclusively under Delaware law as *not* involving serious physical injury), 1 year for misdemeanor trespassing, and 30 days for offensive touching. Those sentences

were based upon the sentencing judge's finding that Petitioner was "subject to a Family Court protection from abuse order." However, no sentence aggravating factor was presented to Petitioner's jury. Indeed, at the time of his sentencing in October of 2003, Petitioner, having pleaded not guilty to severed charges relating to a purported Family Court order, was awaiting a January, 2004 trial date on those charges.

In effect, Petitioner's sentence was increased above the 0-2 years incarceration presumptive sentence to a prison term of 9 years based upon a judicial finding at sentencing as to an element of an offense for which Petitioner *was awaiting trial.*

The relevant facts appear in the brief filed on Petitioner's behalf on his direct appeal to the Delaware Supreme Court: in 2002, Petitioner was suffering from depression due to the breakup of his marriage precipitated by the infidelities of his wife, Donna, although she consistently denied the facts to him. When he found out and could no longer ignore signs of Donna's infidelity with Stacy Smith, a 15 year younger maintenance man working in Rehoboth, he became more despondent. In the midst of this, while he had lost or was losing all that he had valued during his past life, he thought often of taking his own life, which Donna knew. His own sister had shot herself several years before. Despondent and embittered in believing that his wife had abandoned him when he needed her most, by the

5

morning of October 20, 2002, he had decided that he would take his own life in front of her and her paramour in Rehoboth.

Once in Rehoboth where he had intended to kill himself in front of Donna, and although armed with handguns and mace, it became clear to him that he could not carry out what he had planned to do because of how his death would affect his family and children. He found Donna reading in her bed alone. Surprised that Smith was not with Donna and realizing he may have been wrong about believing that Donna and Smith had been having an affair, he asked Donna where Smith was.

Donna fled from the bedroom to the office. He chased her fearing that she would get outside before him and hinder his escape. He caught her by the door so that he could get outside before she did. As he did, he saw Smith charging him from the rear of the office. He did not attempt to use a gun, but rather sprayed Smith with the mace hoping that he could get away but Stacey tackled him in front of the office door. As Smith and he grappled while he tried to get out the front door, he felt Smith grabbing for the gun in the holster around his waist. The gun discharged as they struggled over it wounding Smith in the shoulder. They tumbled out the door and were struggling on the ground outside when Rehoboth Police officers arrived and separated the two men.

**Proceedings On Direct Appeal:** Petitioner appealed the guilty verdicts and sentences on assault 2nd°, trespassing, and

6

offensive  touching  to  the  Delaware  Supreme  Court.  In Petitioner's opening brief on his direct appeal to the Delaware Supreme Court, Petitioner attacked each of the convictions on 5th and 6th Amendment grounds.  Petitioner raised four issues: i) the failure of the trial judge to give a "specific unanimity" instruction to the jury as to the weapon used in the assault on Smith (i. e., whether a gun or the pepper spray) and whether the assault was done "intentionally" or "recklessly" and because of the  confusing,  numerous  verdicts  possible[1]  which  failure Petitioner asserted violated his jury trial right and due process right to a fair trial under *Schad v. Arizona*, 501 U.S. 624 (1991); ii) the trial judge's use of an obsolete, superceded definition in instructing the jury as to the lesser included offenses of assault second degree and  assault *third* degree (a misdemeanor which the jury did not reach because of its verdict on the assault second degree offense with respect to Smith), had a substantial and injurious effect on the outcome of the case, a *Kotteakos v. United States*, 328 U.S. 750 (1946) due process basis for the appeal; iii) the prosecutor's gratuitous and prejudicial *ad hominem* attack on the credibility of the Petitioner ("You're a real humanitarian") on cross examination during his trial testimony, a due process violation because of the prejudicial nature of that attack and the closeness of the

---

[1] Under the relevant Delaware statute, the jury must be unanimous as to both the means of commission of an assault – i.e., the weapon used – and the actor's state of mind. A "composite verdict" is impermissible under the Delaware Criminal Code.

7

case under *Darden v. Wainwright,* 447 U.S. 169 (1986) and *Donnelly v. DiChristoforo,* 416 U.S. 637 (1974); and, iv) the trial court's failure to exclude evidence of inflammatory alleged prior bad acts by the Petitioner a further *Lisenba v. California,* 314 U.S. 219 (1941) due process ground for the invalidity of the convictions. A supplemental brief argued a further 6th Amendment claim under *Blakely v. Washington, supra,* after that decision.

In affirming Petitioner's convictions, the Delaware Supreme Court, while making passing reference to its Rule 8 procedural bar and "plain error" review as to issues i, ii, and iii, did not make an explicit finding that Petitioner's claims were procedurally barred and ruled on the merits of each claim as follows in an order of November 15, 2004: the disputed evidence of prior bad acts was properly admitted; the trial judge's admonitions to the jury "cured" the "improper prosecutorial remark" attacking Petitioner's character and credibility; the trial judge's failure to instruct the jury as to the necessity for their verdict to be unanimous as to both the means used to commit the second degree assault offense and Petitioner's state of mind while carrying out that assault was harmless as the jury, in the Delaware Supreme Court's view, "must have" reached a unanimous conclusion consistent with the State's "theory of the case" argument in the appeal before it; and the trial court's use of an incomplete and obsolete definition with

8

respect to the lesser included offense of assault third degree was not error because of the guilty verdict on assault second degree (a copy of the Delaware court's decision is attached hereto).

The Delaware high court did not opine on the *Blakely* issue raised in Petitioner's appeal as it had summarily rejected the applicability of *Blakely v. Washington* to Delaware sentencings in a four page order issued in an appeal in a separate direct appeal proceeding just three days before in its unreported opinion in *Benge v. State*, Del. Supr., No.137, 2004 (November 12, 2004) (copy attached hereto). Petitioner sought *certiorari* review; the United States Supreme denied *certiorari* in April, 2005 in Case No. 04-8987, docketed February 10, 2005.

Following the opinion of the Delaware Supreme Court on November 15, 2004, Petitioner timely filed in August, 2005 a petition for a writ of *habeas corpus* in the District Court for the District of Delaware which asserted the same five grounds raised by Petitioner in his direct appeal. The District Court, in its opinion of June 22, 2007, found that each of Petitioner's claims, with the sole exception of the *Blakely* claim, were procedurally barred under Delaware Supreme Court Rule 8. As to the *Blakely* claim, the District Court denied it on the merits. Despite recognizing this Court's previous grant of a certificate of appealability in *Campbell v .Carroll, supra,* the court below declined to issue a CAPP to Petitioner.

9

**Statement Of Reasons Why A CAPP Should Be Issued**

**Delaware Supreme Court Rule 8 Is Not An Independent And Adequate State Ground:** Whether Delaware Supreme Court Rule 8 as applied by that court is an "adequate and independent" state rule of decision – a question expressly left open by this Court in *Johnson v. Carroll,* 157 Fed. Appx. 472 (3rd Cir., 2005) – is an important issue that should be resolved by this Court. The District Court for Delaware has dismissed, and continues to dismiss, numerous state prisoner federal *habeas corpus* petitions solely on the basis of Rule 8 as a procedural bar.

Federal *habeas corpus* courts "…will presume that there is no independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy or independence of any possible state law ground is not clear from the face of the opinion." *Coleman v. Thompson,* 501 U.S. 722 (1991), at 734 – 735.

The first of two threshold issues in this inquiry is whether the state court judgment can indeed be held to have rested upon a procedural default or whether any such default was in fact *not* relied upon by the state court in reaching its decision – in other words, was the alleged procedural default the actual basis upon which the state court decided the case or did that court in fact reach the merits and decide the case on the basis of federal substantive constitutional law? *Ylst v.*

10

*Nunnemaker*, 501 US 797 (1991); *Coleman v. Thompson, supra.* The next issue, which arises only if the state ground was indeed the basis of the state court's decision, is whether the state procedural rule is "firmly established and regularly followed." *Ford v. Georgia*, 498 US 411 (1991). To determine these issues, a federal *habeas corpus* court applies *federal* law. *Lee v. Kemna*, 534 US 362 (2002); *Reynolds v. Ellingsworth*, 843 F.2d. 712 (3rd Cir., 1988), at 717. Nonetheless, because the operation of Rule 8 as a state procedural rule is a matter of state law, *Ford v. Georgia, supra*, practice under Rule 8 is a relevant inquiry.

