## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JOHN H. BENGE,                           )
                                         )
          Petitioner,                  )
                                         )
v.                                       )    Civ. A. No. 05-550-GMS
                                         )
MICHAEL DELOY, Warden, and               )
JOSEPH J. BIDEN, III, Attorney General   )
of the State of Delaware,                )
                                         )
          Respondents.                 )

---

John H. Benge. *Pro se* petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware. Attorney for respondents.

---

## MEMORANDUM OPINION

_Nov 14_, 2007
Wilmington, Delaware



Sleet, Chief Judge

## I. INTRODUCTION

Petitioner John H. Benge ("Benge") is an inmate at the Sussex Correctional Center in

Georgetown, Delaware. Benge filed a petition for a writ of habeas corpus ("petition") pursuant

to 28 U.S.C. § 2254. (D.I. 1) On June 22, 2007, the court denied the petition after determining

that claims one, two, three, and four were procedurally barred, and claim five was without merit.

Benge filed a Rule 59(e) "Motion to Alter or Amend Judgment [Denying Petitioner's § 2254

Petition] and Findings of Fact," asking the court to reconsider its denial of claim three as

procedurally barred and its denial of claim five as meritless. Benge contends that the court made

factual errors in reaching both of those conclusions. For the following reasons, the court will

grant Benge's Rule 59(e) motion with respect to claim three, but deny the motion as it pertains to

claim five.[1]

## II. DISCUSSION

A Rule 59 motion should be granted to correct manifest errors of law or fact or to present

newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

Accordingly, a court may grant a motion for reconsideration pursuant to Rule 59 if the moving

party shows one of the following: (1) an intervening change in the controlling law; (2) the

availability of new evidence that was not available when the court issued its order; or (3) the

need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café*

*v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)(citing *North River Ins. Co. v. CIGNA*

---

[1]Although Benge filed the instant motion on June 29, 2007, and then filed a notice of
appeal on July 20, 2007, the court has jurisdiction over the motion pursuant to Fed. R. App. P.
4(a)(4)(iv).

2

*Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is not appropriate to reargue issues that the court has already considered and decided. *Brambles USA Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D.Del. 1990). However, reconsideration may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Id.* at 1241.

Here, Benge asks the court to reconsider two factual findings contained in its Memorandum Opinion. First, he objects to the court's statement that "Benge failed to object to the prosecutorial misconduct during his trial," and instead, he wants an amendment of the opinion to state "Petitioner's counsel objected to the prosecutorial misconduct at trial, but his counsel neither objected to the trial court's curative [instruction] given as a result of the prosecutor's comments nor did counsel move for a mistrial." (D.I. 42, at pp. 1-3.) Benge argues that this factual correction is necessary to show that the court erroneously found claim three to be barred by an independent and adequate state procedural ground because the Delaware Supreme Court applied a *new* procedural rule requiring both a contemporaneous objection and an objection to a curative instruction, as opposed to the established procedural rule requiring only a contemporaneous objection to the misconduct itself. Second, Benge objects to the court's statement that "Benge concedes that the PFA order was in effect at the time he committed the offenses," arguing that he never conceded the existence of the PFA order during his state criminal trial. (D.I. 42, at pp. 3-5.) Benge asks that the court delete the "concession" finding from its factual findings. The court will discuss Benge's arguments in seriatim.

## A. Claim three: prosecutorial misconduct

The background to Benge's motion for the court reconsider its denial of claim three is as follows. During the prosecutor's cross-examination of Benge, Benge testified that he hoped Smith had not been shot during the altercation. The prosecutor then remarked "[y]ou are quite a humanitarian, aren't you?" Defense counsel objected, and the Superior Court judge immediately instructed the jury to disregard the comment. During the lunch recess, the trial judge conferred with counsel and asked if counsel would like the court to do anything else. Defense counsel did not ask for a mistrial; rather, he asked the trial judge to give a more elaborate instruction and go "a little further and tell [the jury] just to make it very clear that's not to be given any consideration whatsoever." (D.I.39, App. to Appellant's Op. Br., No. 544,2003, at A-201 to A-202.) Immediately after the recess, the judge instructed the jury:

> That sort of [comment] should not happen. Ms. Wither is an experienced prosecutor and I was surprised when she said that. When I tell you to disregard that, it is very important that you just regard that. It is not appropriate for any attorney who appears in this courtroom to express an opinion about any witness or any defendant who comes up here and testifies. So when I tell you to disregard that, I say that as strongly as I possibly can. So please disregard it and we will go on."