**Delaware Supreme Court Rule 8 Is Not Consistently Applied By That Court:** Delaware Supreme Court Rule 8 provides as follows:

Questions Which May Be Raised On Appeal

Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.

Petitioner has compiled the three tables attached hereto which consist of cases decided during the period 1974 - 2004 in which the Delaware Supreme Court has applied its Rule 8 to the issues involved in Petitioner's case:

- Table 1: post-1988 specific unanimity jury instruction reported cases;
- Table 2: post-1974 prosecutorial misconduct reported cases; and

- Table 3: post-1982 reported cases involving incomplete or erroneous jury instructions issues.

Table 1 demonstrates that 100 % of the eight specific unanimity instruction cases were decided on the merits; 88% of those cases involved no objection at trial; 5 of such cases involved *no* reference by the Delaware court to Rule 8; and two of the five cases making no reference to Rule 8 were reversed on the merits.

Table 2 reflects that 32 of 33   (96%) of cases involving claims of prosecutorial misconduct were decided on their merits; 66% of such cases involved no objections having been made at trial ;and that all 43% of the opinions making *no* reference to Rule 8 resulted in reversals of the  convictions.

Table   3   contains   similar   data   −   100%   of   the erroneous/incomplete instruction cases were decided on the merits of the cases; 92% involved no objection at trial; and 63% of cases where no objection was made at trial contained no reference to Rule 8.

This record more than amply demonstrates that Rule 8 is *not* in fact "regularly followed" by the Delaware Supreme Court. In each category of cases involving the type if due process claims raised by Petitioner, the Delaware Supreme Court did not so much as mention Rule 8 in a majority of the cases where no objection was made at trial − 55% of the specific unanimity cases; 57% of the   prosecutorial   misconduct   cases;   and   63%   of   the

12

erroneous/incomplete cases. This is much more than a "sporadic application" of a procedural rule, Cf., *Reynolds v. Ellingsworth, supra,* 843 F. 2d, at 725; it affirmatively demonstrates that Rule 8 is not regularly followed as a procedural bar in the Delaware Supreme Court.

This conclusion is reinforced by the Delaware Supreme Court's oft repeated words on the operation of Rule 8; see, e.g., *Moore v. State,* 652 A. 2d. 560 (Del., 1995): Rule 8 requires only that a question be "fairly presented "to the trial court; but this requirement is *excused* if "the interests of justice requires review;" the appellant's procedural default below - waiver of a legal argument – was expressly *excused* by the Delaware Supreme Court. 652 A 2d, at 563; 568; and *Shelton v. State*, 744 A 2d. 465 (Del., 1999), where the Delaware court held that notwithstanding its "well-settled waiver rule" arising by the failure to make a contemporaneous objection, "…where the trial court commits plain error, a failure to object does not constitute a waiver of the right to raise the issue on appeal." The plain error "*entitles* [the defendant] to this Court's review…" 744 A 2d, at 497, note 142 (emphasis supplied).

Each of the cases abstracted above demonstrates that Delaware Supreme Court Rule 8 provides a procedural means by which review *on the merits* may be obtained in that court despite the failure of a defendant to object in the trial court. The

Delaware Supreme Court *waives* Rule 8 to conduct plain error review.

**The Delaware Supreme Court Applied A New Procedural Bar On Direct Appeal:** At trial, Petitioner timely objected to the prosecutor's unwarranted attack on his credibility. However, while recognizing the fact that the objection was made, the Delaware Supreme Court reviewed Petitioner's prosecutorial misconduct claim on direct appeal under the plain error standard because , it held, Petitioner had not objected to the *curative instruction* given by the trial court; see *Benge v. State, supra,* slip order p. 7, ¶ 13.

No previously decided Delaware case imposes the burden on a criminal defendant of either objecting to a curative instruction *or* moving for a mistrial – an *objection* alone has always been held to be adequate. See the cases collected in Table 2 to this brief. No procedural bar arises as a result of a newly adopted procedural default rule. See the *Reynolds v. Ellingsworth , supra.* Review by this Court is necessary to correct the error in the ruling of the District Court.

**Cause And Prejudice Are Present:** The existence of cause and prejudice permits a federal *habeas corpus* court to adjudicate for the first time a federal constitutional claim in a case where but for such adjudication there will be a miscarriage of justice. *Wainright v. Sykes,* 433 US (1977).

14

rule. A *habeas corpus* petitioner may satisfy the "cause" requirement by showing that governmental interference rendered procedural compliance "impracticable." *Murray v. Carrier, supra,* 477 U.S. 478 91986) at 488; *Amadeo v. Zant,* 486 US 214, at 224-227; *Cristin v. Brennan,* 281 F. 3d 404 (3rd Cir., 2002), at 420. "Interference" in this context includes both action, *Banks v. Dretke,* 540 US 668 (2004) and inaction. *Ivy v. Caspari,* 173 F. 3d 1136 (8th Cir., 1999).

"Cause" in Petitioner's case with respect to the *Schad* claim is established in this case by the deliberate strategic trial decision of the prosecutor to *not* present any theory of guilt other than as to attempted murder first degree. In Petitioner's opening *habeas corpus* brief, pages 20-21 and 30-32, the prosecutor's theory of the case and closing argument is summarized. Despite the trial judge's unambiguous ruling that the evidence warranted instructions on both assault 2nd degree and assault 3rd degree; despite the evidence of two gunshots and pepper spray introduced by the prosecutor; and despite extensive discussion between the trial judge and counsel as to lesser included offenses, the prosecutor failed to articulate to the jury any theory supporting a conviction for assault second or third degree.

In point of fact, the State's contention as to precisely what Petitioner had been convicted of remained open at sentencing on October 10, 2003 – 1 ½ months after trial. Prior

to the trial judge imposing sentence, the prosecutor did *not* recite what the jury verdict of guilty of assault second degree meant in the State's view and defense counsel argued that the verdict was based on pepper spray – not a gunshot. Not until the State's answering brief on direct appeal did the State *initially* advance the contentions that the second degree assault verdict was based upon use of a gun.

At trial, Petitioner's counsel was not obligated to fill in the gaps in the prosecutor's theory of the case. The State's confusing case – emphasizing the pepper spraying but failing to argue that it supported a conviction of a lesser degree of assault – placed Petitioner's counsel in a wholly untenable position of having to fill in the gaps in the State's case by arguing for a specific unanimity jury instruction. "Cause" is therefore present in this case in the prosecutor's erratic trial strategy which presented an "objective impediment" to Petitioner's counsel complying with the procedural rule. See *Slutzker v. Johnson,* 393 F. 3 d 373 (3rd Cir., 2004).

As to the constitutional violation aspect of the prior bad acts evidence that the District Court found not to have been fairly presented to the Delaware Supreme Court, "cause" to excuse any procedural default of that claim is present as review by the Delaware Supreme Court of the admission of such evidence includes as an integral part of the appellate process a determination as to whether admission violates constitutional

16

standards. See, *Capano v. State*, 781 A.2d 556 (Del., 2001), at p. 586. Further review of this constitutional issue would therefore be "futile." *Whitney v. Horn*, 280 F.3d 240 (3rd Cir., 2002), at p. 250, citing *Lines v. Larkin*, 208 F.3d 153 (3rd Cir., 2000).

**Delaware's Presumptive Sentencing System Violates The 6th Amendment:** The United States Supreme Court has found each of the presumptive sentencing systems that it has reviewed[2] to be violative of the 6th Amendment right to trial by jury. Thirteen states (including New Jersey and Pennsylvania) have faced *post-Blakely* challenges to their presumptive sentence sentencing systems. No state supreme court has upheld the validity of its own sentencing system with the exception of California [*People v. Black,* 35 Cal. Rpt. 4th 1238 (Cal., 2005) - overruled in *Cunningham*), New Mexico (based upon *People v. Black, supra*, and therefore subject to question) and Tennessee [*Tennessee v. Lopez*, 163 SE 2d 658 (Tenn., 2005), a heavily criticized decision that acknowledges its potential constitutional infirmity; later legislatively overruled by a "*Blakely* fix" of Tennessee's system].