*Benge*, 2004 WL 2742314, at*3.

On direct appeal, Benge argued that he was denied a fair trial because the trial court's jury instruction did not cure the prejudice suffered as a result of the prosecutor's improper remark, and therefore, his conviction should be reversed. (D.I. 39, Appellant's Op. Br. in *Benge v. State*, No. 544,2003, at 16.) After explicitly noting that "the defense objected to the [prosecutor's] remark," the Delaware Supreme Court then concluded that, "[s]ince Benge neither objected to this cautionary instruction nor requested a mistrial, this challenge, raised for the first time on

4

appeal, must be reviewed for plain error." *Benge v. State*, 862 A.2d 385 (Table), 2004 WL

2742314, at \*3 (Del. Nov. 15, 2004). The state supreme court held:

> Because the trial judge forcefully cautioned the jury, in detail, not once, but twice, there is no plain error. Under these circumstances the instructions given by the trial judge were sufficient to cure any unfair prejudice resulting from the improper prosecutorial remark.

*Benge*, 2004 WL 2742314, at \*3.

In his habeas petition, Benge titled claim three as "The prosecutor's wanton attack on

petitioner's character so infected the trial with unfairness as to deny due process." (D.I. 3 at 64.)

The majority of Benge's argument, however, focused on his contention that the impact of the

curative instruction in the context of his trial was, at best, minimal, and that the jurors may not

have been able to disregard the prosecutor's remark. *Id.* at 67. More specifically, Benge argued

that

> The effect of a curative instruction designed to lessen the impact of an improper remark by a prosecutor – the basis upon which the Delaware Supreme Court rejected Petitioner's direct appeal on this issue - is but one of a number of factors examined in applying the due process standard above. The prosecutor's remarks are evaluated in context to determine if the jury has been distracted from real issues. The comment is to be viewed in light of the entire trial with an assessment of the severity of the misconduct giving due weight to the effect of a curative instruction and the quantum of evidence against the defendant. No single factor is determinative in this analysis.

(D.I. 3, at 65.)

In its answer, the State argued that claim three was procedurally barred from federal

habeas review due to the Delaware Supreme Court's enforcement of Benge's procedural default,

as demonstrated by the state court's review of the claim for plain error under Delaware Supreme

Court Rule 8. This court agreed that claim three was procedurally barred from habeas review for

two reasons. First, the court noted that defense counsel did not object to the prosecutorial

misconduct. Then, focusing on the Delaware Supreme Court's unambiguous application of

Delaware Supreme Court Rule 8, the court concluded that claim three was procedurally barred.

However, after reviewing the argument contained in Benge's motion for reconsideration,

the court concludes that it misapprehended the procedural history of Benge's prosecutorial

misconduct claim when it stated that defense counsel failed to object to the prosecutorial

misconduct.[2]  Considering that the court's procedural default analysis was based on this error of

apprehension, the court will reconsider claim three.[3]   Furthermore, the court will review the

claim *de novo* because Benge fairly presented the prosecutorial misconduct claim to the

Delaware Supreme Court on direct appeal, but the state supreme court did not review the claim

on its merits. *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004).

---

[2]The record reveals that claim three mirrors the prosecutorial misconduct argument Benge
presented the Delaware Supreme Court on direct appeal.  However, it appears that the Delaware
Supreme Court interpreted the claim as challenging the curative instruction, not as raising a
prosecutorial misconduct claim, and therefore, reviewed the claim for plain error due to Benge's
failure to object to the instruction during the trial.  *See, e.g.*, *Whittaker v. Houston*, 888 A.2d 219,
224 (Del. 2005)(when counsel does not object to a jury instruction during the trial, the
appropriate standard of review is plain error).  In its initial review of Benge's habeas petition, this
court recognized that claim three presented a prosecutorial misconduct claim, but the court failed
to recognize that the Delaware Supreme Court construed the claim as challenging the curative
instruction and not as a prosecutorial misconduct claim.  In other words, the court did not
recognize the Delaware Supreme Court's application of Rule 8 to the claim was due to the state
court's interpretation of the claim as something other than a prosecutorial misconduct claim.