The decision of the Delaware Supreme Court finding Delaware's system to be *Blakely* compliant casts grave constitutional doubt on Delaware's system.

---

[2] *Blakely v. Washington, supra; United States v. Booker*, 543 U.S.220 (2005); *Cunningham v. California*, 549 U.S. __ (2007).

17

Whether Delaware's presumptive sentencing system violates the "bright line" rule of *Apprendi/Blakely/ Cunningham* is an important question that this Court should resolve. The Delaware Court based its finding of *Blakely* compliance of Delaware's sentencing system upon a 1987 court administrative directive years in which the Delaware Court decreed that "no party to a criminal case has any legal or constitutional right to appeal to any court a statutorily authorized sentence which does not conform to the sentencing standards."

The Delaware court's holding that the SENTAC guidelines are "voluntary" and "non-binding" as a matter of state law is *not* fatal to Petitioner's *Blakely* claim because that claim is grounded on the operation of jury trial in 11 Del. C. §4204(m) – the Delaware statute that mandates imposition of a presumptive sentence or the existence of reasons to exceed that sentence:

> Whenever a court imposes a sentence inconsistent with the presumptive sentences adopted by the Sentencing Accountability Commission such court shall set forth on the record its reasons for imposing such penalty.

When the reasons for departure from the SENTAC presumptive sentences involve fact finding, as in Petitioner's case, the 6th Amendment right to jury trial is triggered as is made clear in *Blakely/Booker/Cunningham*. This Court should review that issue.

**WHEREFORE,** Petitioner moves this Honorable Court for an order issuing a CAPP on the issues stated above at pp. 1-2.

Date: July 19, 2007

John H. Benge, Jr.

18

*Table 1*

Delaware Supreme Court Reported Appeals Post-*Probst*
(1988-2004) Deciding Specific Unanimity Jury Instruction Issue

| Case Citation And Result | Objection Or Mistrial Motion At Trial? | Did Court Make Reference To Rule 8? | Decided On Merits Or Bar Of Rule 8? |
|---|---|---|---|
| *Probst* 547 A.2d 114(1988) reversed | No p. 119 | Yes p. 119 | Merits p. 119 |
| *Zimmerman* 565 A.2d 887(1989) affirmed | No p. 890 | No p. 890 | Merits p. 890 |
| *Liu* 628 A.2d 1376(1993) affirmed | No p. 1382 | Yes p. 1382 | Merits p. 1382 |
| *Pope* 632 A.2d 73(1993) affirmed | No | No p. 79 | Merits p. 79 |
| *Dixon* 673A.2d 1220 (1996) reversed in part | No p. 1228 | No p. 1228 | Merits p. 1228 |
| *Stevenson* 709 A.2d 619(1989) affirmed | No p. 634 | No p. 634 | Merits p. 634 |
| *Brown* 729 A.2d 259(1999) affirmed | No p. 265 | No p. 265 | Merits p. 634 |
| *Ayers* 844 A.2d 304(2004) affirmed | instruction requested at trial p. 308 | | Merits |

*Table 2*

Delaware Supreme Court Reported Appeals
1974-2005 Deciding Prosecutorial Misconduct Issue

| Case Citation | Objection / Mistrial Motion At Trial? | Did Court Make Reference To Rule 8? | Decided On Merits Or Bar Of Rule 8? |
|---|---|---|---|
| *Edwards*<br>320 A.2d 701(1974) | No/No | No | Merits<br>affirmed |
| *Sexton*<br>397 A.2d 540(1979) | No/No | No | Merits<br>reversed in part |
| *Hooks*<br>416 A.2d 189(1980) | Yes/Yes | | Merits<br>affirmed |
| *Hughes*<br>437 A.2d 559(1981) | No/No | No | Merits<br>reversed |
| *Bailey*<br>440 A.2d 997(1982) | Yes/Yes | | Merits<br>reversed |
| *Boatson*<br>457 A.2d 738(1983) | Yes/Yes | | Merits<br>affirmed |
| *Ross*<br>482 A.2d 727(1984) | No/No | No | Merits<br>affirmed |
| *Whalen*<br>492 A.2d 552(1985) | No/No | No | Merits<br>reversed |
| *Riley*<br>496 A.2d 997(1985) | No/No | No | Merits<br>affirmed |
| *Diaz*<br>508 A.2d 861(1986) | Yes/Yes | | Merits<br>affirmed |
| *Fensterer*<br>509 A.2d 1106(1986) | No/No | No | Merits<br>reversed |
| *Bowe*<br>514 A.2d 408(1986) | Yes/Yes | | Merits<br>reversed |
| *Brokenbrough*<br>522 A.2d 851(1987) | Yes/Yes | | Merits<br>affirmed |
| *Michaels*<br>529 A.2d752(1987) | No/No | No | Merits<br>affirmed |
| *Weber*<br>547 A.2d 948(1988) | No/No | Yes | Merits<br>reversed in part |
| *Walls*<br>560 A.2d 1038(1989) | No/No | Yes | Merits<br>reversed in part |

*Table 2*, continued

| Case Citation | Objection Or Mistrial Motion At Trial? | Did Court Make Reference To Rule 8? | Decided On Merits Or Bar Of Rule 8? |
|---|---|---|---|
| *Pennell*<br>602 A.2d 48(1991) | Yes/Yes | | Merits<br>affirmed |
| Saunders<br>602 A.2d 623(1991) | No/No | | Defaulted under<br>cause/prejudice |
| *Mason*<br>658 A.2d 994(1994) | No/No | Yes | Merits<br>affirmed |
| *Clayton*<br>765 A.2d 940(2000) | No/No | Yes | Merits<br>affirmed |
| *Warren*<br>774 A.2d 246(2001) | No/No | Yes | Merits<br>affirmed |
| *Walker*<br>709 A.2d 1214(2002) | No/No | No | Merits<br>affirmed |
| *Trump*<br>753 A.2d 963(2000) | No/No | No | Merits<br>affirmed |
| *Caldwell*<br>770 A.2d 522(2001) | Yes/Yes | | Merits<br>reversed |
| *Warren*<br>774 A.2d 246(2001) | No/No | Yes | Merits<br>affirmed |
| *Bruce*<br>781 A.2d 544(2001) | No/No | Yes | Merits<br>affirmed |
| *Morris*<br>795 A.2d 653(2002) | No/No | Yes | Merits<br>reversed |
| *Williams*<br>796 A.2d 1281(2002) | No/No | Yes | Merits<br>reversed in part |
| *Williams*<br>803 A.2d 927(2002) | No/No | No | Merits<br>reversed |
| *Hunter*<br>815 A.2d 730(2002) | Yes/No | No | Merits<br>reversed |
| *Derose*<br>840 A.2d 615 | No/No | No | Merits<br>affirmed |
| *Daniels*<br>859 A.2d 1008(2004) | Yes/No | No | Merits<br>affirmed |
| *Price*<br>__A.2d__(2004) | Yes/Yes | | Merits<br>affirmed |

Delaware Supreme Court Reported Appeals 1982-2005
Deciding Incomplete/Erroneous Jury Instruction Issue

| Case Citation | Objection/Mistrial Motion At Trial? | Did Court Make Reference to Rule 8? | Decided On Merits Or Bar Of Rule 8? |
|---|---|---|---|
| *Waters* 443 A.2d 500(1982) | No/No | No | Merits reversed |
| *Flamer* 490 A.2d 104(1983) *cert. denied* 464 US 865(1983) | No/No | No | Merits affirmed |
| *Taylor* 464 A.2d 897(1983) | No/No | No | Merits reversed |
| *Scott* 521 A.2d 235(1987) | No/No | No | Merits reversed in part |
| *Probst* 547 A.2d 114(1988) | No/No | Yes | Merits reversed |
| *Walls* 560 A.2d 1038(1989) | No/No | Yes | Merits reversed in part |
| *Zimmerman* 565 A.2d 887(1989) | No/No | Yes | Merits reversed in part |
| *Culver v. Bennett* 588 A.2d 1094(1991) | No/No | Yes | Merits reversed |
| *Stansbury* 591 A.2d 188(1991) | No/No | Yes | Merits reversed in part |
| *Grace* 658 A.2d 1011(1995) | No/No | No | Merits affirmed |
| *Floray* 720 A.2d 1132(1998) | Yes/No | No | Merits affimred |
| *Bullock* 775 A.2d 1043(2001) | No/No | No (majority opinion) | Merits reversed |

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN H. BENGE, JR. | § | |
| | § | NO. 137, 2004 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE | § | in and for New Castle County |
| | § | Cr. ID. No. 0301005493 |
| Plaintiff Below | § | |
| Appellee. | § | |

Submitted: October 13, 2004
Decided: November 12, 2004

Before **STEELE**, Chief Justice, **Holland** and **Berger**, Justices.