[3]Benge contends that the Delaware Supreme Court applied a new procedural rule for
preserving a prosecutorial misconduct claim for appellate review by requiring both a
contemporaneous objection to the prosecutorial misconduct and either a motion for mistrial or an
objection to the curative instruction.  In turn, because this procedural rule was a new requirement
applied by the Delaware Supreme Court, Benge argues that this court should not have found that
the Delaware Supreme Court's application of Rule 8 effectuated a procedural default for federal
habeas purposes.  However, given the fact that this court's procedural default analysis was based
on its own misunderstanding of the Delaware Supreme Court's reason for finding claim three
defaulted, and not due to the state court's application of a new procedural rule, the court will not
address Benge's "new rule" argument.

6

*De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring). According to Third Circuit precedent, "the relevant question for a habeas court [presented with a prosecutorial misconduct claim] is whether [the prosecutor's] remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Lam v. Kelchner*, 304 F.3d 256, 271 (3d Cir. 2002)(*quoting Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986)). Consequently, "the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001)(*citing Darden*, 477 U.S. at 182).

In Benge's case, the prosecutor's brief sarcastic remark about Benge being "quite a humanitarian" could be construed as an improper expression of her personal belief about Benge's credibility as a witness. *See Hunter v. State*, 815 A.2d 730, 735 (Del. 2002). However, viewing the remark in the context of the entire trial, the court finds that the statement did not "so infect [Benge's] trial with unfairness as to make the resulting conviction a denial of due process." *Moore*, 255 F.3d at 105. First, the court notes that the prosecutor's remark was brief in nature and not repeated. Second, the trial judge promptly struck the comment from the record. In fact, the judge expanded the instruction at defense counsel's request, specifically highlighted the inappropriateness of the prosecutor's statement, and clearly and forcefully instructed the jury to disregard the prosecutor's remark.

Finally, even absent the prosecutor's inappropriate remark, the evidence against Benge

7

provided the jury with an ample basis for finding Benge guilty of second degree assault against Stacey Smith ("Smith"), offensive touching against his ex-wife Donna Benge ("Donna"), and first degree criminal trespass.[4] During the trial, Benge described how he intended to commit suicide in front of Donna and Smith. One Sunday in October 2002, believing Donna and Smith to be at the Rehobeth motel owned by Donna's family, Benge drove from Wilmington to the motel with two loaded handguns in holsters, extra ammunition, wire cutters, and a can of pepper spray. Benge testified that he parked his van so that it would not be visible from the motel, and that he entered a motel room using keys he had duplicated from Donna's set of keys without her knowledge or permission. Benge described how he sat in the motel room watching the entrance to the motel. While sitting in the motel room, Benge contemplated whether he should continue with his suicide plan. Benge then explained how he left the room and cut the wires for the eight telephone lines to the motel, and that he used the duplicate set of keys to enter motel office in his search of Donna and Smith. According to Benge, once in the motel office, he changed his mind about committing suicide and merely wanted to leave the motel without hurting anyone. However, rather than leave the premises through the same door he entered, Benge entered the apartment adjacent to the office. Benge entered one of the apartment's bedrooms, and saw Donna alone in bed. He claimed that he sprayed pepper spray into the air (and not in Donna's face) in an attempt to make Donna run away. Yet, as Donna was running into the living room,

---

[4]In order for Benge to be convicted of second degree assault, the jury had to find that Benge recklessly or intentionally caused physical injury to Smith by means of a deadly weapon or a dangerous instrument. To be convicted off offensive touching, the jury had to find that Benge intentionally touched Donna with a member of his body and that he knew or was aware that he was likely to cause offense or alarm to her. And finally, in order to convict Benge of criminal trespass, the jury had to find that Benge knowingly and unlawfully entered the Rehoboth motel. (D.I. 4, at A-105 to A-115)

8

Benge stated that he gently pulled her to a sitting position on a bench.