## ORDER

This 12th day of November, 2004, on consideration of the briefs of the parties, it appears to the Court that:

1) John H. Benge, Jr., appeals from his conviction, following a guilty plea, of two counts of burglary third degree, three counts of unlawful interception of communications (wiretapping), and one count of attempted wiretapping. Benge argues that his three year prison sentence for the first wiretapping offense violated his constitutional right to trial by jury.

2) Benge admitted that he illegally entered his former wife's home, and installed a recording device in order to eavesdrop on her. He entered his guilty plea on these charges three months after being sentenced on several violent felony charges, which also involved his former wife and her boyfriend. After hearing from the victim and Benge, the Superior Court sentenced Benge outside the SENTAC guidelines because it found "a lack of remorse, among other matters."

3) Benge's sole argument on appeal is that, under the holding in *Blakely v. Washington*,[1] the trial court violated his constitutional right to a trial by jury because it exceeded the SENTAC sentencing guidelines. In *Blakely*, the United States Supreme Court invalidated a sentence that exceeded the "standard range" but not the statutory maximum term for the crime. The governing state sentencing scheme required courts to find "substantial and compelling reasons" before imposing an "exceptional sentence" (one that exceeds the standard range), and provided appellate review of the record in support of the trial court's findings. *Blakely* invalidated the exceptional sentence because it exceeded the maximum sentence that could be imposed based solely on a jury verdict.

4) *Blakely* does not impact Delaware's sentencing scheme because the SENTAC guidelines are voluntary and non-binding. As we explained in *Siple v. State*.[2]

---

[1] 124 S.Ct. 2531 (2004).

[2] 701 A.2d 79, 82-83 Del. 1997)(Citations omitted).

On September 15, 1987, this Court issued Administrative Directive Number Seventy-Six. That directive implemented the sentencing guidelines that had been developed by SENTAC, and provided that:

> 2. Any judge who finds a particular sentencing standard inappropriate in a particular case because of the presence of aggravating or mitigating or other relevant factors need not impose a sentence in accordance with the standards but such judge shall set forth with particularity the reasons for the deviation...
>
> \*     \*     \*
>
> 3. The sentencing standards are considered voluntary and nonbinding; thus no party to a criminal case has any legal or constitutional right to appeal to any court a statutorily authorized sentence which does not conform to the sentencing standards.

This Court's Administrative Directive...requires that reasons be given for deviations from SENTAC's sentencing guidelines because this Court does have appellate jurisdiction to review criminal sentences on the basis of alleged: unconstitutionality; factual predicates which are either false, impermissible, or lack minimum indicia of reliability; judicial vindictiveness, bias, or sentencing with a "closed mind;" and any other illegality. Except for these constitutional and legal constraints, it is well-established that appellate review of criminal sentences is limited in Delaware to a determination that the sentence is within the statutory limits. Delaware, unlike the federal and several state jurisdictions has not provided for appellate review of criminal punishments that deviate from sentencing guidelines.

Thus, the trial court must explain its reasons for doing so, but it is authorized to exceed the SENTAC guidelines without making any factual findings beyond those reflected in the jury's verdict.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

/s/ Carolyn Berger
Justice

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN H. BENGE, JR., | ) | |
| | ) | No. 544, 2003 |
| Defendant Below, | ) | |
| Appellant, | ) | Court Below: Superior Court |
| | ) | of the State of Delaware in |
| v. | ) | and for Sussex County |
| | ) | |
| STATE OF DELAWARE, | ) | Cr. ID No. 0210012355 |
| | ) | |
| Plaintiff Below, | ) | |
| Appellee. | ) | |

Submitted: September 15, 2004
Decided: November 15, 2004

Before **STEELE**, Chief Justice, **BERGER** and **JACOBS**, Justices.

### *O R D E R*

This 15th day of November 2004, on consideration of the briefs of the parties, it appears to the Court that:

1.      John H. Benge, Jr., appeals his convictions in Superior Court of assault in the second degree, offensive touching, and trespass in the first degree. Benge advances four different claims of error. First, he claims that the trial judge improperly admitted prior bad act evidence. Second, Benge claims that the trial judge erred by failing to declare a mistrial following an improper prosecutorial remark. Third, he claims that the trial court judge erred by not including a specific unanimity instruction to the jury in connection with the lesser-included offense of second degree assault. Finally, Benge claims that the trial judge gave an improper

jury instruction on the lesser-included offense of third degree assault. After a careful review of the record, we hold that there was no abuse of discretion in admitting the prior bad act evidence under Rule 404(b). Furthermore, we hold that the trial court committed no error in instructing the jury to disregard the improper prosecutorial remark and committed no error in instructing the jury on the lesser-included offenses of second and third degree assault. Accordingly, we affirm.

2.    In response to a 911 call, the Rehoboth Beach Police arrived at the Oak Grove Motor Court Inn to find Benge and Edward Stacey Smith involved in an altercation outside the motel. Smith, who was on top of Benge at the time the police arrived, had sustained a gunshot wound to his chest. At the scene, the police recovered two loaded handguns, two speed loaders, several live, loose .22 caliber rounds, and two holsters which were attached to Benge's belt.

3.    This incident was the result of the deterioration and later dissolution of the marriage between Benge, and his ex-wife, Donna Kay Lovett. Lovett informed Benge that she wanted to separate and moved into her brother's North Wilmington home. In fact, Benge had checked her phone records, and placed a recording device under Lovett's bed with a microphone attached to the mattress. After some time, Lovett returned to the couple's home in Centreville. From that point on Benge continually sought reassurance from Lovett that she had not fallen in love with someone else.

2

4.    In October 2001, Lovett filed for divorce, left the Centreville home and permanently moved to her brother's house in North Wilmington. After Lovett left, Benge took a set of her new house keys and duplicated them. He then used those duplicate keys to enter the North Wilmington home on several occasions, continuing to do so even after the divorce had become final. On one of these occasions he placed a voice-activated tape recorder in the dresser located in Lovett's bedroom. Furthermore, her brother, the owner of the North Wilmington home, saw Benge driving near the house at around the time of the break-in.

5.    After the divorce was final, Lovett began a new relationship with Smith, a man whom she had known for several years. Smith was an elementary school teacher and worked during the summer as a maintenance man at Oak Grove, which Lovett's family owned.

6.    In October 2002, Benge drove to the motel and took with him two loaded handguns with holsters, extra ammunition in two speed-loaders, a pair of wirecutters, and a can of high-intensity pepper spray. When Benge reached the motel, he illegally entered room number five, using a duplicate set of keys. After consuming alcohol, he left the motel room and went in search of Lovett and Smith. Once outside the motel, Benge cut the telephone line that ran to the facility. He then entered the motel office, which has separate apartments on each side. Benge entered one of the apartment bedrooms where he found Lovett. He confronted her,

3

demanding to know where Smith was. After apparently failing to get the answer he wanted, Benge sprayed Lovett in the face with the pepper spray. Lovett ran from the bedroom to the living room and tried to unlock the door of the apartment. Benge then pulled her back and sprayed her again.

      7.    Smith heard Lovett screaming and entered the room from the other apartment. When Smith entered the room Benge released Lovett, whom he had been holding with a weapon at her face. Lovett then fled to the motel office and managed to call the police on her cell phone. Lovett observed Benge and Smith struggling in the apartment and heard two gunshots.

      8.    After Benge released Lovett, he sprayed Smith in the face and chest with the pepper spray. A struggle ensued and Benge drew one of his handguns. Smith heard gunshots and tried to push Benge out the door. As a result of the struggle, Smith sustained a gunshot wound to his chest, a punctured right eardrum, irritated eyes, a gouge in his left foot, and other less serious injuries.