At that time, Smith entered the apartment. Benge described how he sprayed Smith with pepper spray only after Smith started charging at him. A struggle ensued, and according to Benge, Smith removed a gun from the holster at Benge's waist. Smith was shot in the chest, but Benge denied pulling the trigger.

The jury also heard testimony from Donna and Smith. According to Donna, Benge entered her family's motel without permission, sprayed her with pepper spray, grabbed her around her neck, and repeatedly yelled at her, demanding to know Smith's location. Smith testified that, upon hearing noise in Donna's apartment, he investigated and found Benge there. Smith testified that Benge sprayed him with pepper spray, and that Benge had a gun in his hand. Smith then described the ensuing struggle between himself and how the gun was pointed at his face. At some point during the struggle, Smith realized that he had been shot. Smith also described how he grabbed the gun out of Benge's left hand, and then how he continuously struck Benge with the gun until the police arrived.

This testimony, coupled with the other evidence admitted at trial, was more than sufficient to support Benge's convictions, and reduced the likelihood that the prosecutor's "humanitarian" statement influenced the jury's decision. Therefore, the court concludes that the prosecutor's sole inappropriate remark did not deprive Benge of a fair trial. Accordingly, claim three does not warrant habeas relief.

**B. Claim five: *Blakely* violation and statement regarding concession of PFA order**

In claim five of his habeas petition, Benge contends that his sentences violate the Sixth Amendment and the rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004). According

to Benge, the Superior Court improperly used a protection from abuse order ("PFA order") as an aggravator, because the jury did not find that he had violated the protective order, and he only admitted to violating the PFA order several months after his sentencing.[5] (D.I. 3)

The court denied claim five as meritless. In so doing, the court noted that "Benge concedes that the PFA order was in effect at the time he committed the offense." Now, in his motion for reconsideration, Benge asserts that the court's statement regarding his concession constitutes a factual error because he never conceded the existence of the PFA order during his criminal trial. Contrary to Benge's belief, however, at no point in time did the court explicitly or implicitly assert that Benge made that concession during his state criminal trial. Rather, the court's statement was based upon the fact that none of the arguments asserted in Benge's voluminous federal habeas filings disputed the existence of the PFA order. In fact, the arguments asserted to support claim five consistently mention the **existence** of the PFA order as an improper basis for enhancement. Therefore, the court concludes that Benge's argument regarding the concession statement does not warrant reconsideration of its denial of claim five, nor does it warrant the court's statement to be deleted from its Memorandum and Opinion dated June 22, 2007.

_____

[5]The sentence recommended by SENTAC for a second degree assault conviction is 0-2 years of incarceration at Level V, and the maximum statutory penalty is 8 years of incarceration at Level V. *See* Del. Code Ann. tit. 11, § 4205(b); Del. SENTAC Benchbook 2006, at 39. The Superior Court judge sentenced Benge to 8 years of incarceration because he viewed the fact that Benge committed the assault while he was subject to a Protection From Abuse Order ("PFA Order") as an aggravator for sentencing purposes. (D.I. 39, Defendant's Supp. Memorandum in *Benge v. State*, No.544,2004, attached Sentencing Transcript at 29-30). The sentence recommended by SENTAC for first degree criminal trespass is up to 1 year of probation, but Benge was sentenced to the statutory maximum of 1 year of incarceration, (Del. Code Ann. tit. 11, § 4206(a)), once again due to the use of the PFA Order as an aggravator.

10

### C. Request for certificate of appealability

Benge also asserts two reasons as to why the court should reconsider its refusal to issue a certificate of appealability.  First, he contends that reasonable jurists would debate the whether the court correctly denied claims one, two, and three as procedurally barred because the Third Circuit is presently considering whether Rule 8 constitutes an independent and adequate state procedural rule for default purposes in the case *Campbell v. Carroll*, No. 05-5156 (3d Cir.).  As previously explained, the court concludes that the claim three should be denied as meritless, not as procedurally barred.  Therefore, Benge's argument regarding a certificate of appealability on this issue is moot.