      9.    At trial Benge testified that he had been so distraught over the divorce that he had decided to kill himself and claimed that he wanted to commit suicide in front of Lovett and Smith. Benge expressly denied any intention to harm anyone else. Benge further claimed that once inside the motel office, however, he decided against suicide, but panicked when he saw Lovett and as a result sprayed her with the pepper spray. When Smith charged him, he also sprayed Smith. Benge also

testified that during the struggle, he could not see what was going on because his sweatshirt was pulled over his head. Although, Benge acknowledged that his gun went off, he denied pulling the trigger. Benge did admit, however, that he had duplicated Lovett's keys and used those keys to enter the North Wilmington home where he had placed the tape recorder.

10.    In his first claim, Benge challenges the admission, over his objection, of evidence of his prior bad acts in connection with Lovett, specifically the evidence of the two earlier illegal entries. The first occurred in December 2001 at Lovett's North Wilmington home and the second occurred in the spring of 2002 at the same residence. Benge contends that the evidence was irrelevant and unfairly prejudicial under Delaware Rule of Evidence 404(b). We review the decision to admit evidence under Rule 404(b) for abuse of discretion.[1]

11.    There was no abuse of discretion in admitting the evidence of Benge's prior bad acts. The evidence of the earlier illegal entries was presented to prove Benge's intent and to establish his motive for breaking into the motel and attacking both Lovett and Smith. Proof of intent and proof of motive are proper purposes for admitting evidence of prior bad acts under Rule 404(b).[2] The alleged entry was committed in an effort to record conversations between Lovett, with whom Benge

---

[1] *Allen v. State*, 644 A.2d 982, 985 (Del. 1994).

[2] *See Vanderhoff v. State*, 684 A.2d 1232, 1233 (Del. 1996).

was obsessed, and Smith, toward whom Benge had animosity. These prior bad acts add substantially to proving intent and establishing a motive. The trial judge performed the appropriate tests under Rule 403 and *Getz v. State*,[3] properly balancing the probative value of the prior bad act evidence against the possibility of unfair prejudice to the accused.

12.    Benge next contends that the trial judge erred by failing to declare a mistrial following an improper prosecutorial remark. After Benge was cross-examined by the prosecutor, during which he testified to his hope that Smith had not been shot during the altercation, the prosecutor remarked "[y]ou are quite a humanitarian, aren't you?"[4] The defense objected to the remark and the trial judge immediately instructed the jury to disregard the comment. Following the testimony a luncheon recess was called and the trial judge conferred with counsel. The trial judge asked defense counsel if there was anything more he would like the Court to do. At this point defense counsel did not ask for a mistrial; instead, he asked the trial judge to "go a little further and tell [the jury] just to make it very clear that's not to be given any consideration whatsoever."[5] Immediately following the recess the trial judge instructed the jury:

---

[3] 538 A.2d 726 (Del. 1988) (establishing the following six factors as the test to use when deciding to admit evidence under Rule 404(b)).

[4] Trial Tr. at F-131.

[5] Trial Tr. at F-142.

> That sort of [comment] should not happen.    Ms. Wither is an
> experienced prosecutor and I was surprised when she said that. When
> I tell you to disregard that, it is very important that you just disregard
> that.    It is not appropriate for any attorney who appears in this
> courtroom to express an opinion about any witness or any defendant
> who comes up here and testifies. So when I tell you to disregard that,
> I say that as strongly as I possibly can. So please disregard it and we
> will go on.[6]

13.    Since Benge neither objected to this cautionary instruction nor requested a mistrial, this challenge, raised for the first time on appeal, must be reviewed for plain error.[7]  Because the trial judge forcefully cautioned the jury, in detail, not once, but twice, there is no plain error.  Under these circumstances the instructions given by the trial judge were sufficient to cure any unfair prejudice resulting from the improper prosecutorial remark.[8]

14.    In his third claim, Benge contends that the trial judge erred by not including a specific unanimity instruction on the lesser-included offense of second-degree assault. Benge argues that a unanimity instruction was required because a conviction for second degree assault mandates a finding that he injured Smith "by means of a deadly weapon or dangerous instrument."[9]  Benge argues that the

---

[6] Trial Tr. at F-148.

[7] DEL. SUPR. Ct. R. 8; *Capano v. State*, 781 A.2d 556, 653 (Del. 2001).

[8] *See Pennell v. State*, 602 A.2d 48, 52 (Del. 1991) ("This Court has repeatedly held that even when prejudicial error is committed, it will usually be cured by the trial judge's instruction to the jury to disregard the remarks.") (citations omitted); *accord Steckel v. State*, 711 A.2d 5, 11-12 (Del. 1998).

7

evidence adduced at trial would have enabled the jury to find that he injured Smith by means of either the handgun or the pepper spray. According to Benge, given the choice between the handgun and the pepper spray it cannot be determined if the jury unanimously agreed on the specific instrumentality used to injure Smith.

15.    We review Benge's third claim for plain error because this argument was not raised at trial.[10]  A specific unanimity instruction is not required in every case.[11]  Although here there is evidence that Benge both pepper-sprayed and shot Smith, the definition of "dangerous instrument" that was submitted to the jury did not mention pepper spray. The jury instruction, on the other hand, did make a specific reference to a firearm. Moreover, the trial judge omitted the reference to a "disabling chemical spray," which is part of the statutory definition of "dangerous instrument."[12]  Based on this definition the jury could not have reasonably found that Benge used a "disabling chemical spray" to severely injure Smith. Accordingly, they must have concluded that the dangerous instrument was a firearm and there was no plain error.

---

[9] *See* 11 *Del. C.* §612(a)(2).

[10] DEL. SUPR. Ct. R. 8; *Capano*, 781 A.2d at 653.

[11] *See Ayers v. State*, 844 A.2d 304, 309 (Del. 2004); *Dixon v. State*, 673 A.2d 220, 228 (Del. 1996).

[12] 11 *Del. C.* §224(4).

8

16.    In his fourth claim, Benge contends that the trial judge erred by not including the complete statutory definition of "dangerous instrument" in the jury instructions on the lesser-included offense of third degree assault. The instruction, similar to the one given on second degree assault, specifically omitted the term "disabling chemical spray" from the statutory definition of "dangerous instrument." Because this claim is raised for the first time on appeal, we review for plain error.[13]

17.    There is no showing of plain error here because the omission of the instrumentality of a "disabling chemical spray" in the jury instruction meant that the jury's assessment of the evidence was being confined by the trial judge's instruction and by the State's theory of the case, namely, that Benge attempted to kill Smith by shooting him in the chest. The State never claimed that Benge attempted to kill Smith by dousing him with pepper spray. Moreover, the jury convicted Benge of *second degree* assault rather than *third degree* assault. There can be no reversible error based on this jury instruction because the jury did not rely on this instruction to convict Benge; he was convicted of second degree assault. The third degree assault instruction had no bearing on the outcome of Benge's case. Accordingly, there was no plain error.

---

[13] DEL. SUPR. Ct. R. 8; *Capano,* 781 at 653.

9

**NOW, THEREFORE, IT IS ORDERED** that the judgment of the Superior

Court is **AFFIRMED**.

BY THE COURT:

/s/ Myron T. Steele
Chief Justice

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN H. BENGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 05-550-GMS |
| | ) | |
| MICHAEL DELOY, Warden, and | ) | |
| JOSEPH J. BIDEN, III, Attorney General | ) | |
| of the State of Delaware, | ) | |
| | ) | |
| Respondents.[1] | ) | |

John H. Benge. *Pro se* petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for respondents.

---

### MEMORANDUM OPINION

J ~ 12 , 2007
Wilmington, Delaware



FILED

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

---

[1]Attorney General Joseph R. Biden, III assumed office in January, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).