As for claims one and two, the court faces a procedural quandary.  For example, this court has consistently held that the unambiguous application of Delaware Supreme Court Rule 8 constitutes the Delaware Supreme Court's enforcement of a procedural default. *See, e.g., Word v. Carroll*, 2004 WL 1941342, at *3 (D. Del. Aug. 31, 2004); *Trump v. Kearney*, 2003 WL 22769598, at *5 (D. Del. Nov. 14, 2003), cert. of app. denied, *Trump v. Kearney*, No. 04-1057, Order (3d Cir. July 28, 2004); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998); *Lazzano v. Snyder*, 1996 WL 484832, at *4  (D. Del. Aug. 12, 1996).  However, the Third Circuit has granted a certificate of appealability to determine if Delaware Supreme Court Rule 8 constitutes an independent and adequate state procedural ground that precludes federal habeas review. *See Campbell v. Carroll*, No. 05-5156 (3d Cir.).  Adding yet another procedural twist to this case, the court notes that Benge's appeal from the court's denial of his habeas proceeding is already pending before the Third Circuit.  Therefore, in an effort to promote judicial economy and avoid duplication of arguments, the court concludes that the most prudent course of action is

11

to withhold a decision on this matter until the Third Circuit issues a decision in *Campbell v. Carroll*.

Benge also contends that reasonable jurists would debate whether the court correctly denied his *Blakely* claim. For the reasons expressed in the court's Memorandum Opinion dated June 22, 2007, the court concludes that reconsideration of its denial of a certificate of appealability with respect to claim five is not warranted.

## IV. CONCLUSION

The court will grant Benge's motion for reconsideration of claim three on the ground that the court based its procedural default argument on an "error of apprehension." Nevertheless, after reviewing claim three *de novo*, the court concludes that the claim does not warrant habeas relief.

The court will deny Benge's motion for reconsideration of claim five, as well as Benge's motion for the court to reconsider its denial of a certificate of appealability for claims three and five. However, the court will hold in abeyance Benge's motion to reconsider the court's denial of a certificate of appealability for claims one and two until after the Third Circuit issues a decision in *Campbell v. Carroll*, No. 05-5156 (3d Cir.). An appropriate order will issue.

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN H. BENGE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. A. No. 05-550-GMS |
| | ) |
| MICHAEL DELOY, Warden, and | ) |
| JOSEPH J. BIDEN, III, Attorney General | ) |
| of the State of Delaware, | ) |
| | ) |
| Respondents. | ) |

### ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS

HEREBY ORDERED that:

1. *Pro se* petitioner John H. Benge's Rule 59(e) "Motion to Alter or Amend

Judgment [Denying Petitioner's § 2254 Petition] and Findings of Fact" is DENIED in part and

GRANTED in part. (D.I. 42.)

(a) The motion is granted with respect to Benge's request that the court reconsider its denial of claim three as procedurally barred. Therefore, the court's prior denial of claim three in its Memorandum Opinion and Order dated June 22, 2007 is VACATED, and claim three is re-instated.

(b) The motion is denied with respect to Benge's request that the court reconsider its denial of claim five.

(c) The motion is denied with respect to Benge's request that the court reconsider its prior denial of a certificate of appealabilty for claims three and five.

(d) The motion is held in abeyance with respect to Benge's request that the court reconsider its prior denial of a certificate of appealability for claims one and two pending the Third Circuit's decision in *Campbell v. Carroll*, No. 05-5156 (3d Cir.).

2.  After reconsideration, claim three is DENIED as meritless.

3.  The court declines to issue a certificate of appealability with respect to its

decision regarding claims three and five for failure to satisfy the standard set forth in 28 U.S.C. §

2253(c)(2).

Dated: _____Nov  14_____, 2007

_____

CHIEF, UNITED STATES DISTRICT JUDGE

```
┌─────────────────────────────┐
│        F I L E D            │
│  ┌───────────────────────┐  │
│  │   NOV  1 4  2007       │  │
│  └───────────────────────┘  │
│     U.S. DISTRICT COURT     │
│   DISTRICT OF DELAWARE      │
└─────────────────────────────┘
```