**Sleet, District Judge**

## I. INTRODUCTION

Petitioner John H. Benge ("Benge") is an inmate at the Sussex Correctional Center in

Georgetown, Delaware. Benge filed the pending petition for a writ of habeas corpus ("petition")

pursuant to 28 U.S.C. § 2254. (D.I. 1) For the reasons that follow, the court will dismiss his

petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As reported by the Delaware Supreme Court in Benge's direct appeal, the facts of his case

are as follows:

> In response to a 911 call, the Rehoboth Beach Police arrived at the Oak Grove Motor
> Court Inn to find Benge and Edward Stacey Smith involved in an altercation outside the
> motel. Smith, who was on top of Benge at the time the police arrived, had sustained a
> gunshot wound to his chest. At the scene, the police recovered two loaded handguns, two
> speed loaders, several live, loose .22 caliber rounds, and two holsters which were attached
> to Benge's belt.
>
> This incident was the result of the deterioration and later dissolution of the marriage
> between Benge, and his ex-wife, Donna Kay Lovett. Lovett informed Benge that she
> wanted to separate and moved into her brother's North Wilmington home. In fact, Benge
> had checked her phone records, and placed a recording device under Lovett's bed with a
> microphone attached to the mattress. After some time, Lovett returned to the couple's
> home in Centreville. From that point on, Benge continually sought reassurance from
> Lovett that she had not fallen in love with someone else.
>
> In October 2001, Lovett filed for divorce, left the Centreville home, and permanently
> moved to her brother's house in North Wilmington. After Lovett left, Benge took a set of
> her new house keys and duplicated them. He then used those duplicate keys to enter the
> North Wilmington home on several occasions, continuing to do so even after the divorce
> had become final. On one of these occasions he placed a voice-activated tape recorder in
> the dresser located in Lovett's bedroom. Furthermore, her brother, the owner of the
> North Wilmington home, saw Benge driving near the house around the time of the break-
> in.
>
> After the divorce was final, Lovett began a new relationship with Smith, a man whom she

1

had known for several years. Smith was an elementary school teacher and worked during the summer as a maintenance man at Oak Grove, which Lovett's family owned.

In October 2002, Benge drove to the motel and took with him two loaded handguns with holsters, extra ammunition in two speed-loaders, a pair of wirecutters, and a can of high-intensity pepper spray. When Benge reached the motel, he illegally entered room number five, using a duplicate set of keys. After consuming alcohol, he left the motel room and went in search of Lovett and Smith. Once outside the motel, Benge cut the telephone line that ran to the facility. He then entered the motel office, which has separate apartments on each side. Benge entered one of the apartment bedrooms where he found Lovett. He confronted her, demanding to know where Smith was. After apparently failing to get the answer he wanted, Benge sprayed Lovett in the face with pepper spray. Lovett ran from the bedroom to the living room and tried to unlock the door of the apartment. Benge then pulled her back and sprayed her again.

Smith heard Lovett screaming and entered the room from the other apartment. When Smith entered the room Benge released Lovett, whom he had been holding with a weapon at her face. Lovett then fled to the motel office and managed to call the police on her cell phone. Lovett observed Benge and Smith struggling in the apartment and heard two gunshots.

After Benge released Lovett, he sprayed Smith in the face and chest with the pepper spray. A struggle ensued and Benge drew one of his handguns. Smith heard gunshots and tried to push Benge out the door. As a result of the struggle, Smith sustained a gunshot wound to his chest, a punctured right eardrum, irritated eyes, a gouge in his left foot, and other less serious injuries.

At trial, Benge testified that he had been so distraught over the divorce that he had decided to kill himself and claimed that he wanted to commit suicide in front of Lovett and Smith. Benge expressly denied any intention to harm anyone else. Benge further claimed that once inside the motel office, however, he decided against suicide, but panicked when he saw Lovett and as a result sprayed her with the pepper spray. When Smith charged him, he also sprayed Smith. Benge also testified that during the struggle, he could not see what was going on because his sweatshirt was pulled over his head. Although Benge acknowledged that his gun went off, he denied pulling the trigger. Benge did admit, however, that he had duplicated Lovett's keys and used those keys to enter the North Wilmington home where he had placed the tape recorder.

*Benge v. State*, 862 A.2d 385 (Table), 2004 WL 2742314 (Del. Nov. 15, 2004).

In August 2003, a Superior Court jury convicted Benge of second degree assault (Del.

Code Ann. tit. 11, 612(a)(2))(lesser included offense of attempted first degree murder), offensive

2

touching (Del. Code Ann. tit. 11, § 601(a))(lesser included offense of second degree assault), and

first degree criminal trespass (Del. Code Ann. tit. 11, § 823)(lesser included offense of second

degree burglary). The jury acquitted Benge of two weapons' offenses.[2] The Superior Court

sentenced Benge to a cumulative sentence of nine years and one month in prison followed by

probation. On November 15, 2004, the Delaware Supreme Court affirmed Benge's conviction

and sentence on direct appeal. *See generally Benge*, 2004 WL 2742314 . Benge did not pursue

post-conviction review in the state courts.

Benge filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the

State filed an answer. (D.I. 1; D.I. 29) Benge filed a response as well as a motion for summary

judgment. (D.I. 32; D.I. 34)

Benge's petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

---

[2]Other charges of possession of a weapon by a person prohibited and two counts of
violation of a protection from abuse order were severed prior to trial. Benge pled guilty to those
charges and was sentenced in a separate court proceeding. (D.I. 29, at 2) Benge also pled guilty
in the Superior Court on January 13, 2004 to two counts of third degree burglary (Del. Code Ann.
tit. 11, § 824)), three counts of unlawful interception of oral communications (wiretapping)(Del.
Code Ann., tit. 11, § 2402), and one count of attempted wiretapping. Benge was sentenced on
March 19, 2004 to five years in prison, suspended after three years for probation on the first
wiretapping charge. That conviction is the subject of a separate federal habeas proceeding. *See
Benge v. DeLoy*, Civ. A. No. 05-551-GMS.

3

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

**B. Exhaustion and Procedural Default**

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

4

state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines*, 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner

5

demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

**C. Standard of Review Under AEDPA**

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

6

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Benge asserts the following five grounds for relief in his petition: (1) the trial court violated Benge's due process rights by failing to give a specific unanimity instruction on second degree assault; (2) the trial court violated Benge's right to due process by giving an incomplete instruction on lesser included offenses regarding the weapon used during the attack; (3) the prosecutor improperly impeached Benge's character during his testimony, which so infected the trial with unfairness as to deny Benge due process of law; (4) the trial court improperly admitted evidence of Benge's prior bad acts (the unlawful electronic interception charges), thereby rendering Benge's trial so unfair as to deny him due process of law; and (5) the sentences imposed exceed the sentence recommended under Delaware's sentencing guidelines in violation of the Sixth Amendment and the rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004).

The State contends that claims one, two, three are procedurally barred from federal habeas review, and that claims four and five do not warrant federal habeas relief.

The court will review the claims seriatim.

7

## A. Claims one, two, and three are procedurally barred

Claims one and two assert that the Superior Court erred in instructing the jury, and claim

three asserts prosecutorial misconduct. Benge exhausted state remedies by presenting these

claims to the Delaware Supreme Court on direct appeal. However, because Benge failed to

object to the jury instructions and prosecutorial misconduct during his trial, the Delaware

Supreme Court invoked Delaware Supreme Court Rule 8 and only reviewed the claims for plain

error. *Benge*, 2004 WL 2742314, at \*3-4. By applying Rule 8 to deny Benge's first three claims,

the Delaware Supreme Court plainly stated that its decision rested on state law grounds. *See*

*Harris v. Reed*, 489 U.S. 255, 261 (1989). This court has consistently held that the unambiguous

application of Delaware Supreme Court Rule 8 constitutes an independent and adequate state

ground for procedural default purposes.[3] *See Hubbard v. Carroll*, 2003 WL 277252, at \*3 (D.

---

[3]The court acknowledges that the Third Circuit Court of Appeals has recently issued a certificate of appealability to determine if the Delaware Supreme Court's review for plain error pursuant to Rule 8 constitutes the application of an independent and adequate state procedural rule precluding habeas review under the procedural default doctrine. *See Campbell v. Carroll*, Civ. A. No. 05-5156, Order (3d Cir. Sept. 21, 2006). The precise issue before the Third Circuit is whether the Delaware Supreme Court consistently applies Rule 8 and whether the type of review involved in determining "plain error" constitutes a review of the merits sufficient to excuse any default of the claim that occurred during trial.

Here, the court concludes that the Delaware Supreme Court has consistently applied Rule 8 to the types of claims represented by claims one, two, and three. Claims one and two allege that the Superior Court erred in instructing the jury, and a review of Delaware caselaw reveals that the Delaware Supreme Court consistently and regularly applies its rule that, absent plain error, "a defendant who neither objected to the instruction given or requested a different one, cannot raise the issue for the first time on appeal." *Flamer v. State*, 227 A.2d 123, 128 (Del. 1967). Claim three asserts prosecutorial misconduct, and a review of Delaware caselaw reveals that the Delaware courts consistently enforce the rule that objections to perceived prosecutorial misconduct must be raised during trial or else limited to plain error review on appeal. *See Fetters v. State*, 436 A.2d 796, 799 (Del. 1981); *Mason v. State*, 658 A.2d 994, 999 (Del. 1995).

Further, other circuit courts addressing this issue have held that a state supreme court's review for plain error does not indicate a waiver of the state's procedural default rules. *See White v. Mitchell*, 431 F.3d 517 (6th Cir. 2005); *Mahaffey v. Schomig*, 294 F.3d 907, 919 (7th Cir.

Del. Feb. 5, 2003); *Maxion v. Snyder*, 2001 WL 848601, at *10 (D. Del. July 27, 2001). Thus, the court cannot review the merits of claims one, two, and three absent a showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the claims are not reviewed.

Benge does not assert any cause sufficient to excuse his procedural default.[4] In the absence of cause, the court will not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine does not excuse Benge's default, because he has not provided new reliable evidence of his actual innocence. Accordingly, the court will dismiss claims one, two, and three as procedurally barred.

## B. Claim four is procedurally barred

In his fourth claim, Benge contends that the Delaware Supreme Court violated Delaware Rule of Evidence 404(b) and his due process rights by admitting evidence of his prior bad acts during his trial. The State contends that claim four is unexhausted because Benge only presented the claim to the Delaware Supreme Court on direct appeal as a violation of state evidentiary law, and therefore, he did not "fairly present" the issue as a federal claim to the Delaware Supreme Court.

A petitioner satisfies the "fair presentation" requirement of the exhaustion doctrine by

---

2002); *Whiteman v. Friel*, 2006 WL 2441542 (10th Cir. Aug. 24, 2006)(unpublished opinion). The court finds the well-reasoned opinions of these other circuits persuasive. Therefore, unless and until otherwise directed by the Third Circuit Court Appeals, the court will continue to view the Delaware Supreme Court's application of Rule 8 as the Delaware Supreme Court's enforcement of a petitioner's procedural default.

[4]Instead, Benge contends that Rule 8 does not constitute an independent and adequate state procedural rule for procedural default purposes. The court rejects this argument for the reasons explained *supra*, note 3.

9

presenting the

> federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. It is not sufficient that a "somewhat similar state-law claim was made." Yet, the petitioner need not have cited "book and verse" of the federal constitution.

*McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). A federal claim brought in federal court must be the "substantial equivalent" of that presented to the state courts, and the state court must have had the same method of legal analysis available to it that is to be employed in the federal court. *Lambert*, 134 F.3d at 513.

The state court pleadings and briefs in Benge's direct appeal demonstrate that Benge did not fairly present claim four as a constitutional due process claim to the Delaware Supreme Court. Although Benge's state appellate brief did allege that "the prior bad conduct admitted against the defendant at trial was irrelevant and unduly prejudicial to the defendant's right to a fair trial under Delaware Rule of Evidence 404(b)," when viewed in context with Benge's entire Rule 404(b) argument, the cursory reference to a "fair trial" was not sufficient to put the Delaware Supreme Court on notice that Benge was asserting a federal due process claim. (D.I. 39) Additionally, the State did not interpret the argument to allege a due process claim, and the Delaware Supreme Court decided the issue solely on state evidentiary precedent. Therefore, the court concludes that Benge did not exhaust state remedies for claim four.

At this juncture, claim four is procedurally defaulted because Benge is precluded from obtaining further state court review of his Rule 404(b)/due process claim.[5] Benge does not assert

---

[5] Delaware Superior Court Criminal Rule 61(i)(3) would bar any attempt to raise this claim in a motion for post-conviction relief. *See McLaughlin v. Carroll*, 270 F. Supp. 2d 490, 512-13 (D. Del. 2003).

any cause for his failure to present claim four as a federal due process claim on direct appeal,[6] and therefore, the court will not address the issue of prejudice. Benge also does not demonstrate · that a fundamental miscarriage of justice will result from failure to review this claim.

Accordingly, the court will deny claim four as procedurally barred.

### C. Claim five does not warrant relief under *Blakely*

In his final claim, Benge contends that his sentences were enhanced above the maximum sentences recommended by Delaware's Sentencing Guidelines ("SENTAC") in violation of the Sixth Amendment and the rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004). The sentence recommended by SENTAC for a second degree assault conviction is 0-2 years of incarceration at Level V, and the maximum statutory penalty is 8 years of incarceration at Level V. Del. Code Ann. tit. 11, § 4205(b); Delaware SENTAC Benchbook 2006, at p.39. The Superior Court judge sentenced Benge to 8 years of incarceration because he viewed the fact that Benge committed the assault while he was subject to a Protection From Abuse Order ("PFA Order") as an aggravator for sentencing purposes. (D.I. 39, Defendant's Supp. Memorandum in *Benge v. State*, No.544,2004, attached Sentencing Transcript at 29-30). The sentence recommended by SENTAC for first degree criminal trespass is up to 1 year of probation, but Benge was sentenced to the statutory maximum of 1 year of incarceration, (Del. Code Ann. tit. 11, § 4206(a)), once again due to the use of the PFA Order as an aggravator. Benge argues that these sentences violate *Blakely* because the jury did not find that he had violated the protective order, and he did not admit to violating the PFA until several months after his sentencing. (D.I.

---

[6]Rather, as previously explained, and rejected, Benge has chosen to argue that he "fairly presented" this claim as a federal claim on direct appeal, and therefore, claim four is not procedurally defaulted.

11

3)

The record reveals that Benge exhausted state remedies for this claim, but the Delaware Supreme Court did not address the issue on the merits in its written decision. *See Benge v. State*, 862 A.2d 385 (Table), 2004 WL 2742314 (Del. Nov. 15, 2004). Therefore, the court will review the issue de novo, under pre-AEDPA standards.[7] *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004)(explaining that de novo review is appropriate where the state supreme court did not address the merits of a claim).

In *Blakely*, the Supreme Court reiterated its prior holding in *Apprendi v. New Jersey* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 303 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The Supreme Court in *Blakely* clarified that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303.

The State argues that claim five is meritless because *Blakely* does not invalidate Delaware's sentencing scheme. The court concurs with the State's conclusion. *Blakely* involved the determinate sentencing scheme of the State of Washington, where the sentencing guidelines required a trial judge to impose the recommended or presumptive sentence unless he provided a reason for imposing a different sentence. *Blakely*, 542 U.S. at 308-09. In contrast to Washington's sentencing scheme, Delaware's sentencing scheme ("SENTAC") is voluntary and

---

[7]De novo review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

12

non-binding, and although a sentencing judge *should* articulate its reasons for departing from the sentence recommended under SENTAC, the Delaware Supreme Court has consistently held that a sentencing court is not required to do so, and, in turn, a sentencing court's failure to do so is not reversible error. *See Mayes v. State*, 604 A.2d 839, 845-46 (Del. 1992); *Via v. State*, 782 A.2d 267 (Table), 2001 WL 1142304, at **2 (Del. Sept. 19, 2001); *Fuller v. State*, 860 A.2d 324, 332-33 (Del. 2004). In fact, pursuant to well-settled Delaware law, a defendant does not have a right to appeal a statutorily authorized sentence merely because it does not conform with Delaware's sentencing guidelines. *Ward v. State*, 567 A.2d 1296, 1297 (Del. 1989). Accordingly, Delaware's indeterminate and voluntary sentencing scheme is not implicated by *Blakely*.

However, even if *Blakely* applies to SENTAC, there simply is no *Blakely* error in Benge's case. *Blakely* only guarantees the right to a jury trial with regard to any *disputed* factual issue not found by a jury, other than a prior conviction, which increases the defendant's maximum sentence. *Blakely*, 542 U.S. at 313. Here, in order to convict Benge on the second degree assault charge, the jury had to find that Benge intentionally or recklessly injured his ex-wife's boyfriend with a deadly weapon or dangerous instrument. See Benge, 2004 WL 2742314, at *3-4. The jury was instructed that the term "deadly weapon" includes a firearm. (D.I. 39, Appendix to Appellant's Op. Br. in *Benge v. State*, No.544,2003, at A-245) In order to convict Benge on the first degree criminal trespass charge, the jury had to find that Benge knowingly entered or remained unlawfully on the motel property owned by his ex-wife's family. Benge concedes that the PFA order was in effect at the time he committed the offenses and at the time of sentencing, and the record reveals that the PFA order prohibited Benge from possessing guns, contacting his

13

ex-wife, and entering her property. (D.I. 39, Defendant's Supp. Memorandum in *Benge v. State*, No.544,2004, attached Sentencing Transcript at 29-30). Clearly, then, the Superior Court judge sentenced Benge on the basis of facts found by the jury and reflected in the jury verdict, and the judge's recognition that the facts found by the jury also indicated a violation of the PFA order did not constitute additional factfinding. Accordingly, the court will deny claim five as meritless.

## D. Motion for a determination under Rule 8, foll. 28 U.S.C. § 2254 and for summary judgment

During the pendency of this proceeding, Benge filed a motion for the court to determine that no evidentiary is required under Rule 8(a) of the Rules Governing Habeas Corpus Cases Under Section 2254, 28 U.S.C. *foll.* § 2254. (D.I. 34) Considering Benge's concession that there is no genuine factual issue with respect to his habeas claims, the court agrees that an evidentiary hearing is not warranted in this proceeding. *See Campbell v. Vaughn,* 209 F.3d 280, 287 (3d Cir. 2000)(explaining that a request for an evidentiary hearing should be denied where the petitioner fails "'to forecast any evidence beyond that already contained in the record' that would otherwise help his cause.")

Benge also moves the court for summary judgment. However, given the court's foregoing conclusion that Benge is not entitled to federal habeas relief, the court will deny Benge's motion for summary judgment as moot. (D.I. 34.)

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing

14

of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Benge's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Benge's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

15

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN H. BENGE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. A. No. 05-550-GMS |
| | ) |
| MICHAEL DELOY, Warden, and | ) |
| JOSEPH J. BIDEN, III, Attorney General | ) |
| of the State of Delaware, | ) |
| | ) |
| Respondents. | ) |

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. John H. Benge's petition for the writ of habeas corpus filed pursuant to 28 U.S.C

§ 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 1)

2. Benge's motion for summary judgment is DENIED as moot. (D.I. 34)

3. The court declines to issue a certificate of appealability.

Dated: June 22, 2007

UNITED STATES DISTRICT JUDGE



FILED

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the attached Application For Issuance of a Certificate of Appealability was served on July 19, 2007 by depositing the same in the prisoner mail dropbox at Sussex Correctional Institution, Georgetown, Delaware, first class mail, postage prepaid, and addressed to:

> Thomas E. Brown, Esq.
> Deputy Attorney General
> Department of Justice
> 820 North French Street
> Wilmington, DE 19801

With a copy to:

> The Honorable Gregory M. Sleet
> United States District Court for
>   the District of Delaware
> 844 North King Street, Lockbox 19
> Wilmington, DE 19801

I hereby certify under penalty of the laws of the United States of America that the foregoing is true and correct.

> Executed on July 19, 2007

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## CIVIL INFORMATION STATEMENT

**COUNSEL FOR APPELLANT: This statement is due to be filed with the Clerk of the Court of Appeals not later than 10 days from the filing of the notice of appeal.**
**COUNSEL FOR APPELLEE: If any information in appellant's statement is incorrect, counsel for appellee is directed to file a copy of this statement not later than 7 days after service.**

SHORT CAPTION WITH IDENTITY OF APPELLANT    APPEAL FROM DISTRICT COURT

| | |
|---|---|
| **John H. Benge, Jr.,** | **District: Delaware** |
| **Petitioner Below, Appellant** | **D.C. Docket No.: 05-0550(GMS)** |
| **v.** | **Date filed in D.C.: August 1, 2005** |
| **Michael DeLoy, Warden, Sussex** | **Date NOA filed: July 20, 2007** |
| **Correctional Institution;** | |
| **Joseph R. Biden, III, Attorney General** | |
| **Of the State of Delaware,** | |
| **Appellees** | |

NAME AND ADDRESS OF COUNSEL ON APPEAL

Name of Counsel    Address    Telephone No. (incl. FAX #, if any)

For Appellant(s): None

*For Appellee(s):    Thomas Brown, Esq., Deputy Attorney General
Delaware Department of Justice
820 North French Street
Wilmington, DE 10801
(302) 577-8400

*LIST ONLY THE NAMES OF PARTIES WHO WILL OPPOSE YOU ON APPEAL,
TOGETHER WITH THE NAMES AND ADDRESSES OF THEIR ATTORNEYS
Is this a Cross-Appeal? Yes [ ] No [ ✓ ]

Was there a previous appeal in case? Yes [ ] No [ ✓ ]

If yes, Short Title:
Docket No.:
Citation, if reported:
See p. 2.

To your knowledge, is there any case now pending or about to be brought before this Court or any other court or administrative agency which:

{A} Arises from substantially the same case or controversy as this appeal? [ ✓ ] Yes [ ] No

{B} Involves an issue that is substantially the same, similar, or related to an issue in this appeal? [ ✓ ] Yes [ ] No
If yes, state whether { ✓ } "A" or { ✓ } "B" or both, and provide:
Case Name: John H. Benge, Jr. Petitioner v. Deloy, Warden et al.    Court: U.S. District Court, Delaware
Docket No.: 05- 0551 (GMS); appeal to be docketed *post*

**NATURE OF SUIT**
(Check as many as apply)

| **1. FEDERAL STATUTES** | **2. TORTS** | **4. PRISONER PETITIONS** |
|---|---|---|
| [ ] ANTITRUST | [ ] ADMIRALTY | [ ] CIVIL RIGHTS |
| [ ] BANKRUPTCY (2254) | [ ] ASSAULT/DEFAMATION | [ ✓ ] HABEAS CORPUS |
| [ ] BANKS & BANKING | [ ] PRODUCT LIABILITY/ | [ ] MANDAMUS AND OTHER |
| [ ] CIVIL RIGHTS WARRANTY | | [ ] PAROLE |
| [ ] COMMERCE, ROUTES, | [ ] DIVERSITY | [ ] VACATE SENTENCE(2255) |
| AND TARIFFS | | [ ] OTHER (specify): |
| [ ] COMMODITIES | | |
| [ ] COMMUNICATIONS | | **5. OTHER** |
| [ ] CONSUMER PROTECTION | | |
| [ ] COPYRIGHT[ ] PATENT | **3. CONTRACTS** | [ ] FORFEITURE/PENALTY |
| OR [ ] TRADEMARK | | [ ] REAL PROPERTY |
| [ ] ELECTION | [ ] ADMIRALTY/MARITIME | [ ] TREATY (specify): |
| [ ] ENERGY | [ ] ARBITRATION | |
| [ ] ENVIRONMENTAL | [ ] COMMERCIAL | |
| [ ] FREEDOM OF | [ ] EMPLOYMENT | [ ] DIVERSITY |
| INFORMATION | [ ] INSURANCE [ ] OTHER (specify): | |
| [ ] IMMIGRATION | [ ] NEGOTIABLE | |
| [ ] LABOR | DISBURSEMENTS | |
| [ ] OSHA | [ ] DIVERSITY | |
| [ ] SECURITIES | [ ] OTHER (specify): | |
| [ ] SOCIAL SECURITY | | |
| [ ] TAX | | |
| [ ] EQUAL ACCESS TO | | |
| JUSTICE | | |
| [ ] OTHER (specify): | | |

N.B. ALL CASES EXCEPT THOSE IN CATEGORY 4, ORIGINAL PROCEEDINGS (e.g., mandamus/prohibition), AND PRO SE CASES ARE SUBJECT TO REFERRAL TO THE COURT'S MEDIATION PROGRAM.

This is to certify that this civil appeal information statement was mailed to the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record this 19th day of July, 2007.
REV. 02/10/99





www.usps.com





From John Benge, Jr
P.O. Box 500 (SCI)
Georgetown, DE. 19947

**TO** CLERK OF THE COURT
U.S. District Court for
the District of Delaware
844 N. King St. Lockbox #18
Wilmington, DE. 19801

Label 228, February 2006